## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE – COLUMBIA DIVISION

| | | |
|---|---|---|
| **KAREN MCNEIL, LESLEY JOHNSON,** | ) | |
| **TANYA MITCHELL, INDYA HILFORT,** | ) | |
| **and SONYA BEARD,** | ) | **Case No.: 1:18-cv-33** |
| **On behalf of themselves and all others** | ) | |
| **similarly situated,** | ) | **JURY DEMAND** |
| | ) | |
| **Plaintiffs,** | ) | **CAMPBELL/FRENSLEY** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **COMMUNITY PROBATION SERVICES,** | ) | |
| **LLC, _et al._,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM IN SUPPORT OF GILES COUNTY, TENNESSEE'S MOTION TO DISMISS

Giles County, Tennessee (the "County"),[1] by and through its counsel, submits the following memorandum of law in support of its motion to dismiss.

### I.      INTRODUCTION

Plaintiffs Karen McNeil, Lesley Johnson, Tanya Mitchell, Indya Hilfort, and Sonya Beard were sentenced to supervised probation by the Giles County General Sessions or Circuit Courts (collectively "State Court") after pleading guilty to misdemeanor charges.[2] These former and current probationers filed the instant lawsuit asserting § 1983 and state law claims against the County, private probation companies – CPS and PSI, and the companies' employees challenging the County's misdemeanor probation system. The Plaintiffs contend, in large part, that the probation companies

---

[1] Plaintiffs' claim against Sheriff Kyle Helton, in this official capacity, is duplicative of the claim against the County. _Matthews v. Jones_, 35 F.3d 1046, 1049 (6th Cir. 1994).
[2] In the Corrected First Amended Complaint, Plaintiffs often fail to identify the underlying charges that they pleaded guilty to or the grounds for revocations.

charged excessive fees and/or sought revocations of probation as a means to maximize their profits. Plaintiffs also aver that the State Court failed assess probationers' indigency prior to either setting the terms of probation or revoking probation. Plaintiffs' claims against the County arise solely out of the County's contracts – permitted under Tennessee law, codified at Tenn. Code Ann. §§ 40-35-302 and 303 ("Tennessee Private Probation Statute") – with Tennessee licensed private probation companies.

The County contends that Plaintiffs' claims are entirely misplaced. The Amended Complaint is devoid of well-pleaded factual allegations that Plaintiffs' damages were caused by County policies or customs as required by *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658 (1978). First, the lion's share of Plaintiffs' allegations – that the State Court failed to either adequately inquire or consider Plaintiffs' indigency prior to assessing costs, fees, or bonds – are judicial actions by **arms of the State** that do not constitute County policy or custom. Second, the Amended Complaint fails to identify a County policy or custom that was the moving force behind the probation companies' alleged unlawful conduct. Additionally, Plaintiffs have failed to allege state law claims for abuse of process against the County under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101, *et seq*.

For these reasons, set forth more fully below, the claims against the County should be dismissed in their entirety.

## II.    PROCEDURAL HISTORY

On April 23, 2018, Plaintiffs filed their Complaint and a Motion to Certify Class. [D.E. 1, generally; D.E. 5 and 6, generally].  The original Complaint asserts 24 federal and state claims against either the County, CPS, PSI, Timothy Cook (an owner of PSI), and the companies' respective probation officers, including Patricia McNair (CPS),

Markeyta Bledsoe (PSI), and Harriet Thompson (PSI). [D.E. 1, generally]. On July 13, 2018, Plaintiffs filed a Corrected First Amended Complaint ("Amended Complaint"), which adds Giles County Sheriff Kyle Helton, in his official capacity only, as a party to this action and asserts an additional claim against the County. [D.E. 41, generally]. Plaintiff Hilfort also filed a Motion for a Temporary Restraining Order and Preliminary Injunction contemporaneous with Plaintiffs' Amended Complaint. [D.E. 42 and 43, generally]. Plaintiffs have since filed a Motion for Preliminary Injunction. [D.E. 51 and 52, generally].

The operative Amended Complaint generally challenges the companies' "user-funded model of probation" in which the private companies' only source of revenue is derived from collecting fees from probationers. [D.E. 41, Page ID #500, ¶6]. The Amended Complaint asserts the following federal and state law claims against the County and amongst a changing cast of co-Defendants. [3]

## A. Federal Claims

Pursuant to 42 U.S.C. § 1983, Plaintiffs assert 11 claims against the County and various defendants for purported 14th Amendment due process and equal protection violations in Counts 5-16 of the Amended Complaint. These § 1983 claims can be grouped under the following theories as asserted by various combinations of Plaintiffs against varying Defendants:

**1.** **Counts 5 – 8**: Plaintiffs appear to aver that the County has violated probationers' 14th Amendment due process rights by mere virtue of the County, in accordance with Tennessee law, entering into private probation contracts with CPS and

---

[3] The Plaintiffs also assert several claims against the private defendants under the Racketeer Influenced and Corrupt Organizations Act and civil conspiracy to which the County is not a party. [D.E. 41, generally].

PSI. In general, Plaintiffs aver that the private probation companies' pecuniary interest in influencing State Court orders, setting the terms of probation or revocation of probation, violates probationers' due process rights.

2. **Counts 9 – 12**: Plaintiffs appear to assert 14th Amendment equal protection claims arising out of the use of threats of jail to collect debts arising out of their criminal prosecution and probation. Plaintiffs allege that the private probation companies use the threat of jail and an "onerous" probation system to collect their fees.

3. **Counts 13 – 14, 16**: Plaintiffs appear to aver that the County violated their 14th Amendment due process and equal protection rights by the State Courts placing and keeping people on supervised probation solely because they cannot afford to pay court debts and probation supervision fees.

4. **Count 15**: Plaintiff Hilfort asserts a 14th Amendment due process and equal process claim arising out the State Courts issuing warrants for violations of probation that require a secured money bond without making a prior indigency determination. The only allegations against the County pertain to the Sheriff's Department potentially executing warrants issued by the Court and potentially housing Plaintiffs in its jail if Plaintiffs do not satisfy the money bond set by the Court.

