IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| Karen McNeil, et al., | Case No. 1:18-cv-33 |
| Plaintiffs, | |
| | District Judge William L. Campbell, Jr. |
| v. | |
| | Magistrate Judge Jeffery S. Frensley |
| Community Probation Services, LLC, et al., | |
| Defendants. | JURY DEMAND |

_____

**First Amended Answer of Progressive Sentencing, Inc., PSI-Probation II, LLC, PSI-Probation, L.L.C., Tennessee Correctional Services, LLC, Timothy Cook, Markeyta Bledsoe, and Harriet Thompson**
_____

Defendants Progressive Sentencing, Inc., PSI-Probation II, LLC, PSI-Probation, L.L.C., Tennessee Correctional Services, LLC, Timothy Cook, Markeyta Bledsoe, and Harriet Thompson (collectively, the "PSI Defendants" or "these Defendants") answered the plaintiffs' First Amended Complaint (Corrected) [Doc. No. 41] on August 6, 2018 by filing an answer and counterclaim [Doc. No. 60]. Now, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, the PSI Defendants file this First Amended Answer. The PSI Defendants have not sought the court's leave to file this amended pleading because they received the plaintiffs' written consent to the filing of this amended answer on September 10, 2018 via email at 5:53 p.m. CDT.

### Introduction

As it regards the PSI Defendants, the vast majority of the plaintiffs' overblown complaint is hyperbolic fiction designed to poison the well, get the Court to prejudge the issues, and prohibit these Defendants from receiving a fair trial. The plaintiffs' attorneys inappropriately reference specific rulings from *Rodriguez v. Providence Community Corrections, Inc.*, 3:15-cv-01048 (M.D. Tenn. 2016) over and over again in their complaint because they received a lucrative settlement in that case. Now, in a transparent effort to get a quick and easy repeat result, they shamelessly present this case as though all private probation companies are exactly the same. The truth is that Timothy Cook, a long-time social

worker, runs a very different kind of company, designed not to maximize profit at the expense of the people he serves, but to provide a valuable service in the communities in which he operates. Further, PSI probation officers Markeyta Bledsoe and Harriet Thompson are compassionate, understanding women who treat every probationer with respect and kindness. The baseless allegations that they have threatened, extorted, lied to, discriminated against, and coerced the probationers under their supervision—all in the name of profit—are *completely fabricated and false*. The allegations in this case are a part of a larger political campaign by the plaintiffs' attorneys against all private probation companies in Tennessee, undertaken in the courts, without addressing the legislature or overtly challenging the constitutionality of the relevant statutes.

The PSI Defendants therefore ask only that they be judged on their own actions—and that the claims against them be evaluated by the evidence presented in this case and no other. If the PSI Defendants are provided the impartial process and trial guaranteed to them by federal law, they will be absolved of all of these fictitious and groundless accusations. Accordingly, the PSI Defendants deny the untruthful averments in the introduction to the plaintiffs' complaint at paragraphs 1, 2, 3, 4, 5, and 6. The remaining portions of the complaint are responded to as follows:

7.      The PSI Defendants admit that PSI Probation, L.L.C. entered into a contract with Giles County in 2011 to provide probation services, but they deny entirely that they were given "control" over the County's misdemeanor probation system, which is operated by state courts, who dictate what role the PSI Defendants will have in the system. Further, as a threshold matter, in Tennessee, the sentencing court is required to consider probation as a sentencing alternative in every misdemeanor case.[1] The sentencing court also determines solely in its discretion whether a probationary sentence will be supervised or unsupervised,[2]

---

[1] *See* Tenn. Code Ann. § 40-35-303(b), stating that "probation shall be automatically considered by the court as a sentencing alternative for eligible defendants . . ."
[2] *See* Tenn. Code Ann. § 40-35-303(c)(1), stating that "*If the court determines that a period of probation is appropriate, the court shall sentence the defendant to a specific sentence but shall suspend the execution of all or part of the sentence and place the defendant on supervised or unsupervised probation* . . ." (emphasis added).

Case 1:18-cv-00033   Document 80   Filed 09/11/18   Page 2 of 26 PageID #: 1103

and, if supervised, the court determines all the conditions of the supervised probation.[3] The PSI Defendants play no role in the process until after those determinations have been made and ordered by the courts.

8.    Denied.  Again however, as a threshold matter, it is critical to point out that—*as a matter of Tennessee law*—one of the conditions of supervised probation is that the probationer "*must pay* not less than ten dollars ($10.00) nor more than forty-five dollars ($45.00) per month" to pay the expenses of the supervising agency—whether it is a private or governmental agency.  Tenn. Code Ann. § 40-35-303(i)(1).  Consequently, the assertion in paragraph 8 that it is the PSI Defendants' contract with the County that creates a user-funded model of probation is complete misdirection; the Tennessee General Assembly created Tennessee's user-funded system of supervised probation by enacting these statutes, which the plaintiffs pretend they are not challenging.

9. – 11.    Denied.

12.    Admitted, except that it is denied that, in Giles County, the Circuit Court's warrants typically state a secured money bail amount.  The majority of the time in Giles County, arrest warrants for probationers who have not paid their costs state that they are to be released on their own recognizance ("ROR").

13. – 14.    Denied.

