IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| Karen McNeil, et al., | Case No. 1:18-cv-33 |
| Plaintiffs, | District Judge William L. Campbell, Jr. |
| v. | Magistrate Judge Jeffery S. Frensley |
| Community Probation Services, LLC, et al., | JURY DEMAND |
| Defendants. | |

___

**PSI Defendants' Response in Opposition to Plaintiffs' Motion for Temporary Injunction**
___

Defendants Progressive Sentencing, Inc., PSI-Probation II, LLC, PSI-Probation, L.L.C., Tennessee Correctional Services, LLC, Timothy Cook, Markeyta Bledsoe, and Harriet Thompson (collectively, the "PSI Defendants" or "these Defendants") oppose the plaintiffs' motion for a temporary injunction as follows:

The PSI Defendants respond to the motion primarily to request that the Court carefully hold the plaintiffs to their burden of proof in ruling on their motion for a temporary injunction [Doc. No. 51]. Other than as it regards the burden of proof, the PSI Defendants do not argue the law, as they anticipate the County and the CPS defendants will do at length. Examining whether the plaintiffs have met their burden here is imperative because a temporary injunction is an "extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it.'" *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991) (internal quotations omitted). Holding them to their burden is absolutely critical in this circumstance, where the plaintiffs are asking the Court to prevent the elected Sheriff of a Tennessee county from enforcing an entire class of arrest warrants issued by experienced upstanding courts.

The plaintiffs have the burden of proof to provide the court with <u>*actual evidence*</u> that this is one of those extraordinary circumstances warranting a temporary injunction. The moving party bears the burden of demonstrating "entitlement to a preliminary injunction, and [this] burden is a heavy one," *Cox v. Jackson*, 579 F. Supp. 2d 831, 853 (E.D. Mich. 2008); "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion . . ." *Leary*, 228 F.3d at

739. As such, the plaintiffs cannot stand on the factual allegations made in their pleadings, especially their complaint, which is replete with conclusory falsehoods about the PSI Defendants made without evidentiary support.

The Court should also take extra care to hold the plaintiffs to their burden of proof because, in their motion for temporary injunction, they selectively chose what information to provide to the Court. For example, in their memorandum in support of their motion for a temporary injunction, the plaintiffs state the following in their "statement of facts," and present it to the Court as the most important evidence they are going to produce:

> The component of Defendants' scheme *most relevant to this Motion* is that the companies seek arrest warrants for probationers who the companies allege to have violated conditions of probation. Ex. 1 (sample violation-of-probation arrest warrants requiring secured money bail as a condition of release). These violation-of-probation warrants are routinely issued for the arrest of indigent misdemeanor probationers who, like Ms. Hilfort, are supervised on probation only because they cannot afford to pay in full their court debts. *Sometimes, the only conditions the company alleges the person violated are the conditions requiring payment of court debts and probation fees.* Ex. 2 (*sample violation*-of-probation arrest warrants, alleging solely non-payment, and requiring secured money bail as a condition of release).

[Doc. No. 52, Plaintiffs' Memo. in Support, p. 4] (emphasis added). In the referenced Exhibit 2, out of thousands and thousands of publicly available records, the plaintiffs present three examples of secured money bond warrants for failure to pay only, but only two of them are actually what they represent. Their first "sample" was either included by mistake, or it is misleading. It is for Indya Hilfort in November of 2017, and it is actually a violation for testing positive for drug use that makes no mention of failure to pay. [Doc. No. 52-2, PageID#778-779].

The other two are violations for failure to pay only, and each of them state a bond amount of $100 cash. [Doc. No. 52-2, PageID#s 781–782]. Despite this being their only known evidence, they go on in their motion to present their arguments to the Court like this is a routine occurrence, by making statements like, "As a matter of policy and practice, the Sherriff enforces these financial conditions of release on violation-of-probation warrants, including warrants issued *solely* for non-payments, even when he knows that the bond amount was determined with an inquiry and findings concerning ability to pay or consideration of alternative conditions." [Doc. No. 52, Plaintiffs' Memo. in Support, p. 5] (emphasis in original).

At the upcoming hearing, the PSI Defendants respectfully request that the Court pay close attention to whether the plaintiffs provide the Court with any *actual evidence* to prove their completely unsupported allegation that the Sheriff has *actual knowledge* of what level of inquiry the court made regarding the defendants' ability to

pay the bond amount. The PSI Defendants anticipate that no evidence will be presented to support this "fact," presented to the court by the plaintiffs.