**B. State Law Claims**

Pursuant to the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101, *et seq.*, Plaintiffs assert state law claims for abuse of process against the County and various private Defendants in Counts 20-23 of the Amended Complaint. Plaintiffs contend that "Defendants" abused the legal process by allegedly seeking revocation judgments with ulterior motives to collect additional fees.

## II.    FACTUAL BACKGROUND

### A.    Factual allegations against the County

The County entered into a contract with PSI to operate the County's misdemeanor probation system in December 2011. [D.E. 41, Page ID #500, ¶ 7; *See also* **Exhibit 3** to the Amended Complaint]. The County also entered into a private probation contract with CPS in March 2016. [D.E. 41, Page ID #500, ¶ 7; *See also* **Exhibit 2** to the Amended Complaint]. The terms of the contracts generally provide that PSI and CPS will monitor probationers' payments of fines, court costs and restitution; monitor probationers' compliance with conditions of their probation; and report non-compliance with the court. [*See* **Exhibits 2 and 3**]. Plaintiffs do not aver that the terms of these contracts violate the Tennessee statute permitting local governments to enter into private probation system. [D.E. 1, generally].

Plaintiffs also allege that Giles County Sheriff's Department served – or will continue to serve – warrants for violation of probation issued by the State Courts. [D.E. 41, Page ID #607, ¶ 561]. Plaintiffs do not contend that the Sheriff's Department has served facially invalid warrants. [*Id*.]. In addition, Plaintiffs allege that the County housed probationers in the County jail. [*Id*.]. Plaintiffs do not aver that the service of warrants or housing inmates in the County jail violates any laws. [D.E. 41, generally].

### B.    Plaintiff McNeil

On or around November 19, 2015, Plaintiff McNeil pled guilty in General Sessions Court to driving on a revoked license. [D.E. 41, Page ID #538, ¶ 205]. The Court sentenced McNeil to 11 months and 29 days probation, with a minimum of four months' supervised probation. [*Id*.]. The Court also assessed $426 in fines and fees and ordered McNeil to pay $25 each week in costs and fines, $45 a month in supervision fees, and

$45 for each drug test. [*Id.*] **The Amended Complaint fails to allege whether the Court inquired about Plaintiff McNeil's ability to pay prior to ordering that McNeil pay costs and fines.** [D.E. 41, generally]. PCC, Inc. supervised McNeil's probation between November 2015 and March 2016. [D.E. 41, Page ID #537, ¶ 200]. CPS supervised McNeil's probation between March 2016 and October 2017. [*Id.*]

On or around April 19, 2016, while on supervised probation, Plaintiff McNeil was arrested for public intoxication. [D.E. 41, Page ID #539, ¶ 210]. The Amended Complaint alleges that CPS caused a warrant for violation of probation to be issued by the Court, which included a $1,000 money bail amount, "predetermined without an inquiry into or findings concerning her ability to pay." [D.E. 41, Page ID#539, ¶ 211]. Deputies from the sheriff's department served the warrant on Plaintiff McNeil while she was in jail for her public intoxication arrest. [D.E. 41, Page ID #539, ¶212]. McNeil pled guilty; the Court sentenced McNeil to 45 days in jail for violation of her probation to be served concurrently with 30 days in jail for the public intoxication charge. [D.E. 41, Page ID #539, ¶ 213].

After she was released from jail, Plaintiff McNeil returned to supervised probation. [D.E. 41, Page ID #540, ¶ 216]. In October 2016, Defendant McNair sought a violation of probation warrant against McNeil due to her failure to report on four occasions and failure to pay fees and costs. [D.E. 41, Page ID #541, ¶ 222]. Defendant McNeil pled guilty to both underlying charges; the Court revoked McNeil's probation, sentenced her to 45 days in jail, and extended McNeil's probation for six months. [D.E. 41, Page ID# 541, ¶ 227].

On June 6, 2017, Plaintiff McNeil failed a drug test. [D.E. 41, Page ID #543, ¶235]. Apparently the Court issued a warrant for McNeil's arrest, which required a

$2,500 secured financial condition of release. [D.E. 41, Page ID #543-44, ¶¶ 236-37]. McNeil was booked into jail on July 1, 2017 and bonded out on the same day. [D.E. 41, Page ID #544, ¶¶ 237-38]. On August 17, 2017, the Court revoked McNeil's probation and she served 65 days in jail. [D.E. 41, Page ID #544, ¶ 240]. Plaintiff McNair was released from her probation on or around October 21, 2017. [D.E. 41, Page ID #544, ¶ 241].

## C.   Plaintiff Johnson

The State of Alabama suspended Plaintiff Johnson's driver's license in 2015. [D.E. 41, Page ID #545, ¶ 245]. On February 9, 2017, Johnson pleaded guilty to driving on a suspended license in Giles County General Sessions Court. [D.E. 41, Page ID #545, ¶ 246-47]. Apparently, the Court found that Plaintiff Johnson was indigent and appointed her legal counsel. [D.E. 41, Page ID #545, ¶ 246]. The Amended Complaint alleges that the Court sentenced Plaintiff Johnson to six months of supervised probation – assigned to CPS – and assessed $331 in court costs or fees. [D.E. 41, Page ID #545, ¶ 247]. Plaintiff Johnson alleges that Defendant McNair threatened her with violations if she did not pay her fees. [D.E. 41, Page ID #546, ¶ 254]. Johnson also alleges that she repeatedly told Defendant McNair that she could not afford the payments. [D.E. 41, Page ID #547, ¶257]. The Amended Complaint alleges that Plaintiff Johnson paid a total of $340 in fees and her probation ended on August 8, 2017. [D.E. 41, Page ID #548, ¶ 262].

## D.   Plaintiff Mitchell

It appears that Plaintiff Mitchell entered into some type of plea agreement for a misdemeanor charge in Circuit Court. [D.E. 41, Page ID #548, ¶ 269]. The Circuit Court sentenced Plaintiff Mitchell to probation for 11 months and 29 days and assessed $750

in court fines and fees. [*Id*.]. The Amended Complaint does not allege whether the Circuit Court made an inquiry regarding Plaintiff Mitchell's ability to pay the fees.