15.    The PSI Defendants admit there is a contract with Giles County that requires them to report noncompliance with the conditions of probation to the courts, but deny that the  it is the contract that allows them to prepare warrants, act as witnesses, and present evidence to the courts—processes which are clearly governed by Tennessee criminal law.  They further deny that they play any role in setting bond amounts, or ever recommend any sentence, "hold," or sanction to the courts, and deny that they ever threaten probationers with arrest for noncompliance, or that they have any inappropriate communications with any court officers.

---

[3] *See* Tenn. Code Ann. § 40-35-303(d), stating "Whenever a court sentences an offender to supervised probation, *the court shall specify the terms of the supervision and may require the offender to comply with certain conditions. . .*" (emphasis added).

16. – 17.    Denied.

18.    The PSI Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of paragraph 18. The PSI Defendants deny that they play any role in determining who the courts decide to sentence to supervised probation, and the remaining averments are also denied.

19. – 20.    Denied.

21.    Admitted.

22.    The PSI Defendants admit that the plaintiffs have wrongly leveled the exact same allegations against them as they did against the defendants in *Rodriguez*, and admit that plaintiffs' have done so even though they know the allegations are false and meritless against the PSI Defendants.

23.    The PSI Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in the first sentence of this paragraph, and they deny the remaining allegations, except that they admit they have operated a lawful and compassionate probation services program in Giles County for the past four years.

24. – 26.    Denied.

27. – 28.    Admitted.

29. – 30.    The PSI Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in these paragraphs.

31.    The PSI Defendants admit that defendant Markeyta Bledsoe ("Ms. Bledsoe") has supervised the probation of plaintiff Tanya Mitchell ("Ms. Mitchell") in her capacity as a probation officer for PSI, but they lack knowledge or information sufficient to form a belief about the truth of the remaining averments, except they admit that plaintiff Indya Hilfort is Ms. Mitchell's daughter.

32.    These Defendants admit that plaintiff Indya Hilfort is Ms. Mitchell's daughter, but they lack knowledge or information sufficient to form a belief about the truth of the remaining allegations.

33.    Admitted.

34. – 37.        These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in these paragraphs.

38.        Admitted.

39.        Admitted, except that PSI-Probation, L.L.C. changed names to Community Probation Services, L.L.C. on October 9, 2007.

40.        Admitted.

41.        Admitted, but it is denied that Tennessee Correctional Services, LLC has ever conducted any operations or activity in Giles County.

42.        Admitted.

43.        It is denied that Tennessee Correctional Services, LLC is a part of the PSI entities which have operated in Giles County.

44. – 45.        Admitted, except that these Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations as they regard CO-defendant CPS, and the PSI Defendants deny they charge "surcharges."

46.        These Defendants deny the County is required to use their services.

47.        Admitted.

48.        These Defendants lack knowledge or information sufficient to form a belief about the truth of the Averments in this paragraph.

49. – 50.        Admitted.

51.        These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in this paragraph about other defendants, and they deny that they always have discretion to determine how frequently probationers report or how they report.  These conditions are often specifically ordered by the courts.  They further deny that they ever recommend any disposition or sentence to the courts, and also deny all implications of the statement that they use their discretion in regards to "every other discretionary probationary decision discussed in this complaint."

52.     The PSI Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in this paragraph, particularly that they were acting under color of law for 42 U.S.C. § 1983 purposes, which is a legal determination the court will make in this case.

53. – 54.     Admitted.

55.     These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in this paragraph.

56. – 61.     Denied.

62. – 66.     These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in these paragraphs.

67.     Admitted.

68. – 71.     Denied.

72.     Admitted.

73.     Denied.

74.     These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in this paragraph.

75.     These Defendants admit that these are typical misdemeanor sentences, which vary according to the grade of misdemeanor the individual has committed.

76.     These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in this paragraph.

77.     Denied.

78.     These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in this paragraph.

79.     Denied.

80.     These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in this paragraph.

81. – 82.     Denied.

83.    These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in this paragraph.

84.    These Defendants admit that probationers have to travel to the place where rehabilitative classes are offered and that all services and classes are not free, and they deny the remaining averments.

85.    Denied.

86.    Admitted, except that any probationer who is already on probation with one company or the other is assigned to the same company so they do not have to report to both.

87.    Denied.

88.    Admitted that some judges will sentence a probationer to supervised probation until paid in full, but these Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining averments; these Defendants further deny any implication that they have any influence or input into any judges' decision to tie a probationary term to payment of any fees.

89.    Denied.

90. – 91.    Admitted.  However, to the extent that paragraph 91 implicates that the probation officer determines the conditions of probation, which are set by the courts and the legislature, those implications are denied.

92.    These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in this paragraph.

93.    Admitted, except that it is denied that the PSI Defendants set out all reporting requirements at their discretion; the conditions of probation are ordered by the courts.

94.    Admitted.

95.    Denied as stated.  Most of the rules are set by state statute.

96. – 97.    These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in these paragraphs.

98.    The PSI Defendants deny that their rules subject probationers to arrest and/or revocation of probation, which are criminal penalties created by Tennessee law and adjudicated by and governed by

judges, not probation officers. They further deny that any of their probation officers are so called "for-profit probation officers," PSI officers are paid a modest salary and their income does not vary. Otherwise, these Defendants admit that these are the standard rules of probation which are generally in place across the county and have been for many decades.