Additionally, in the motion for a temporary restraining order which preceded this motion for a temporary injunction, the plaintiffs provided the Court with very selective documentation to support their motion regarding plaintiff Indya Hilfort's violation of probation. They provided a declaration, the Order/Disposition of the violation and the Revocation Order. [Doc. Nos. 42-1; 42-2; and 42-3]. Arrest warrants with secured money bond amounts are the very focus of their motion for a TRO and now their motion for a temporary injunction, but they did not include Indya Hilfort's arrest warrant as an exhibit to the motion for a temporary restraining order. The PSI Defendants surmise it is because the plaintiffs did not want the court to know what the violation of probation was for (as it is mentioned no where in their motion or memorandum for the TRO or the injunction). Thankfully, CPS was able to respond within hours of the surprise motion, and provide the Court with that information [Doc. No. 43-1], that the Court otherwise would not have had. Ms. Hilfort's violation of probation warrant was issued because she had allegedly been dealing illegal morphine with her children present. [*Id.*] Ms. Hilfort will likely face a substantial prison sentence for these felonies, which is an important consideration for a court in setting a bond amount.

The nature of the offense is one of the eight factors the Court is to consider when determining a bond amount under Tennessee law, Tenn. Code Ann. § 40-11-115(7), and it is relevant for this Court to consider in ruling on the plaintiff's motion for an injunction. In particular, the Court should consider that out of the 27 examples of POV warrants issued with bond amounts, seven (7) of them include the violation of failing to report to their probation officer. [Doc. No. 52-1, PageID#s 746, 747, 749, 751, 760, 766, 770]. One involves the failure to attend court ordered classes, and another involves failure to report a change in address. [Doc No. 52-1, PageID#s 756 & 759]. These warrants represent 33% of the plaintiffs' samples. Each of these warrants provides a real, relevant indication that the defendant is unlikely to attend the Court hearing for their violation, and yet, if the Court grants the plaintiffs' motion, VOP warrants with a bond for failure to appear could not be enforced.

This Court should also carefully examine the testimony of the two judges who were deposed in this matter because their testimony sharply contradicts the plaintiffs' bare assertion that no inquiry whatsoever is made regarding defendants' ability to pay when issuing VOP arrest warrants with bonds. In his deposition, Judge

Page 3 of 7
Case 1:18-cv-00033   Document 110   Filed 10/15/18   Page 3 of 7 PageID #: 1406

Russell Parkes provided extensive testimony regarding the inquiry the Court makes when presented with a probation violation affidavit regarding whether to set a bond, and what the appropriate amount of the bond should be. [*See* p. 36 through 54 of Exhibit 1 to this Response, the deposition of Judge Russell Parkes, which is presented in its entirety out of deference to the Court and so that all statements will be provided in their fullest context.] In particular, when asked whether he asks the probation officer presenting the arrest warrant about the defendant's ability to pay, Judge Parkes responded:

> 25· ·A.· · · There are times I do.
>
> Page 53
>
> ·1· ·Q.· · · Which times do you do that?· Under what
>
> ·2· ·circumstances would you ask?
>
> ·3· ·A.· · · I will ask many questions, including:· Are
>
> ·4· ·they employed?· Do they have family here?· How long
>
> ·5· ·have they been a member of this community?· How long
>
> ·6· ·have they been at that particular address?· Have they
>
> ·7· ·complied with the other terms of probation?· Have they
>
> ·8· ·missed probation appointments?· All of those factors.
>
> ·9· ·Q.· · · Do the probation officers ever recommend a
>
> 10· ·bond amount to you?
>
> 11· ·A.· · · No.· I'd be offended, I think.· It's not their
>
> 12· ·job.

[Exhibit 1, Deposition of Judge Russell Parkes, p. 52:25-53:12]. Similarly, Judge Richardson explained the process his Court conducts when issuing an arrest warrant for violation of probation, which includes questioning the probation officer regarding the nature of the violation and many other factors before the warrant is issued. [Exhibit 2, Deposition of Judge Robert C. Richardson, p. 17–24, again, the entire deposition is presented out of deference to the Court].

Another instance of selective presentation of evidence is that in their motion for a temporary restraining order, and motion for temporary injunction, the plaintiffs focus on CPS supervised probationer, Indya Hilfort.

The plaintiffs make no mention of PSI probationer, plaintiff Tanya Mitchell—even though an arrest warrant was just issued for her on September 19, 2018 regarding a violation of her probation for failing to pay her fines and court costs. [*See* Exhibit 3, Declaration of Markeyta Bledsoe, p. 2, ¶ 6, and Exhibit 4, 9/19/2018 Arrest Warrant for Tanya Mitchell]. They did not amend their earlier filed motion for a temporary injunction to provide the Court with this entirely relevant and probative information, and have they given no indication whatsoever that any evidence relevant to any PSI plaintiff—particularly Ms. Mitchell—would be presented at the hearing.