The Circuit Court apparently assigned PSI to supervise Mitchell. [D.E. 1, Page ID # 549, ¶ 270]. The Amended Complaint alleges that Defendant Bledsoe – PSI's employee – "'conveyed to Ms. Mitchell that is she stops making payments to PSI, Defendant Bledsoe will require her to report more frequently." [D.E. 41, Page ID #549]. The Amended Complaint does not allege that Defendant Bledsoe threatened Mitchell with jail. [D.E. 41, generally].

### E.    Plaintiff Hilfort

On December 8, 2016, Plaintiff Hilfort pled guilty in General Sessions Court to misdemeanor theft charges. [D.E. 1, Page ID #550, ¶ 282.  The Court sentenced Hilfort to jail for 11 months and 29 days, to be suspended for a probationary term of 11 months and 19 days after sending 10 days in jail. [D.E. 1, Page ID #550, ¶ 283]. The Court also assessed $565.50 in court costs, fines, and taxes. [*Id*.]. The Court only assigned Plaintiff Hilfort to supervised probation for four months. [D.E. 1, Page ID #550, ¶ 283]. However, if Hilfort paid her court costs and probation fees in full, she would have been eligible for unsupervised probation for the remainder of her term. [*Id*.]. **The Amended Complaint fails to allege whether the Court inquired into Hillfort's ability to pay costs and fines.** [*Id*.]

Plaintiff Hilfort alleges that she was not assigned to supervision with either company for eight months. [D.E. 41, Page ID #551, ¶ 284]. Hilfort – who had been ordered to supervised probation – never inquired about this error failed to report during this eight month period. [Id.]. The Amended Complaint asserts that the clerical error was resolved and Plaintiff Hilfort began reporting to CPS Defendants in September

2017. [D.E. 41, Page ID #551, ¶285]. In this same time period, on or around September 25, 2017, Ms. Hilfort pled guilty in Circuit Court to theft in an amount over $500. [D.E. 41, Page ID #551, ¶ 286]. The Circuit Court sentenced Hilfort to 11 months and 29 days on supervised probation with CPS and assessed $1,487.50 in court costs, fines, taxes, and restitution. [D.E. 41, Page ID #551, ¶ 286]. **Again, the Amended Complaint fails to allege whether the Court inquired into Hillfort's ability to pay costs and fines.** [*Id.*]

Hilfort alleges that Defendant McNair threatened to "violate" Hilfort if she failed to pay her debt by the end of probation period, and Hilfort "understood" this to mean that she would be jailed. [D.E. 41, Page ID #552, ¶ 293]. There is no allegation that Plaintiff Hilfort actually was jailed due to failure to pay fines or fees. [*Id.*]. However, either the Circuit Court or the General Sessions Court – it is not clear – issued a warrant for violation of probation due to Hilfort failing a drug test. [D.E. 41, Page ID #552-53, ¶¶ 295-297]. The General Sessions Court determined that Hilfort violated her probation and sentenced her to 60 days in jail and her probation was revoked and extended for an additional 11 months and 29 days. [D.E. 41, Page ID #553, ¶ 229]. Plaintiff concedes that the Court inquired if she could afford to pay $25 per week in court fees; Plaintiff Hilfort indicated that she was able to pay the amount after consulting with her public defender. [D.E. 41, Page ID #553, ¶230]. The Circuit Court also determined that Hilfort violated her probation in the separate criminal matter and sentenced her concurrently with the General Sessions matter. [D.E. 41, Page ID #554, ¶ 302].

On July 9, 2018, Plaintiff Hilfort was arrested in Lawrence County, Tennessee. [D.E. 41, Page ID #554, ¶ 304]. The Giles County General Sessions Court issued a warrant for violation of probation requiring a $2500 secured money bond. [D.E. 41,

Page ID #554, ¶ 306]. Hilfort contends that, if arrested, she could potentially have to up to six days in jail – until a Thursday when the Court is in session – to have a hearing to determine whether her bail should be reduced. [D.E. 41, Page ID #555, ¶¶ 309-10].

## F.    **Plaintiff Beard**

On January 26, 2016, Plaintiff Beard was arrested for her fourth charge of driving on a suspended license.  The General Sessions Court issued an arrest warrant against Beard for failing to appear in court.

On June 9, 2016, Beard plead guilty in the General Sessions Court. [D.E. 1, Page ID #555, ¶ 314]. The Court found that Plaintiff Beard was indigent and appointed a public defender. [*Id.*]. The Court sentenced Beard to probation for 11 months and 29 days under the supervision of PSI and Defendant Thompson. [D.E. 1, Page ID #555-56, ¶¶ 315-16]. In addition, the Court assessed $745 in costs, fines, and litigation taxes. [D.E. 1, Page ID #556, ¶ 316]. The Amended Complaint alleges that Plaintiff Beard informed Defendant Thompson that it was difficult to pay the supervision fee. [D.E. 1, Page ID #556, ¶ 320]. She alleges that Defendant Thompson denied Beard's request to waive the supervision fee. [D.E. 1, Page ID #556, ¶ 320]. The Amended Complaint alleges that Defendant Thompson agreed to let Plaintiff Beard report by phone but later sought violation of probation warrants for failing to report and pay. [D.E. 1, Page ID #557, ¶325].

The Amended Complaint alleges that Defendant Thompson sought an arrest warrant for Plaintiff Beard for failing to report and failing to pay her fines or fees. [D.E. 1, Page ID #557, ¶ 326].  On September 1, 2016, a warrant was issued and ordered the Sheriff to "hold" Ms. Beard instead of setting of bond. [*Id.*].  Plaintiff Beard was arrested on October 10, 2017 and appeared before the General Sessions Court on October 20,

2017. [D.E. 1, Page ID #557, ¶ 327-28]. Beard alleges that she informed the Court she could not afford the fee and it was difficult for her to appear in person to report. [D.E. 1, Page ID #557, ¶ 328]. Ultimately, Plaintiff Beard pled guilty and was sentenced to 30 days in jail with credit for the 10 days spent in jail prior to her revocation hearing. [D.E. 1, Page ID #558, ¶ 329].