99. – 102.     Denied. The PSI Defendants charge nothing ($0.00) for the in-office drug tests administered by probation officers, no matter how long they are on probation or how many times they are tested. However, if a probationer tests positive for drugs, does not have a valid prescription which accounts for the positive test, and contests the positive result, then the urine sample is sent to a lab to be retested for confirmation. In that instance only, PSI charges probationers $25 for the lab test, which is the exact same amount PSI is charged by the lab. <u>There is no profit</u>. *Moreover, if the test comes back negative, PSI refunds the money to the probationer and pays the charge itself.*

Since 2014, PSI has lost $3,948.31 to these charges because they do not collect the money up front from the probationer, they do not make them pay the lab directly, they do not issue warrants because the charge has not been paid, and nor do they otherwise attempt collection, except to ask that the probationer pay the charge, and most do not. Consequently, the allegation that drug testing is "one of the most profitable aspects of the companies' business," is a good example of how false and untrue the allegations against the PSI Defendants in this case are. In fact, both Ms. Mitchell and Ms. Sonya Beard ("Ms. Beard") were drug tested by PSI *and neither one of them were charged anything for it*, so the plaintiffs' allegations that the company charges for and profits from drug tests are knowingly false allegations—and they are denied.

103.     Admitted.

104. – 105.     Denied.

106.     The PSI Defendants admit that they voluntarily started a program where their probationers who tested positive for drugs were given the option to attend educational classes on addiction—*for the purpose of giving them a way to avoid a judge's finding of a probation violation*. They also admit that they charge for the class because PSI has to pay independent contractors to provide the class.

107.    Denied.

108. – 111.    Admitted.

112. – 114.    Denied.

115.    These Defendants admit that failing to report for a probation meeting can be adjudicated a violation of probation, if the judges who make those decisions pursuant to Tenn. Code Ann. § 40-35-310, decide that it is a violation, the remaining allegations in this paragraph are denied.

116. – 117.    Denied.

118.    These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in this paragraph.

119. – 128.    Denied.

129. – 135.    These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in these paragraphs.

136. – 142.    These Defendants admit that they provide a form to probationers who cannot pay supervision fees which requests information about their financial situation, so that their ability to pay the fee can be evaluated and waived in appropriate cases.  The PSI Defendants' form was adapted from the similar form used by the United States Department of Housing.  All other allegations in these paragraphs are denied.

*Importantly, this form has been provided to plaintiff Ms. Mitchell on five occasions* (on 3/9/2018; 5/11/2018; 6/1/2018; 7/6/2018; and 8/3/2018), *and she will not fill it out.  At Ms. Mitchell's meeting on July 6, 2018, probation officer Erika Downing offered to ask Ms. Mitchell the questions on the form and fill it out for her while she was at the office, so it could be immediately considered.  Ms. Mitchell then spoke with one of the plaintiffs' attorneys in this case on the phone, and then declined to provide the information, telling Ms. Downing that she had been advised to wait to fill it out.*  So, it certainly seems that the plaintiffs' attorneys are purposefully prohibiting the class representatives' supervision fees from being waived—to the detriment of their clients—in order to maintain the false allegations in their complaint.  As this is an important explanatory denial in this Answer, a video recording of Ms. Mitchell's July 6, 2018

meeting, where she is advised to not fill out the form, is presented as **Exhibit 1** to this Answer.[4] It is also absolutely false that any PSI probationer has to pass a drug screen in order to have fees waived. That is another made up fact, included by the plaintiffs to try and make their case sound better.

143. These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in this paragraph.

144. – 149. Denied.

150. These Defendants admit that they carefully explain all the conditions of probation to probationers, including the condition that they must pay costs and fees at the first meeting, to ensure that the probationers in their care are informed as to what is expected of them from the courts.

151. These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in this paragraph.

152. – 153. Admitted. However, the PSI Defendants deny the misrepresented implication that their officers issue violation warrants solely for nonpayment of court costs or supervision fees, which PSI does not allow—as a matter of policy. Probationers assigned to PSI are told at all of their meetings that one of the court-imposed conditions of their probation is that they have to pay costs and fees and how much they owe. If at the end of the probationary term, the costs and fees have not been paid, the PSI Defendants are *required by law* to report all instances of nonpayment to the sentencing court.[5] Consequently, only when the term is about to be completed do PSI officers inform the court of any unpaid balances. This policy is designed to provide all probationers with the maximum possible amount of time to pay their costs and fees without a court finding that they are in violation of the conditions of their probation. So, yes, it is admitted that the probation officers for PSI have the discretion to issue a violation warrant for any instance of

---

[4] The PSI Defendants incorporate by reference, as **Exhibit 1** to this First Amended Answer, the video recording filed on August 8, 2018 pursuant to the Court's Order Granting them leave to manually file the video on a compact disc. [Doc. No. 64].

[5] Specifically, Tenn. Code Ann. § 40-35-303(i)(3) (2017) states, "Willful failure to pay the supervision fee imposed by this subsection (i) to the supervising entity shall be grounds for revocation of probation and *the supervising entity shall report all instances of nonpayment to the sentencing court*." (emphasis added).

nonpayment and that they exercise that discretion in the most lenient possible manner without themselves violating the law.