The reason the plaintiffs make no mention of this arrest warrant just issued for one of the named plaintiffs is that it is extremely harmful to their case against PSI and their credibility. It also reveals the degree to which the "facts" in their complaint are entirely unsupported when it comes to PSI. First, the affidavit presented regarding the violation was only presented because it was the end of Ms. Mitchell's probationary term. [Exhibit 3, p. 1, ¶ 5]. Second, even though she had failed to pay her supervision fees, this information was not included in the affidavit because PSI had determined to waive Ms. Mitchell's supervision fees because of information and documentation she had provided regarding her medical conditions. [Id. at p. 2, ¶ 7]. This is not the action of a company that can fairly or reasonably be described as follows:

> The supervision the companies provide, however, consists almost exclusively of continuous and repeated threats of jailing, humiliating abuses of power such as invasive drug screens during which employees of the companies observe probationers urinating (and the companies, in their discretion, then charge fees for each drug test[1] that they decide to administer), and repeated revocations and extensions of probation for not making payments that the companies and their employees ("private probation officers" or "for-profit probation officers"; collectively, the companies and their employees are referred to as "Private Defendants") know the probationers cannot afford.

[Doc. No. 41, Plaintiffs' Amended Complaint, p. 9, ¶ 3]. The plaintiffs' credibility should be considered by the Court in ruling on the motion for a temporary injunction, especially in the context of carefully holding the plaintiffs to their burden of proof—*with actual evidence*—and not accepting any conclusory or unsupported statements as "facts" upon which the law can be applied.

---

[1] It is established in the recently submitted declaration of Tim Cook that PSI also does not charge probationers for drug tests. [Doc. No. 103-1, Declaration of Tim Cook, p. 2, ¶ 8]. This is just another instance of the plaintiffs assuming that PSI engages in the same behavior as other probation companies.

Respectfully Submitted,

/s/ Brandt M. McMillan
Brandt M. McMillan (BPR No. 025565)
Timothy N. O'Connor (BPR No.035276)
Tune, Entrekin, & White, P.C.
315 Deaderick St., Ste. 1700
Nashville, TN 37238-1700
p: (615) 244-2770 | f: (615) 244-2778
bmcmillan@tewlawfirm.com
toconnor@tewlawfirm.com

## Certificate of Service

The undersigned served this document via CM/ECF on October 15, 2018:

Chirag Badlani
Hughes, Socol, Piers, Resnick & Dym, Ltd.
70 W. Madison Street, Suite 4000
Chicago, IL 60602
(312) 580-0100
Fax: (312) 580-1994
cbadlani@hsplegal.com

Kate E. Schwartz
Hughes, Socol, Piers, Resnick & Dym, Ltd.
70 W Madison Street, Suite 4000
Chicago, IL 60602
(312) 580-0100
Fax: (312) 580-1994
kschwartz@hsplegal.com

Elizabeth Anne Rossi
Civil Rights Corps
910 17th Street NW, Suite 500
Washington, DC 20006
(202) 599-0953
Fax: (202) 609-8030
elizabeth@civilrightscorps.org

Kyle F. Mothershead
The Law Office of Kyle Mothershead
414 Union Street, Suite 900
Nashville, TN 37219
(615) 982-8002
kyle@mothersheadlaw.com

Eric Halperin
Civil Rights Corps
910 17th Street NW, Suite 500
Washington, DC 20006
(202) 599-0953
Fax: (202) 609-8030
eric@civilrightscorps.org

Matthew J. Piers
Hughes, Socol, Piers, Resnick & Dym, Ltd.
70 W Madison Street, Suite 4000
Chicago, IL 60602
(312) 580-0100
Fax: (312) 580-1994
mpiers@hsplegal.com

Jonas Wang
Civil Rights Corps
910 17th Street NW, Suite 500
Washington, DC 20006
(202) 599-0953
Fax: (202) 609-8030
jonas@civilrightscorps.org

David W. Garrison
Barrett Johnston Martin & Garrison, LLC
Bank of America Plaza
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2202
Fax: (615) 252-3798
dgarrison@barrettjohnston.com

Scott P. Tift
Barrett Johnston Martin & Garrison, LLC
Bank of America Plaza
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2202
Fax: (615) 252-3798
stift@barrettjohnston.com

Daniel H. Rader , IV
Moore, Rader, Clift & Fitzpatrick, P.C.
P O Box 3347
Cookeville, TN 38502
(931) 526-3311
Fax: (931) 526-3092
danny@moorerader.com

Robyn Beale Williams
Cassandra M. Crane
Farrar & Bates
211 Seventh Avenue, North
Suite 500
Nashville, TN 37219
(615) 254-3060
Fax: (615) 254-9835
robyn.williams@farrar-bates.com
casey.crane@farrar-bates.com

John Christopher Williams
Williams Law and Mediation Group
101 S 1st Street
Pulaski, TN 38478
(931) 363-6500
Fax: (931) 363-8904
cwilliams@newsouthlaw.com

        /s/ Brandt M. McMillan\_\_
        Brandt M. McMillan