On February 3, 2017, Defendant Thompson sought a warrant against Plaintiff Beard for violating her probation by accruing a new charge for driving while her license was suspended, failing to report, and failing to pay fees. [D.E. 1, Page ID #558, ¶¶ 332, 334]. Again, the Court placed a hold on Beard and did not issue a bond. [*Id.*]. Beard was arrested on March 8, 2017 and pled guilty to the charges against her – including her fifth charge for driving on a suspended license – on March 15, 2017. [D.E. 1, Page ID # 558, ¶¶ 333-34]. The Court sentenced Beard to 75 days in jail and extended her probation. [D.E. 1, Page ID #558, ¶ 334].

Plaintiff reported to Defendant Bledsoe after she was released from jail in July 2017. [D.E. 1, Page ID #558, ¶ 335]. The Amended Complaint alleges that Defendant Bledsoe sought a warrant for violation of probation against Plaintiff Beard solely for failure to pay fees; however, the Court apparently did not issue the warrant. [D.E. 1, Page ID #559, ¶ 338]. Rather, the Court later issued a warrant for violation of probation due to allegations that Beard failed to report and failed to pay fees. [D.E. 1, Page ID #559, ¶ 339]. Again, the warrant instructed the jail to hold Beard and did not issue a bond. [*Id.*]. The warrant was apparently served on Plaintiff Beard on November 30, 2017 while she was in Lawrence County Jail on separate charges. [D.E. 1, Page ID #559, ¶ 340]. Beard was transferred to Giles County the same day, and the Court dismissed the charges; the Court determined that Beard only failed to report because she was already

incarcerated. [D.E. 1, Page ID #559, ¶ 341]. The Court offered Beard the option to serve 60 days in jail in lieu of paying her remaining fees and costs. [D.E. 1, Page ID #559-60, ¶¶ 342]. The Amended Complaint does not allege that the Court assessed any additional fees, costs, fines, or extended Beard's probation due to her failure to pay. [I*d*.]. Plaintiff Beard opted to pay the fines and the charges and her probation ended on December 21, 2017. [D.E. 1, Page ID #560, ¶ 346].

### III.   STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint. *Golden v. County of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007), the Supreme Court disavowed the oft-quoted Rule 12(b)(6) standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which had previously declared that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Ass'n of Cleveland Fire Fighters v. County of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007). Instead, *Twombly* held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. "In the context of Section 1983 municipal liability, courts have interpreted [this] standard strictly." *Hutchinson v. Metro. Gov't*, 685 F.Supp.2d 747, 751 (M.D. Tenn. 2010).

## IV.   ARGUMENT

**A.   The Amended Complaint fails to plausibly allege grounds for municipal liability against the County.**

A plaintiff may bring a claim under § 1983 for deprivation "of any rights, privilege, or immunities secured by the Constitution and laws," as a result "of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C.  § 1983. To establish a claim under § 1983, a plaintiff must show that (1) a constitutional violation occurred; and (2) the defendant is responsible for the violation. *See Doe v. Claiborne County, Tenn.,* 103 F.3d 495, 505-06 (6th Cir. 1996). A government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or ***agents***." or under the theory of respondeat superior. *Monell*, 436 U.S. at 694(emphasis added).

Thus, municipal liability under § 1983 may only attach where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694; *See also infra Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004). Moreover, a § 1983 plaintiff must plausibly allege that defendant's policy or custom was the "moving force" behind the deprivation. *See Miller v. Sanilac County*, 606 F.3d 240, 254-55 (6th Cir. 2010).

There are four manners to establish municipal liability under § 1983: a plaintiff can either challenge (1) the official action of a municipal legislative body, agency, or board; (2) a policymaking decision by an individual with final decision-making authority; (3) deliberately indifferent failure to screen train or supervise its employees; or (4) indifference to a clear persistent pattern of illegal activity (i.e., a custom) about which policymakers knew or should have known. *Okolo v. Metropolitan Gov't Of*

*Nashville*, 892 F.Supp.2d 931, 941 (M.D. Tenn. 2012). The burden is on a plaintiff "to identify the policy, connect the policy to the County itself and show that the particular injury incurred because of the execution of that policy." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d at 382 (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993).

In the instant case, Plaintiffs allege that the private companies' probation officers wrongful conduct (i.e., threats, influence over the court, seeking warrants for revocation, etc.) and the orders of the State Court have caused their purported constitutional deprivations. [D.E. 41, generally]. However, Plaintiffs fail to clearly identify any specific **County** policies upon which they base their claims. [*Id*.]. Nor does the Amended Complaint allege sufficient facts to connect a policy to the County itself or establish a nexus between the policy and the injury. [*Id*.]. Instead, Plaintiffs improperly aver legal conclusions – couched as facts – or allege blanket assertions against "Defendants" to impute the private probation companies' and State Courts' alleged conduct to the County. [D.E. 41, generally]. Plaintiffs' reliance on vague pleading is especially disfavored in § 1983 cases. *See Okolo*, 892 F.Supp.2d at 937-88 (holding that *Iqbal*'s standards are strictly enforced in § 1983 cases and plaintiff could not sufficiently plead a city custom using legal conclusions couched as factual allegations) (citing *Iqbal*, 556 U.S. at 678); *See also Twombly* 550 U.S. at 555, n. 6; *Carden v. Town of Harpersville*, 2017 WK 4180858, *15 (N.D. Ala. Sept. 21, 2017) (district court required plaintiff to amend complaint to distinguish city's between municipal court's conduct in order to determine *Monell* liability in a lawsuit challenging probation system).

Thus, as articulated more fully below, Plainitffs have failed to allege sufficient facts to properly identify policies, connect the policies to the County, or demonstrate

that County policies were the moving force behind their alleged constitutional deprivations.

### 1. State Court actions

The Amended Complaint seeks to hold the County liable for the independent acts of the General Sessions and Circuit Courts. The judicial acts of these State Court – an arm of the State of Tennessee – do not constitute County policy. A local government can never be liable under § 1983 for the acts of those whom it has no control. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that § 1983 only imposes civil liability on a municipality for its own illegal acts). Rather, § 1983 liability only attaches to the government based upon those decisions of local government officers "whose [unlawful] decisions represent the official policy of the local government unit." *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). State law determines whether a particular official has policymaking authority to attach liability to the governmental entity. *Pembaur*, 475 U.S. at 483 (1986).