154. – 157.    Denied.

158. – 159.    Admitted, but these Defendants do not know if all General Sessions citations require reporting on a specific Thursday.

160. – 164.    Denied.

165.    These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in this paragraph.

166. – 167.    Denied.

168.    These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in this paragraph.

169.    Denied.

170.    Admitted, except that these Defendants deny that any arrest warrants have any monetary bail amount or "hold" on them when they are provided to the Court by PSI officers. The courts decide whether there will be any bail amount or a hold on the warrant, and they write it in at their discretion, without input from PSI officers.

171.    The PSI Defendants generally admit that this is an accurate description of how bail works.

172. – 174.    These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in these paragraphs.

175. – 176.    Admitted.

177. – 178.    These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in these paragraphs.

179. – 180.    Admitted. However, to the extent that paragraph 180 alleges that PSI officers communicate in any inappropriate way with officers of the court, those allegations are denied.

181. – 185.    Denied.

186.    Admitted.

187. – 188.    Denied.

189. – 194.    These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in these paragraphs.

195. – 198.    Denied.

199. – 264.    These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in these paragraphs.

265.    These Defendants admit that Ms. Mitchell is 53 and lives with her daughter, Ms. Hilfort, but these Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining averments in this paragraph.

266.    These Defendants admit that Ms. Mitchell has reported that she is unemployed, but they are without knowledge of her income situation, although, as stated above, they have provided her with the indigency form on five occasions where she could have reported this, but she declines to fill it out, and has been advised by her lawyers in this case not to fill it out so that her fees will not be waived, and so that they can maintain their claims based on manufactured facts.

267. – 268.    These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in these paragraphs.

269.    The PSI Defendants deny that Ms. Mitchell was ordered to pay $50 a month in supervision fees; the charge is for supervision fees is $45.  The remaining averments are admitted.

270.    The PSI Defendants deny that Ms. Mitchell was ever told that she had to report "bi-weekly."  She was told to report monthly.  The remaining averments are admitted.

271. - 272.    These Defendants deny that Ms. Mitchell was required to make the payment as stated. These Defendants are without knowledge as to whether anyone gave Ms. Mitchell $83.75 to make a payment, but admit that she paid $90.00 at her 10/24/2017 meeting.

273.    The PSI Defendants do not know whether family and friends have given Ms. Mitchell money, but admit that she has made several payments towards her supervision fees.  The PSI Defendants admit that Ms. Mitchell has discussed her court costs with the probation officers, and that she has not paid them.

They have also advised her to have her attorney petition the court for a cost reduction, and they have advised her to go to the clerk's office and file a motion for a court cost reduction on her own.

274.     These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in this paragraph.

275. – 276.     Denied.

277.     Admitted.

278.     Denied.

279. – 311.     These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in these paragraphs.

312.     These Defendants admit that Ms. Beard is 39 and lives in Lawrence County, but these Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining averments in this paragraph.

313.     These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in this paragraph.

314. – 316.     Admitted.

317.     Admitted, except that the characterization of Ms. Thompson as a "for profit" probation officer is denied.  Ms. Thompson earned a salary and did not profit from any fees.

318.  Denied.  Ms. Beard was drug tested twice the entire time she was on probation with PSI, and the timing of when she was drug tested had absolutely nothing to do with when she paid her fees.  The suggestion to the contrary is another instance of knowingly misleading information presented by the plaintiffs.

319.     Admitted that she passed both drug screens.

320.     Denied.  Ms. Beard never asked for her fees to be waived, and Ms. Thompson never told her that they could not be waived.

321.     These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in this paragraph.

322. – 323.     Denied.

323.     Denied.

324.     It is admitted that, in an effort to accommodate Ms. Beard, Ms. Thompson allowed her to report by phone (despite the judge's order that she report in person weekly), but it is denied that she had to fax anything; all she had to do was call.

325.     It is admitted that Ms. Thompson and Ms. Bledsoe both issued violation warrants for Ms. Beard due to her failure to report, new arrests, etc..., but the disingenuous insinuation in paragraph 325 that Ms. Beard was complying with the terms of her probation, but was violated anyway, is denied.

326.     It is admitted that Ms. Thompson filled out a violation warrant for Ms. Beard on September 1, 2016 after Ms. Beard had missed five (5) meetings without a valid reason, but the implication that it was Ms. Thompson who wrote "hold" on the warrant is denied.  Ms. Thompson never instructed the court what to do, never wrote "hold" or a bond amount on the warrants, but rather simply provided the facts for the court's consideration.

327.     Admitted.

328.     Admitted, but these Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in this paragraph that Ms. Beard reported any information to the Court, or that the Court did not respond to the information provided by Ms. Beard.

329.     Admitted, but these Defendants lack knowledge or information sufficient to form a belief about the truth of the averment in this paragraph that Ms. Beard's SSDI payments were suspended, or whether that was her only source of income.

330.     The PSI Defendants admit that she continued to report periodically, but these Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining averments in this paragraph.

331.     Denied.

332.     The PSI Defendants admit that on February, 3, 2017, Ms. Thompson completed a probation violation warrant because Ms. Beard had been arrested again, but deny the implication that Ms. Thompson wrote "hold" on the warrant.