To determine whether an entity is an arm of the state, the court may consider factors such as: (1) the status of the entity under state law; (2) the degree of autonomy the entity has or the amount of control the state has over the entity; (3) whether the entity is concerned with state-wide or local issues; and (4) who is responsible for monetary judgments against the entity. *Alkire v. Irving*, 330 F.3d 802, 812 (6th Cir. 2003). Applying *Alkire*, the Sixth Circuit has held that various Ohio courts are "arms of the state" and "distinguishable from the [local government entities] in which [they] sit." *See Ward v. City of Norwalk*, 640 Fed. App'x 462, 465 (6th Cir. 2016) (holding that a Ohio municipal court is the arm of the state) (citing *Foster v. Walsh*, 864 F.2d 416, 418 (6th Cir. 1988); *See also Mumford v. Basinski*, 105 F.3d 264 (holding that Ohio

common pleas courts were "not a segment of county government, but an arm of the state for purposes of § 1983 liability . . .").

In their analysis, the *Ward* and *Mumford* Courts considered the following: (1) the courts are creation of state statute; (2) the courts are subject to the supervision of the Ohio Supreme Court; (3) the local governments has no authority to abolish the courts; (4) state law dictates the standards for controlling election of judges; and (5) state law compels the local governments to provide support for the operation of the courts operating within their borders. *Ward*, 640 Fed. App'x at 465; *Mumford,* 105 F.3d at 269. Importantly, the *Ward* Court recognized that even if there were circumstances in which a local government is responsible for a money judgment against the court, the remaining factors overwhelmingly favored a determination that the court is an arm of the state. *Ward*, 640 Fed. App'x 462, 465 (6th Cir. 2016) (holding that "*Alkire's* emphasis on the source-of-payment factor does not change the conclusion that the [municipal court] is arm of the state for § 1983 and Eleventh Amendment purposes. . .").

Under Tennessee law and the application of *Ward* and *Mumford*, the General Sessions and Circuit Courts are arms of the state for the purpose of § 1983 claims. The Amended Complaint contains no factual allegations that the County has any control over decisions made by the General Sessions or Circuit Courts. [D.E. 1, generally]. Rather, as in *Ward* and *Mumford*, these Courts are creations and under the control of the State. Pursuant to the Tennessee Constitution, the judicial power of the State is vested in the Tennessee Supreme Court and the Circuit Court and inferior courts established by the Tennessee legislature. Tenn. Const. Art. VI, § 1. The Tennessee Constitution also dictates the requirements for the election and qualification of judges in the Circuit and inferior courts. Tenn. Const. Art. VI, § 4. Additionally, the Constitution

sets forth specific requirements for elected judges with jurisdiction over criminal matters. Tenn. Const. Art. VI, § 5. Further, the Constitution sets forth mandates for inferior court judges' compensation. Tenn. Const. Art. VI, § 7.

Pursuant to the authority granted the legislature in the Constitution, the General Sessions Court is an inferior court created by State statute. Tenn. Code Ann. § 16-15-101. The statute provides that the State legislature holds the exclusive authority to abolish General Sessions Courts. Tenn. Code Ann. § 16-15-101(b). The Code sets forth specific qualifications for General Sessions Court judges. Tenn. Code Ann. § 16-15-201. The Code also dictates the powers vested in the General Sessions Courts, including but not limited to the "suspension and revocation of sentences imposed by them . . ." and the duties of the General Sessions Courts. Tenn. Code Ann. §§ 16-15-401 and 402. State legislation even controls the manner in which the General Sessions Courts shall keep their dockets in civil and criminal matters. Tenn. Code Ann. § 16-15-304.

Conversely, the Fifth Circuit recently held that Texas judges are local government policymakers for the purposes of § 1983 liability in a class action that challenged the Criminal Courts of Harris County's unwritten custom of failing to conduct individualized assessments in setting bail. *See O'Donnell v. Harris County*, 892 F.3d 147, 155-56 (5th Cir. 2018). However, the reasoning in *O'Donnell* is easily distinguishable. The *O'Donnell* Court determined that County judges are policymakers for the municipality because Texas's constitution "explicitly establishes that judges are county officers." *O'Donnell*, 892 F.3d at 152-53. Unlike Texas, there is no provision in the Tennessee Constitution that explicitly – or impliedly – establishes that judges of the General Sessions or Circuit Courts are policymakers in the counties where they sit.

In the instant case, the Plaintiffs do not aver that the General Sessions and Circuit Courts are County policymakers. However, the Amended Complaint is replete with allegations conflating judicial acts of the State Courts with County. [D.E. 41, generally]. In large part, Plaintiffs entire lawsuit is premised upon their allegations that the State Courts assess "a variety of fines (as punishment for the offence) and fees (which are used to pay for municipal services), court costs, and litigation taxes [and often restitution to victims] without regard for the person's ability to pay." [D.E. 41, Page ID #515, ¶ 73]. Plaintiffs identify purported **policies** in the General Sessions and Circuit Courts wherein every person convicted of a misdemeanor offense is required to pay at least $25 per week (General Sessions) and $50 per week (Circuit Court) as conditions of their probation. [D.E. 41, Page ID #515, ¶ 76]. Then, in summarizing several paragraphs in which the Amended Complaint makes specific allegations regarding the State Court's judicial actions that and purported policies, Plaintiffs change course and allege that the County committed the previously alleged acts. [D.E. 41, Page ID #516, ¶ 79]. Plaintiffs' blatant attempt to mischaracterize State Court orders as County policy underscores the weakness of its case against the County and inability to establish *Monell* liability for Counts 5 – 16 of the Amended Complaint.

Based on the foregoing, none of the State Court's judicial acts constitute County policies or customs establishing *Monell* liability against the County.