333.     Admitted.

334.     Admitted, except that these Defendants lack knowledge or information sufficient to form a belief about the truth of the averment in this paragraph that her benefits were suspended.

335.     Admitted.

336.     The PSI Defendants deny these facts as stated by the plaintiffs.  They admit that "after" July 2017, Ms. Beard reported to Ms. Bledsoe with PSI, but deny the disingenuous implication by the plaintiffs' that she began reporting immediately after being released from the Giles County Jail on July 8, 2017.  Ms. Beard did not report to PSI again until September 1, 2017 because she had been incarcerated in other jails in the interim.  These Defendants also deny that Ms. Bledsoe reported she could not afford the payments.

337.     Denied.

338.     These Defendants admit that Ms. Bledsoe issued a *citation* warrant for nonpayment on September 12, 2017 because Ms. Beard's probationary term was ending on September 16, 2017, and PSI is required by law to report all instances of nonpayment to the court.

339.     These Defendants admit that the warrant was issued, but deny the disingenuous implication that PSI had a policy or practice of writing hold on any warrants; neither Ms. Thompson nor Ms. Bledsoe ever wrote "hold" on any warrants; they reported the facts, as required by law, and left it to the court to make all determinations regarding whether a violation had occurred.

340.     These Defendants admit that Ms. Beard was in jail in Lawrence County as stated (which Ms. Bledsoe did not know at the time), but these Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining averments in this paragraph.

341.     These Defendants admit that on November 30, 2017, both Ms. Beard and Ms. Bledsoe appeared at a hearing in Giles County.  These Defendants deny the characterization of the Court's finding, but admit that the Court determined after hearing the facts that Ms. Beard had not committed a probation violation by

not reporting to PSI (on one occasion) because she was incarcerated in another county at the time she was to report, despite the fact that she had missed other, prior appointments when she was not incarcerated.

342.    Admitted.

343.    Denied.

344. – 346.    These Defendants lack knowledge or information sufficient to form a belief about the truth of the averments in these paragraphs.

347.    Admitted.

348. – 362.    Denied.

363. – 390.    The averments in these paragraphs are not directed at the PSI Defendants. However, to the extent they allege any liability or cause of action against these Defendants, they are denied.

391.    These Defendants incorporate their prior responses.

392. – 484.    Denied.

485.    These Defendants incorporate their prior responses.

486. – 504.    The averments in these paragraphs are not directed at the PSI Defendants. However, to the extent they allege any liability or cause of action against these Defendants, they are denied.

505.    These Defendants incorporate their prior responses.

506. – 514.    Denied.

515.    These Defendants incorporate their prior responses.

516. – 524.    Denied.

525.     These Defendants incorporate their prior responses.

526. – 536.    The averments in these paragraphs are not directed at the PSI Defendants. However, to the extent they allege any liability or cause of action against these Defendants, they are denied.

537.    These Defendants incorporate their prior responses.

538. – 542.    Denied.

543.    These Defendants incorporate their prior responses.

544. – 548.    Denied.

PSI Defendants' First Amended Answer

549. These Defendants incorporate their prior responses.

550. – 553. The averments in these paragraphs are not directed at the PSI Defendants. However, to the extent they allege any liability or cause of action against these Defendants, they are denied.

554. These Defendants incorporate their prior responses.

555. – 558. The averments in these paragraphs are not directed at the PSI Defendants. However, to the extent they allege any wrongdoing or cause of action against these Defendants, they are denied.

559. These Defendants incorporate their prior responses.

560. – 562. The averments in these paragraphs are not directed at the PSI Defendants. However, to the extent they allege any wrongdoing or cause of action against these Defendants, they are denied.

563. These Defendants incorporate their prior responses.

564. – 567. Denied.

568. These Defendants incorporate their prior responses.

569. – 570. The averments in these paragraphs are not directed at the PSI Defendants. However, to the extent they allege any liability or cause of action against these Defendants, they are denied.

571. These Defendants incorporate their prior responses.

572. – 573. Denied.

574. These Defendants incorporate their prior responses.

575. – 576. Denied.

577. These Defendants incorporate their prior responses.

578. – 583. The averments in these paragraphs are not directed at the PSI Defendants. However, to the extent they allege any liability or cause of action against these Defendants, they are denied.

584. These Defendants incorporate their prior responses.

585. – 590. Denied.

591. These Defendants incorporate their prior responses.

592. – 597. Denied.

598. These Defendants incorporate their prior responses.

599. – 604.    Denied.

605.    These Defendants incorporate their prior responses.

606. – 612.    Denied.

613.    These Defendants incorporate their prior responses.

614. – 620.    The averments in these paragraphs are not directed at the PSI Defendants.  However, to the extent they allege any liability or cause of action against these Defendants, they are denied.

621.    The plaintiffs are not entitled to any of the relief, damages, or remedies, injunctive or otherwise, they demand or pray for in their complaint.

623.    To the extent these Defendants have not specifically addressed any allegations in the plaintiffs' complaint, such allegations are hereby denied.

624.    Based on one or more of the defenses pled below, the court should dismiss all of the plaintiffs' claims against these Defendants, award these Defendants all of their costs and attorneys' fees, and absolve these Defendants of any and all wrongdoing and liability under federal and state law.