### 2.     CPS and PSI contracts

The Amended Complaint also fails to establish *Monell* liability against the County based upon the alleged acts of the probation officers. Assuming *arguendo* that the County's County contracts with either CPS or PSI constitute County policy, the existence of these contracts alone does not render the County liable for constitutional violations

committed by CPS, PSI, or their employees. *See Graham*, 358 F.3d at 382-84; *See also Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. App'x. 459, 464-65 (6th Cir. 2001) (holding that contracting with medical services company to fulfill a government function did not remove the County's duties under the Eighth Amendment to take reasonable efforts to guarantee the safety of inmates; however, the County could not be held vicariously liable for any derelictions by the company without a showing that a county policy caused the suicide). Rather, "[t]here must be 'a direct causal link' between the policy and the alleged constitutional violation such the County's **deliberate conduct** can be deemed the 'moving force' behind the violation." *Graham*, 358 F.3d at 383 (citing *Waters v. City of Morristown*, 242 F.3d 353, 362 (6th Cir. 2001) (emphasis added). The Sixth Circuit cautions that courts should strictly adhere to these standards when analyzing § 1983 claims in order to "avoid *de facto* respondeat superior liability explicitly prohibited by *Monell*." *Id*. (citing *Doe*, 103 F.3d at 508).

Graham is instructive. The estate of an arrestee housed in a County jail, who died after ingesting cocaine upon his arrest, brought a §1983 claim against a County alleging deliberate indifference. *Graham*, 358 F.3d at 380. Plaintiff averred that the County's contract with a medical provider constituted a policy and the contract impermissibly created a policy of an "automatic deference" by jail personnel to the medical provider's staff. *Id*. at 381. The County conceded that its contract with the medical provider constituted a policy. *Id*. at 380. However, the Sixth Circuit determined that nothing in the contract was actionable under § 1983. *Id*. at 384. The Court noted that it was lawful for the County to enter into a contract with independent medical professionals to provide on-sight medical care to its inmates. *Id*. The allegations in plaintiff's complaint focused largely on the failure of the medical provider's employees to provide sufficient

care to the decedent. *Id.* at 385. The Court held that even if the decedent received constitutionally inadequate medical care, plaintiff had not shown that the County's policy was the moving force behind the constitutional violation. *Id.* The Graham Court granted the County's motion to dismiss for failure to sufficiently allege an offending policy or custom.

In the Amended Complaint, Plaintiffs exclusively rely upon the County's contracts with CPS and PSI to establish municipal liability against the County. [D.E. 41, generally]. However, Plaintiffs do not aver that it was unlawful for the County to enter into these contracts. [*Id.*].  Nor do Plaintiffs aver that the terms or the scope of the contracts require – or permit – the probation companies to conduct themselves contrary to Tennessee law, including Tenn. Code Ann. §§ 40-35-302 and 303. [Id]. Rather, both contracts require that the private probation companies adhere to Tennessee's private probation statute. [*See* **Exhibits 2 and 3** to the Amended Complaint]. As in *Graham*, Plaintiffs have failed to plead facts demonstrating any **deliberate** conduct by the County was the moving force behind Plaintiffs' purported constitutional deprivations. Rather, Plaintiffs seek to hold the County liable solely based upon a principal-agency theory or in respondeat superior. Thus, Plaintiffs reliance on the County's contracts with CPS and PSI alone are woefully insufficient to support a claim for municipal liability. *See supra Graham*, 358 F.3d at 382-84; *See also Starcher*, 7 Fed. App'x. at 464-65.

Based on the foregoing, the Amended Complaint fails to assert plausible claims under § 1983 arising from a County policy.

### 3.    No Causation

Assuming *arguendo* that the Amended Complaint sufficiently alleges a County policy that arises from its contracts with CPS and PSI, Plaintiffs cannot establish that

the contracts or the probation companies' alleged conduct were the moving force or "but for" cause of Plaintiffs' purported constitutional deprivations. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (holding that a plaintiff must show that a municipal policy or custom was the "moving force" behind his or her injury). Rather, each § 1983 claim asserted against the County in Counts 5-16 of the Amended Complaint entirely rests upon decisions made by the State Court. As a result, even taking Plaintiffs' factual allegations as true, Plaintiffs' purported damages are caused by judicial acts; Plaintiffs cannot make an end run around the State of Tennessee's sovereign immunity by asserting claims against the County.

The Amended Complaint details in great length the manner in which probationers are placed on probation. Plaintiffs concede that the State Court sentenced Plaintiffs to probation and to pay costs and fees. [D.E. 41, Page ID #155, ¶¶ 72-73]. The Amended Complaint alleges that the criminal defendants are not informed about the amount of their fees prior to pleading guilty to the underlying charges. [D.E. 41, Page ID #515, ¶ 74]. Further, Plaintiffs assert that "[a]s a matter of policy, every person convicted of a misdemeanor offense in General Session Court is required to pay at least $25 every week toward their court debts as a condition of probation, regardless of ability to pay. People convicted of misdemeanors in Circuit Court are required to pay at least $50 every month." [D.E. 41, Page ID #516, ¶ 76]. The Court also set the conditions of Plaintiffs' probations. [D.E. 41, Page ID #518, ¶ 91]. However, none of these acts were caused by County policy or its contracts with CPS and PSI.

Plaintiffs' claims are also largely premised upon their allegations that CPS and PSI sought warrants for violation of Plaintiffs' probation in order to line their pockets. [D.E. 41, Page ID #529-33, ¶ 144-165]. However, the Amended Complaint does not

allege any instances in which probation officers provided false statements to the State Court in order to ensure violations. [D.E. 41, generally]. Rather, the ultimate determination regarding whether to violate a probationer – or to require a secured money bond in a warrant for violation of probation – is made exclusively by the State Court. As a result, the State Court is the moving force behind Plaintiffs' purported damages. *See Ray v. Judicial Corrections Services, Inc.*, 2017 WL 660842, 815-16 (N.D. Ala. Feb. 17, 2017). Without demonstrating that the orders were predicated on misrepresentations or omissions of material facts, the State Court's judicial actions sever the chain or causation between Plaintiffs' injuries and any purported wrongdoing by the probation officer. *See Powers v. Hamilton Co. Public Defender Com'n*, 501 F.3d 592, 609-10 (6th Cir. 2007).

Accordingly, none of the claims in Counts 5-16 of the Amended Complaint plausibly allege that the County caused Plainitffs' purported damages.