## Affirmative Defenses

625.    All of plaintiff Tanya Mitchell's claims for equitable relief are barred by the doctrine of unclean hands because she is guilty of engaging in bad faith and deceitful conduct as regards the private supervision fees she complains of in her complaint.  Ms. Bledsoe and another probation officer with PSI (Erika Downing) have provided Ms. Mitchell with the indigency form on five separate occasions—for the purpose of going through the simple process of evaluating her ability to the pay the fee and likely waive it, if her claims of indigency are, in fact, true.  As shown in the video recording submitted as **Exhibit 1**, on July 6, 2018, the probation officer even offered to fill the form out for her to make it easy, but after speaking with one of the plaintiffs' attorneys in this case on the telephone, she declined to fill it out.  It is important to note that Ms. Mitchell had been offered this form multiple times, including well before the complaint in this case was filed.  Her inexplicable refusal to let the company evaluate her ability to pay the supervision fee is a bad faith attempt to prevent the company from waiving the fee, which would certainly make most of her claims moot.  Due to this bad faith conduct, the Court should dismiss all of her claims for equitable

relief, as well as all damages claims including monies paid as supervision fees, by virtue of the long-standing doctrine of unclean hands.

626.    Further, all of plaintiff Tanya Mitchell's claims must be dismissed for failure to state facts which plausibly provide a basis for any of her claims.  While the plaintiffs engage in inflammatory, conclusory, and generalized allegations against "the Defendants" up until approximately paragraph 198 of their complaint, when the time comes for the plaintiffs to set out specifically what actions have been taken towards Ms. Beard which could amount to any of their causes of action, they fall far short of the plausibility mark.  *See* Doc. No. 41, First Amended Complaint, p. 57–59.  In short, the absolute worst thing she accuses the PSI Defendants of doing is alleging that Ms. Bledsoe "conveyed to her" her that if "she stops making payments to PSI, Defendant Bledsoe will require her to report more frequently."  Doc. No. 41, First Amended Complaint, p. 58, ¶ 275.  While this statement is, in fact, not true, even if it were true, it could not plausibly form the basis of any of the claims pled.  Ms. Beard has failed to state claims for the same reasons.

627.    All of plaintiff Sonya Beard's constitutional claims brought pursuant to 42 U.S.C. § 1983 (counts seven, eleven, and sixteen) are barred by the one-year statute of limitations set forth in Tenn. Code Ann. § 28-3-104(a)(1)(B), which must be strictly construed.  Tenn. Code Ann. § 28-3-104(a)(3).  The complaint establishes that Ms. Beard was placed on the probationary sentence with PSI of which she complains on or around June 9, 2016, Doc. No. 41, First Amended Complaint, p. 64–65, ¶¶ 315–317, and that the first violation warrant was issued on September 1, 2016.  *Id.* at p. 66, ¶ 326.  Since the complaint was not filed for approximately 20 months after that, all her constitutional claims must be dismissed.

628.    Ms. Beard also lacks standing to assert any of her federal claims against the PSI Defendants because she completed her probationary sentence before the complaint was filed.  For the same reason, all of her claims are moot.

629.    The plaintiffs have failed to state a RICO claim upon which relief can be granted against any of the PSI Defendants because they have failed to plead with even a modicum of specificity what actual threats were made by these defendants, which could plausibly amount to any manner of extortion were actually

communicated between the individual PSI defendants and either plaintiff. The allegations in the complaint amount to nothing more than a clear statement of the law and conditions of probation, and an implication that the plaintiffs feared the potential repercussion of failing to meet the judicial established conditions of their probation. It surpasses the bounds of credibility to charge the PSI individuals employed in carrying out the mandates of the Giles County courts with the operation of a criminal enterprise rooted in extortion simply because they informed the plaintiffs of the potential consequences they might face by failing to comply with the conditions of their probation.

630. The plaintiffs have also failed to state plausible RICO claims because they have not sufficiently alleged the interstate commerce elements, and because they have not alleged that any members of the association-in-fact enterprise had an agreement to violate a substantive provision of RICO, and nor do they adequately plead a predicate act.

631. The plaintiffs have also failed to allege facts which could support their Equal Protection claims as pled in counts eleven, twelve, and sixteen. Rational basis is the applicable standard of review for Equal Protection claims when the questioned law or policy is not directed at a protected class of persons, and it is well-established that indigent persons are not a protected class. The plaintiffs have failed to plead facts which would allow them to meet their high burden of proof on this standard.

632. All of the plaintiffs' claims brought pursuant to 42 U.S.C. § 1983, must be dismissed because the PSI Defendants were not acting under color of law. Alternatively, if the Court determines that the PSI Defendants were acting under color of law, all the PSI Defendants are immune from all of the plaintiffs' constitutional claims brought pursuant to 42 U.S.C. § 1983 because they are entitled to absolute judicial immunity, quasi-judicial immunity, qualified immunity, and/or common law good faith immunity. To the extent any of these claims are pled against Timothy Cook in his individual capacity, he is equally entitled to these immunities.

633. Further, the PSI business-entity Defendants and/or Timothy Cook cannot be held liable for any of the 42 U.S.C. § 1983 claims because they do not have any a custom or policy that could be the driving force or cause of any of the plaintiffs' alleged harms.