### 4. Sheriff's Department

The Amended Complaint does not allege a viable claim against the County in Count 15 of the Amended Complaint permitting equitable relief. In Count 15, Plaintiff Hilfort asserts a claim against the County and the County Sheriff[4] under the 14th Amendment for purported equal protection and due process violations. [D.E. 41, Page ID #607-608, ¶¶ 559-562]. Plaintiff Hilfort avers that "Defendants" have a policy and practice of violating probationers' substantive right against wealth-based detention by "enforcing" warrants for violation of probation that require secured money bonds without an inquiry or findings concerning the ability to pay. [D.E. 41, Page ID #607, ¶

---

[4] As explained further in Section C below, a claim against Sheriff Helton in his official capacity is duplicative of a claim against the County. The Sheriff's Department is not a separate entity subject to a lawsuit.

561]. However, none of the supporting allegations regarding the issuance of the warrant actually assert that the County's policies or practices are the moving force behind the issuance of the arrest warrants requiring a secured money bond without the purported required inquiry. [D.E. 41, Page ID #532-33, ¶¶ 166-174].

Rather, the Amended Complaint contends that, in general, the probation companies' employees make sworn statements to the State Court petitioning for probationers' arrest. [D.E. 41, Page ID #532, ¶ 170]. Plaintiffs do not aver that the statements provided by the probation officers are false, and the probation companies are not named as Defendants to Count 15. [*Id.*]. The Amended Complaint asserts that the State Court issues the warrants for violation of probation. [D.E. 41, Page ID #532, ¶ 170]. The Plaintiffs also aver that, as a result of the State Courts' policies and practices, a person must stay in jail until the General Sessions Court conducts violation-of-probation hearings on Thursdays. [D.E. 41, Page ID #533, ¶ 171]. Thus, the Plaintiffs squarely contend that the State Court is the body which ultimately determines whether to issue a money bond and when an arrestee is permitted to go before the Court. [D.E., Page ID #533, ¶¶171-72]. The Amended Complaint is devoid of any factual allegations that a County policy or custom is the driving force behind the issuance of a warrant for violation of probation requiring a secured money bond.

Plaintiff Hilfort cannot maintain her § 1983 equitable claim for injunctive relief against the County without sufficiently stating a viable claim against the County. The Supreme Court made this point clear in *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29 (2010): "*Monell's* 'policy or custom' requirement applies in § 1983 cases irrespective of whether the relief sought is monetary or prospective." *Id.* at 39. Here, although the County is the only Defendant named a party to Count 15, the Plaintiffs have

not alleged any unlawful conduct by the County. Plaintiff Hilfort does not appear to aver that the Sheriff Department's purported policy of either executing facially valid warrants or housing an arrestees are the moving force due process and equal protection claim. Thus, the County is not subject to a § 1983 claim for equitable relief.

Based on the foregoing, Count 15 of the Complaint must be dismissed.

## C. The claim against Sheriff Helton is duplicative and should be dismissed.

Count 15 of the Amended Complaint asserts a claim against Sheriff Helton, only in his official capacity, and names the County as a separate defendant. [D.E. 41, Page ID #607-608). A claim against a public official in his official capacity under § 1983 represents an action against the governmental entity for which the public official is employed. *Johnson v. Metro. Govt. of Nashville and Davidson County, Tenn.*, Case No. 3:07-0979, 2008 WL 2066475, at *4 (M.D. Tenn. May 13, 2008) (quoting *Claybrook v. Birchwell*, 199 F.3d 350, 355 n. 4 (6th Cir. 2000)). Because the official capacity claims against Sheriff Helton is, in effect, simply a claim against the County, the official capacity claim against Sheriff Helton is duplicative and unnecessary. *See id.* ("These cases do articulate a reason for dismissing the official capacity claims – namely, that they are duplicative of the claims against the Metropolitan Government.") Therefore, to the extent that Count 15 is not otherwise dismissed, the official capacity claim against Sheriff Helton should be dismissed as duplicative.

## D. Supplemental State Law Claims

The County retains immunity against Plaintiffs' claims for abuse of process set for the Counts 20-23 of the Amended Complaint. [D.E. 41, Page ID #611-616]. As a threshold matter, Plaintiffs' supplemental claims should be dismissed if the federal

claims against the County are eliminated. *See WHS Entertainment Ventures v. United Paperworkers Intern. Union*, 997 F. Supp. 946, 954 (M.D. Tenn. 1998) (holding it is the preferred course of action for federal courts to decline exercising pendent jurisdiction when federal claims have dropped from the lawsuit in early stages) However, to the extent that the Court decides to exercise jurisdiction over Plaintiffs' pendent claims, all state law claim against the County are otherwise ripe for dismissal.

The plaintiffs contend that the County is liable for abuse of process in Counts 20-23 of the Amended Complaint. [D.E. 41, Page ID #611-616]. As a threshold matter, Plaintiffs' supplemental claims should be dismissed if the federal claims against the County are eliminated. *See WHS Entertainment Ventures v. United Paperworkers Intern. Union*, 997 F. Supp. 946, 954 (M.D. Tenn. 1998) (holding it is the preferred course of action for federal courts to decline exercising pendent jurisdiction when federal claims have dropped from the lawsuit in early stages) However, to the extent that the Court decides to exercise jurisdiction over Plaintiffs' pendent claims, all state law claim against the County are otherwise ripe for dismissal.

Plaintiffs' claims against the County for abuse of process arise under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101, *et seq.* ("GTLA"). However, these claims should be dismissed based upon the County's retention of immunity in this case. While governmental entities generally waive immunity for the negligent actions of employees, there are specific circumstances in which governmental entities have declined to waive such immunity. T.C.A. § 29-20-205 specifically provides:

> Immunity from suit of governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arise out of:

> (2)  False imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, *abuse of process, ....*

The statute clearly provides that a governmental entity's immunity is not removed for an abuse of process claim. Accordingly, the County in this case retains immunity and these claims must be dismissed.