634.     As for the alleged constitutional right to a neutral probation officer(counts seven and eight), the argument that the use of private, for-profit probation company is a de facto violation of the Fourteenth Amendment's substantive Due Process clause is clearly a frontal attack on the constitutionality of a validly enacted Tennessee statute which specifically authorizes the use of private probation offices.  The essence of the plaintiffs' claims  is that the presence of any profit motive on the part of the private probation actor renders the process violative of Due Process.  This argument could be applied to any private probation company in the state, and it is directly contrary to Tennessee Code Annotated §§40-35-302, -303 which expressly authorize the use of private probation providers, and mandate payment of the costs by probationers.  Consequently, no custom or policy created by the PSI Defendants could be the actual cause of their alleged constitutional violation.

635.     As for the alleged Equal Protection violation regarding the treatment of government versus private debtors(counts eleven and twelve), no custom or policy of the PSI Defendants could be the driving force behind any disparate treatment between to two categories of debtors.  The sentencing courts make the decision—with no input from the PSI Defendants—as to who gets supervised versus unsupervised probation.  Thereafter, all of the probationers assigned to supervised probation with the PSI Defendants are government debtors.  The PSI Defendants have no interaction with private debtors, so no custom or policy of the company could possibly be the cause of any disparate treatment.

636.     Similarly, no custom or policy of the PSI entity defendants is the driving force or cause of the alleged depravation of Due Process and Equal Protection as regards to the decision to keep an individual on supervised probation (or revoke or extend their probation) because of a failure to pay any costs or fees (count sixteen).  The PSI Defendants are literally required by law, Tenn. Code Ann. § 40-35-303(i)(3), to report "all instances of nonpayment" to the sentencing court.  They make these reports the same way for all probationers, with no recommendation as to any findings, dispositions, or sentences, and the court is the sole entity with the power to determine whether a probationary sentence should be revoked or extended.  *See* Tenn. Code Ann. § 40-35-310(a).  It is particularly evident for the PSI Defendants that no custom or policy of theirs is the driving force behind any such punishments because they do not even collect court

costs like other companies do, but rather, simply report to the courts what the clerk has reported to them regarding payment of court costs. Further, as regards the probationer's ability to pay (or whether their nonpayment was "willful"), the United States Supreme Court placed the burden of making this determination on the sentencing court many years ago in *Bearden v. Georgia*, 461 U.S. 660, 674 (1983).

637.    Moreover, the proper method of challenging the constitutionality of this statutory scheme is to challenge the statutes directly—rather than to attempt to circumvent the difficulty of that process by attempting to punish the private actors working in reliance on the validity of the law. Since plaintiffs' counts seven, eight, eleven, twelve, and sixteen are actually a facial attack on the constitutionality of Tennessee Code Annotated §40-35-301, et seq., they must be dismissed for failure to join an indispensable party under Rule 19 of the Federal Rules of Civil Procedure, as the the State of Tennessee is a necessary party.

638.    Upon the dismissal of all of the plaintiffs' constitutional and federal claims against these Defendants, all of their state law claims must be dismissed for lack of subject-matter jurisdiction.

639.    These Defendants have not been unjustly enriched, and nor have they engaged in any abuse of process. They have acted in accordance with Tennessee law and not engaged in any of the inappropriate behaviors described by the plaintiffs. The PSI Defendants demand that the plaintiffs be strictly held to their burden of proof on every element of these claims.

640.    The plaintiffs have failed to state a claim against Timothy Cook and any of the PSI Defendants for civil conspiracy because they have made, at best, only conclusory allegations without stating any material facts in support of them to establish all of the elements for a claim of civil conspiracy, which must be pled with some degree of specificity. Truly, all the plaintiffs have done in regards to this claim is state the elements without tying them to any real world facts. Further, as the only owner of the only relevant business entity operating in Giles County, Progressive Sentencing, Inc., Timothy Cook cannot have acted in concert with any other "person" for the purposes of establishing a conspiracy.

641.    All the claims against PSI-Probation, L.L.C., PSI-Probation II, LLC, and Tennessee Correctional Services, LLC must be dismissed because the companies are either not active entities in actual existence, or they have never operated any business activities in Giles County.

642.    42 U.S.C. § 1988 (b)'s prohibition on an award of attorneys' fees against a judicial officer should be construed to prohibit the plaintiffs from seeking attorneys' fees under that provision from the PSI Defendants.

643.    Pursuant to Rule 10(c) of the Fed. R. Civ. P., the PSI Defendants adopt by reference all the affirmative defenses pled by defendants Community Probation Services, LLC; Community Probation Services, L.L.C.; Community Probation Services; and Patricia McNair ("CPS Defendants") in their answer [Doc. No. 59].

644.    The PSI Defendants also raise the affirmative defenses of res judicata, waiver, issue preclusion, and claim preclusion.  The claims and damages alleged by the putative class in this matter all arise from valid court orders and judgments, which were entered after proceedings wherein a trial court determined that the terms of a defendant's probation were violated by failure to pay court costs and/or supervision fees.  All the issues raised by the plaintiffs could have been litigated in these trial court proceedings and hearings, but they were not.  As such, the plaintiffs have waived their right to bring these claims in a subsequent proceeding, and the doctrines of res judicata bars, claim preclusion, and issue preclusion bar their claims.