Alternatively, the County would also be entitled to retain its immunity for any claim where the "injury arises out of . . . civil rights." Tenn. Code Ann. § 29-20-205(2); *See also Hunter v. City of Chatanooga*, 50 Fed. App'x 239, 241 (6th Cir. 2002). The term "civil rights" in T.C.A. § 29-20-205(2) has been construed to include claims that arise or could arise under the federal civil rights laws, e.g. 42 U.S.C. § 1983. *Campbell v. Anderson Co.*, 695 F.Supp.2d 764, 778 (E.D. Tenn. 2010); *Willis v. Neal*, 2006 WL 1129388 at *17 (E.D. Tenn. 2006) (citing *Hale v. Randolph*, 2004 WL 1854179 at *17 (E.D. Tenn. 2003). When the plaintiffs' state law claims against a governmental entity "arise out of and directly flow from" the allegations that an officer deprived an individual of civil rights, the alleged injuries arise out of "civil rights," and the governmental entity is immune under the TGTLA. *Id.*

In *Campbell*, the plaintiff brought a cause of action under 42 U.S.C. § 1983 alleging that Anderson County and several individual officers violated her constitutional rights, including failure to train and failure to supervise. *Campbell*, 695 F. Supp.2d at 769 and 772–776. In addition, she alleged various state causes of action, including assault and battery, intentional infliction of emotional distress, and negligence. *Id.* at 777. The court found that these "torts are alleged to have been committed solely in the context of the violation of Campbell's civil rights—this is in essence a civil rights suit."

*Id.* at 778.  The Court held that the County was immune under the GTLA and rejected plaintiff's efforts to "circumvent or avoid the County's immunity from suit under § 29-20-205(2) by couching some of her civil rights claims against the County in the guise of negligence."  *Id.*  The acts that the plaintiff alleged to be negligent were essentially "predicated on intentional tortious conduct involving the violation of her civil rights . . ." therefore the County retained its immunity under T.C.A. § 29-20-205(2).  *Id.*

In addition, in the case of *Johnson v. City of Memphis*, 617 F.3d 864 (6th Cir. 2010), the Sixth Circuit held that a plaintiff's claims that arise out of "the same circumstances giving rise to her civil rights claim under § 1983" fall within the exception under § 29-20-205(2).  *Johnson*, 617 F.3d at 872 (6th Cir. 2010).  Tennessee courts have continued to uphold this ruling.  *See e.g. Gregory v. City of Memphis*, 2013 WL 1966969, at *11 (W.D. Tenn. May 10, 2013) (finding that the plaintiff could not amend his complaint to proceed with his state law claims because his "state tort claims arose from the same circumstances giving rise to his civil rights claims under § 1983 and were therefore barred by the civil rights exception to the TGTLA's waiver of immunity"); *Dillingham v. Millsaps*, 809 F. Supp.2d 820, 852–853 (E.D. Tenn. 2011)(finding that the plaintiff's negligent "failure to train" claim under state law was identical to his § 1983 "failure to train" claim because they arose out of the same facts and were based on the same arguments).

In the instant action, the abuse of process claim against the County arises from the same facts and circumstances of the civil rights claims.  These claims clearly fall under the "civil rights" exception provided in the TGTLA wherein the County has retained its immunity against certain tort actions.  As such, the County would be entitled to immunity under the civil rights exception as well.

## V.    <u>CONCLUSION</u>

Accordingly, based upon the foregoing, the County respectfully requests that this Court enter an order dismissing the claims against the County in their entirety, with prejudice. Further, this defendant respectfully requests that this Court make the Order granting the County's motion to dismiss pursuant to Rule 54 of the Federal Rules of Civil Procedure.

Respectfully submitted,

*/s/Robyn Beale Williams*
Robyn Beale Williams, BPR #19736
Cassandra M. Crane, BPR #034889
**FARRAR & BATES, LLP**
211 Seventh Avenue North, Suite 500
Nashville, Tennessee 37219
(615) 254-3060
(615) 254-9835 Fax
robyn.williams@farrar-bates.com
casey.crane@farrar-bates.com
*Counsel for Giles County*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on this 6th day of August, 2018, a true and correct copy of the foregoing was sent via electronic filing to:

Kyle Mothershead
The Law Office of Kyle Mothershead
414 Union Street, Suite 900
Nashville, TN  37219
Phone: 615-982-8002
Fax: 615-229-6387
kyle@mothersheadlaw.com
*Counsel for Plaintiffs and Proposed Classes*

Elizabeth Rossi
Jonas Wang
Eric Halperin
Civil Rights Corps
910 17th Street NW, Suite 500
Washington, DC  20006
Phone: 202-599-0953
Fax: 202-609-8030
elizabeth@civilrightscorps.org
Jonas@civilrightscorps.org
eric@civilrightscorps.org
*Counsel for Plaintiffs and Proposed Classes*

Matthew J. Piers
Chirag G. Badlani
Kate E. Schwartz
Hughes, Socol, Piers, Resnick & Dym, Ltd.
70 W. Madison Street, Suite 4000
Chicago, IL  60602
Phone: 312-580-0100
Fax: 312-580-1994
mpiers@hsplegal.com
cbadlani@hsplegal.com
kschwartz@hsplegal.com
*Counsel for Plaintiffs and Proposed Classes*

J. Christopher Williams
Williams Law and Mediation Group
101 S. 1st Street
Pulaski, Tennessee  38478
Phone: 931-363-6500
Fax: 931-363-8904
cwilliams@newsouthlaw.com
*Counsel for Giles County*

Brandt M. McMillan
Tune, Entrekin & White, P.C.
315 Deaderick Street
Suite 1700
Nashville, TN 37238
Phone: 615-244-2770
Fax: 615-244-2778
bmcmillan@tewlawfirm.com

David W. Garrison
Scott P. Tift
Barrett Johnston Martin & Garrison, LLC
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Phone: 615-244-2202
Fax: 615-252-3798
dgarrison@barrettjohnston.com
stift@barrettjohnston.com

Daniel H. Rader, IV
Moore, Rader, Clift & Fitzpatrick, P.C.
P O Box 3347
Cookeville, TN 38502
Phone: 931-526-3311
Fax: 931-526-3092
danny@moorerader.com

*/s/ Robyn Beale Williams*

Robyn Beale Williams