645.    As plaintiffs Ms. Beard and Ms. Mitchell's federal claims against the PSI Defendants are frivolous, unreasonable, and brought in bad faith, the PSI Defendants assert that they are entitled to an award of all of their attorneys' fees and related costs pursuant to 42 U.S.C. § 1988.

645.    None of the requisites of Rule 23 of the Federal Rules of Civil procedure are met by the plaintiffs in this action, and the named plaintiffs are not representative of other people who have served a term of supervised probation with the PSI Defendants.  The plaintiffs have not and cannot demonstrate the required elements of commonality, typicality, or numerosity to certify this lawsuit as a class action.  The named plaintiffs, Ms. Beard and Ms. Mitchell lack standing to assert any claim on behalf of any other person.

646.     The PSI Defendants will be prejudiced by having a joint trial with codefendants Community Probation Services, LLC, Community Probation Services, L.L.C., and Community Probation Services (the "CPS Defendants") because there is a substantial risk that the jury will conflate the actions of the two companies and confuse the identity of the probationers.  As such, these Defendants assert misjoinder and demand that the claims against them be severed from the claims against the CPS Defendants, so that they may receive a separate trial where only the actions of the PSI Defendants are litigated.

647.     The plaintiffs' claims are actually direct attacks on the constitutionality of Tennessee law. Specifically, the plaintiffs' challenge Tenn. Code Ann. § 40-35-303 and other statutes which allow Tennessee courts to sentence a defendant to supervised probation with a for-profit, private probation company.  Indeed, many of the plaintiffs' claims are based entirely on the fact that the companies profit from the collection of supervision fees—and nothing else.  Accordingly, this court should refuse to consider the plaintiffs' constitutional claims because the plaintiffs have not provided notice to the Office of the Tennessee Attorney General, which is required by Rule 5.1 of the Federal Rules of Civil Procedure. Similarly, the plaintiffs have failed to join an essential party as required by Rule 19 of the Federal Rules of Civil Procedure, and their case should therefore be dismissed.

648.     These Defendants reserve the right to amend this answer and plead additional defenses as more detailed information becomes available through the discovery process.

Respectfully Submitted,

/s/ Brandt M. McMillan
Brandt M. McMillan (BPR No. 025565)
Timothy N. O'Connor (BPR No.035276)
Tune, Entrekin, & White, P.C.
315 Deaderick St., Ste. 1700
Nashville, TN  37238-1700
p: (615) 244-2770 | f: (615) 244-2778
bmcmillan@tewlawfirm.com
toconnor@tewlawfirm.com

## Certificate of Service

The undersigned served this document via the Court's electronic filing system on:

Chirag Badlani
Hughes, Socol, Piers, Resnick & Dym, Ltd.
70 W. Madison Street, Suite 4000
Chicago, IL 60602
(312) 580-0100
Fax: (312) 580-1994
cbadlani@hsplegal.com

Kate E. Schwartz
Hughes, Socol, Piers, Resnick & Dym, Ltd.
70 W Madison Street, Suite 4000
Chicago, IL 60602
(312) 580-0100
Fax: (312) 580-1994
kschwartz@hsplegal.com

Elizabeth Anne Rossi
Civil Rights Corps
910 17th Street NW, Suite 500
Washington, DC 20006
(202) 599-0953
Fax: (202) 609-8030
elizabeth@civilrightscorps.org

Kyle F. Mothershead
The Law Office of Kyle Mothershead
414 Union Street, Suite 900
Nashville, TN 37219
(615) 982-8002
kyle@mothersheadlaw.com

Eric Halperin
Civil Rights Corps
910 17th Street NW, Suite 500
Washington, DC 20006
(202) 599-0953
Fax: (202) 609-8030
eric@civilrightscorps.org

Matthew J. Piers
Hughes, Socol, Piers, Resnick & Dym, Ltd.
70 W Madison Street, Suite 4000
Chicago, IL 60602
(312) 580-0100
Fax: (312) 580-1994
mpiers@hsplegal.com

Jonas Wang
Civil Rights Corps
910 17th Street NW, Suite 500
Washington, DC 20006
(202) 599-0953
Fax: (202) 609-8030
jonas@civilrightscorps.org

David W. Garrison
Barrett Johnston Martin & Garrison, LLC
Bank of America Plaza
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2202
Fax: (615) 252-3798
dgarrison@barrettjohnston.com

Scott P. Tift
Barrett Johnston Martin & Garrison, LLC
Bank of America Plaza
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2202
Fax: (615) 252-3798
stift@barrettjohnston.com

Daniel H. Rader , IV
Moore, Rader, Clift & Fitzpatrick, P.C.
P O Box 3347
Cookeville, TN 38502
(931) 526-3311
Fax: (931) 526-3092
danny@moorerader.com

Robyn Beale Williams
Cassandra M. Crane
Farrar & Bates
211 Seventh Avenue, North
Suite 500
Nashville, TN 37219
(615) 254-3060
Fax: (615) 254-9835
robyn.williams@farrar-bates.com
casey.crane@farrar-bates.com

John Christopher Williams
Williams Law and Mediation Group
101 S 1st Street
Pulaski, TN 38478
(931) 363-6500
Fax: (931) 363-8904
cwilliams@newsouthlaw.com

/s/ Brandt M. McMillan
Brandt M. McMillan