# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE – COLUMBIA DIVISION

| | |
|---|---|
| **KAREN MCNEIL, LESLEY JOHNSON,** | ) |
| **TANYA MITCHELL, INDYA HILFORT,** | ) |
| **and SONYA BEARD,** | ) **Case No. 1:18-cv-33** |
| **On behalf of themselves and all others** | ) |
| **similarly situated,** | ) |
| | ) **JURY DEMAND** |
| **Plaintiffs,** | ) |
| | ) **JUDGE CAMPBELL/** |
| **v.** | ) **MAGISTRATE JUDGE** |
| | ) **FRENSLEY** |
| **COMMUNITY PROBATION SERVICES,** | ) |
| **LLC; et al.** | ) |
| | ) |
| **Defendants.** | ) |

## GILES COUNTY, TENNESSEE'S OPPOSITION IN RESPONSE TO PLAINTIFF HILFORT'S MOTION FOR A PRELIMINARY INJUNCTION

Giles County, Tennessee[1] (the "County"), by and through counsel, hereby responds to Plaintiff Indya Hilfort's Motion for Preliminary Injunction ("Motion") [D.E. 51 and 52] as follows.[2]

## INTRODUCTION

Plaintiff Hilfort is seeking individual and class-wide injunctive relief to prohibit the County Sheriff's Department from executing facially valid arrest warrants issued by state court judges. In support of Count 15 of the Amended Complaint,[3] Plaintiff Hilfort

---

[1] Plaintiff Hilfort's claim against Sheriff Kyle Helton, in this official capacity, is duplicative of the claim against the County. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

[2] The County incorporates by reference the arguments set forth in its Motion to Dismiss [D.E. 61 and 62], CPS's Response to Plaintiff's Motion for Preliminary Injunction [D.E. 111], and PSI's Response to Plaintiff's Motion for Preliminary Injunction [D.E. 110].

[3] Plaintiffs filed their original Complaint [D.E. 1] and Motion for Class Certification [D.E. 5 and 6.] on April 23, 2018. Thereafter, on July 13, 2018, Plaintiffs filed the operative Corrected First Amended Complaint ("Amended Complaint") [D.E. 41], adding Count 15 solely on behalf of Plaintiff Hilfort [D.E. 41, PageID #607-08].

contends that state court judges who sit, in part, in Giles County issue arrest warrants for revocation of misdemeanor probation that require secured money bonds without first making an inquiry into or findings concerning the probationers' ability to pay or an assessment of alternatives to detention.[4] Plaintiff Hilfort avers that this practice violates the fundamental principles of equal protection and due process.

However, Plaintiff Hilfort has not sought available declaratory relief against state judicial officials to remedy her claim.[5] Instead, Plaintiff is attempting to make an end-run by enjoining the County in conjunction with Plaintiffs' remaining claims for monetary relief. Plaintiff Hilfort's request for § 1983 injunctive relief against the County belies well-established United States Supreme Court precedent. Pursuant to *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978) and its progeny, the United States Supreme Court has unambiguously held that: (1) a local government can only be liable for its own unconstitutional custom or policy; and (2) the **"custom and policy" requirement applies to § 1983 claims irrespective if the relief sought is prospective** or monetary. *See infra Los Angeles Co., Cal. v. Humphries*, 562 U.S. 29, 39 (2010). With respect to Count 15, the only policy attributed to the County – (i.e., that the Sheriff's Department executes facially valid arrest warrants) – is not unconstitutional nor is it the moving force behind Plaintiff Hilfort's alleged constitutional deprivations.

---

[4] Pursuant to Tennessee law, state trial judges have the sole authority to issue arrest warrants for revocations of probation and set any bonds thereon. *See supra* Tenn. Code Ann. § 40-35-311.

[5] *See Cain v. City of New Orleans*, 281 F.Supp.3d 624, 646 (holding that Eleventh Amendment immunity did not bar claims for prospective relief against state court judges challenging the judges' policies or practices of failing to conduct an inquiry into plaintiffs' ability to pay court debts before plaintiffs are imprisoned).

Further, Plaintiff Hilfort's claim that the County or Sheriff Helton, in his official capacity, can be enjoined as an enforcement agency or actor is not appropriate in this case. While the federal court does have the equitable authority to enjoin state actors from executing unconstitutional state laws, Plaintiff has not requested such relief. Plaintiff Hilfort does not challenge the constitutionality of the laws permitting the court to issue warrants for revocation, establishing the factors considered when setting bond, or permitting the Sheriff to execute warrants. Rather, Plaintiff Hilfort is requesting injunctive relief that will require the Sheriff (an executive officer) to review each and every arrest warrant for misdemeanor probation issued by several state court judges – who do not adhere to a uniform policy – and make an independent determination regarding whether the judges considered indigency and alternatives to bond.

Finally, even assuming *arguendo* that Plaintiff Hilfort's claim under § 1983 permits the requested prospective relief against the County – which it clearly does not – Plaintiff Hilfort has failed to satisfy her burden of proof that she is entitled to injunctive relief. Plaintiff's unsubstantiated and general allegations, as set forth in her Motion, will not suffice. At the hearing on Plaintiff's Motion, she must provide **<u>evidence</u>** to support the material allegations in her Motion – currently asserted without any support. For these reasons, as explained further below, Plaintiff Hilfort's request for extraordinary injunctive relief, individually or on a class wide basis, must be denied.

## PROCEDURAL BACKGROUND

On July 13, 2018, Plaintiffs filed the operative Amended Complaint asserting twenty-five causes of action against varying combinations of defendants, the County, Sheriff Helton, in his official capacity, PSI Defendants and CPS Defendants. [D.E. 41, generally.] Plaintiffs Karen McNeil, Lesley Johnson, Tanya Mitchell, Hilfort, and Sonya

Beard[6] were sentenced to supervised probation by General Sessions or Circuit Courts judges after pleading guilty to misdemeanor charges. These former and current probationers filed the instant lawsuit asserting § 1983 and state law claims against the County, private probation companies – CPS and PSI – and the companies' employees challenging the County's misdemeanor probation system. With the exception of Count 15, Plaintiffs' claims against the County arise solely out of the County's contracts – permitted under Tennessee law, codified at Tenn. Code Ann. §§ 40-35-302 and 303 ("Tennessee Private Probation Statute") – with Tennessee licensed private probation companies.

In Count 15 of the Amended Complaint, Plaintiff Hilfort asserts a claim for injunctive relief (solely against the County) based upon her allegations that state court judges fail to make sufficient inquiries into probationers' ability to pay money bond at the time they issues arrest warrants for revocation of probation. [D.E. 41, ¶¶ 559-562, PageID # 116-117]. The only supporting allegation against the County is that its Sheriff's Department **executes** the warrants issued by state court judges. Specifically, this Count alleges that "Defendants" have:

> a policy and practice of violating probationers' substantive right against wealth-based detention by enforcing secured financial conditions of release that are pre-printed on violation of probation arrest warrants and that are determined without an inquiry into or findings concerning ability to pay, without any pre-deprivation process, assessment of alternatives to detention, inquiry into whether the Plaintiffs pose a danger to the community or a risk of flight, or any findings regarding the need for detention in light of any particular governmental interest.

*Id.* at ¶ 561.

---

[6] Plaintiffs have filed a Motion for Class Certification[6] that has not yet been fully briefed or considered by the Court.

On July 13, 2018, Plaintiff Hilfort filed a Motion and Memorandum in Support of Motion for Temporary Restraining Order and Motion for Preliminary Injunction after learning that a state court judge issued an arrest warrant for revocation of probation that required a $2,500 bond. [D.E. 42.] Plaintiff Hilfort sought to prohibit the County from enforcing against her "any secured financial condition of release determined without an inquiry or findings concerning ability to pay, without consideration of alternatives, and without any finding that pre-revocation detention is necessary to meet a compelling government interest." [D.E. 42, PageID# 645.] Within hours of filing her Motion, the Court held a telephonic hearing and granted a TRO. [D.E. 45.] The parties later agreed to extend the TRO until a hearing on the merits. [D.E. 50.] Plaintiff Hilfort subsequently filed her Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction seeking relief individually and on behalf of the yet to be certified class. [D.E. 51 and 52.]

Pursuant to an order of this Court, the County has produced over 4000 pages of documents from the Circuit Court Clerk and Sheriff's Department related to the issuance of arrest warrants for violation of probation since January 1, 2018. Plaintiffs also were permitted to take the depositions of two state court judges, Circuit Court Judge J. Russell Parkes and General Sessions Court Judge Robert C. Richardson.[7]

---

[7] The County has filed contemporaneously herewith complete copies of the deposition transcripts of Judge Parkes and Judge Richardson.

# FACTUAL BACKGROUND[8]

Plaintiff Hilfort was sentenced to supervised probation following a guilty plea to a misdemeanor offense in the General Sessions Court in December 2016 and a guilty plea to reduced misdemeanor charges in Circuit Court in September 2017. [D.E. 41, PageID #550-51.]  In General Sessions Court, Plaintiff Hilfort was convicted of Failure to Appear on December 8, 2016. *See* **Exhibit A**[9].  Judge Richardson sentenced Ms. Hilfort to a suspended sentence and placed Ms. Hilfort on probation for 11 months and 29 days.  *Id*.  Thus, Ms. Hilfort's probation term began on December 8, 2017 and ended on February 20, 2019.  *Id*.

In Circuit Court, a Giles County Grand Jury indicted Ms. Hilfort for felony theft over $1,000 in violation of Tenn. Code Ann. § 39-14-103[10] on August 31, 2017. *See* **Group Exhibit B**.  Ms. Hilfort – who was represented by counsel – pleaded guilty to misdemeanor theft.  *Id*.  Pursuant to a plea agreement, Judge Parkes sentenced Ms. Hilfort to supervised probation for 11 months and 29 days, effective September 25, 2017.  *Id*.  Thus, if Ms. Hilfort did not violate the conditions of her probation, her probation should have ended on or around September 23, 2018.

---

[8] In support of her Motion, Plaintiff sets forth general allegations without support other than an affidavit a handful of arrest warrants.  The County recognizes that the Motion was filed prior to discovery – although Plaintiffs made multiple open records requests to the County in the months preceding Plaintiff Hilfort's Motion. Even after the County produced over 4000 pages of documents and the depositions of Judges Parkes and Richardson, Plaintiff tendered Stipulations of Fact asked the County without citing a single piece of supporting evidence. As of the instant filing, Plaintiff refuses to provide citations to evidence to support her claim.

[9] The County will enter certified copies of Ms. Hilfort's complete criminal files, including underlying judgment orders, at the hearing on Plaintiff's Motion to Dismiss.

[10] Co-plaintiff, Lesley Johnson, is the theft victim identified in Ms. Hilfort's indictment.

Less than two months after her conviction, Ms. Hilfort tested positive for marijuana in violation a condition of her probation on November 7, 2017. *Id.* On November 8, 2017, Judge Parkes issued an arrest warrant for Ms. Hilfort requiring $1,000 bond. *Id.* Thereafter, on March 27, 2018, Ms. Hilfort, who was represented by counsel, entered into a plea agreement and Circuit Court Judge Robert Jones entered a Revocation Order that partially revoked Ms. Hilfort's probation, requiring her to serve 60 days in the County Jail. *See* **Exhibit C**. Judge Jones gave Ms. Hilfort 10 days credit for time served on March 6, 2018 and March 19 through 27, 2018. *Id.* Judge Jones also extended Ms. Hilfort's probation for 11 months and 29 days to run concurrent with the separate General Sessions case. *Id.*

While on probation in Giles County, on July 29, 2017, a Lawrence County Grand Jury indicted Plaintiff Hilfort on one felony charge and two misdemeanor charges: (1) one count of unlawfully selling morphine, a schedule 2 drug, in violation of Tenn. Code Ann. § 39-17-417; (2) and two counts of unlawfully and recklessly endangering the life of a child in violation of Tenn. Code Ann. § 39-13-303. *See* **Exhibit D.** Thereafter, on July 17, 2018, Ms. Hilfort's probation officer, Patricia McNair (CPS), submitted an Affidavit of Complaint for Violation of Probation to Judge Richardson. *See* **Exhibit A**. Ms. McNair attested that Ms. Hilfort violated the first condition her probation that requires Ms. Hilfort to "obey the laws of the United States." *Id.* The Affidavit further provides information regarding the Lawrence County indictment for unlawfully selling a schedule 2 narcotic (morphine) and two counts of recklessly endangerment. *Id.* The Affidavit also provided information to Judge Richardson including the date of Ms. Hilfort's original conviction for failure to appear on December 8, 2016. *Id.* In addition, the Affidavit informed Judge Richardson that Ms. Hilfort previously violated her probation in

November 2017. Judge Richardson issued an arrest warrant and set a bond in the amount of $2,500. *Id.* Following this Court entering a TRO, Judge Richardson dismissed the July 17th warrant. *See* **Exhibit E**.

## STANDARD OF REVIEW

A preliminary injunction is an "extraordinary remedy involving the exercise of very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). In ruling on a motion for preliminary injunction, the court must consider the following four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether the issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a primary injunction. *Blue Cross & Blue Shield Mut. Of Ohio v. Blue Cross and Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997). The question of whether the movant has a strong likelihood of success is the primary question to be determined in deciding whether to grant and preliminary injunction. *Nat'l Bd. of YMCA v. Flint YMCA*, 764 F.2d 199, 200 (6th Cir. 1985).

Courts are "not inclined to grant the extraordinary remedy of a preliminary injunction based upon inferences or disputed proof." *Great Am. Opportunities, Inc. v. Cherry Bros., LLC*, 2018 WL 2218959 at *2 (M.D. Tenn. May 15, 2018). The movant must present evidence that goes beyond the unverified allegations of the pleadings and motion papers. *Doe #1 by and through Lee v. Sevier Co., Tenn.,* 2017 WL 3038144, at *2 (E.D. Tenn. July 17, 2017). Moreover, "the proof required for a plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary*, 228 F.3d at 395.

In the instant case, for the reasons set forth below, Plaintiff cannot meet her burden of proof to obtain the extraordinary relief that she seeks on behalf of herself or on behalf of the yet to be certified class.

**ARGUMENT**

**I.     Plaintiff Has Failed to Establish a Likelihood of Success on the Merits**

    **A.     Plaintiff cannot establish *Monell* liability against the County**

Section 1983 creates liability against "[e]very person who, under the color of [state law], subjects or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. A local government may be liable under § 1983 if the government body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 692 (1978)*; See also City of Los Angeles v. Lyons*, 461 U.S. 95, 120 (1983) (noting that "[a]n indispensable prerequisite of municipal liability under 42 U.S.C. § 1983 is proof that the conduct complained of is attributable to an unconstitutional official policy or custom").

Thus, under *Monell* and its progeny, a municipal liability claim against the County must be examined by applying a two-prong inquiry: (1) whether the plaintiff has asserted the deprivation of a constitutional right; and (2) whether a County policy or custom is the moving force responsible for that violation. *Doe v. Claiborne Co., Tenn.,* 103 F.3d 495, 505-06 (6th Cir. 1996); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 2013). "*Monell*'s 'policy or custom' requirement applies in § 1983 claims ***irrespective of whether the relief sought is monetary or prospective***." *Los Angeles Co., Cal. v. Humphries*, 562 U.S. 29, 39 (2010) (emphasis added); *See also Lozman v. City of Riviera Beach, Fla*., 138 S.Ct. 1945, 1951 (2018) (holding that "[i]t is well established that in a §

1983 case a city or other local government entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official city policy'").

> 1. **Plaintiff cannot establish that a County policy or custom is the moving force behind her purported constitutional deprivation.**

In order to impose liability on a local government under § 1983, Plaintiff must prove that "action pursuant to official municipal policy" caused her injury. *Monell*, 436 U.S. at 691. A § 1983 plaintiff must satisfy a "rigorous" standard of causation and she must demonstrate a causal link between the municipal action and the deprivation of federal rights." *Board of County Com'rs of Bryan Co., Olk. V. Brown*, 520 U.S. 397, 404-05 (1997). The United States Supreme Court "recognized in *Monell* and have repeatedly affirmed, Congress did not intend municipalities to be held liable unless deliberate action attributed to the municipality directly cause a deprivation of constitutional rights." *Bryan Co.,* 520 U.S. at 415. Thus, a governmental entity is liable under § 1983 only when the entity itself is the "moving force" behind a constitutional violation. *Pembaur*, 475 U.S. at 481-82 (holding that local governments are only responsible for "their own illegal acts") (citing *Monell*, 436 U.S. 665-683); *See also Connick v. Thompson,* 563 U.S. 51, 61 (2011) (holding that "[a] municipality or other local government may be liable under [§ 1983] if the governmental body itself subjects a person to a deprivation of rights or cases a person to be subjected to such deprivation") (internal cites omitted); *City of St. Louis v. Praprotnik*, 458 U.S. 112, 123 (1998) (holding that "[t]he challenged action must have been taken pursuant to a policy adopted by the officials or officials responsible under state law for making policy in that area of the city's business")

In the instant case, the issuance of arrest warrants is the "moving force" behind Plaintiff's purported constitutional deprivation. In the Count 15 of the Amended, Plaintiff

Hilfort asserts a claim under the equal protection and due process clauses of the 14th Amendment. [D.E. 41, PageID #607-08.] Logically, these purported violations must occur as a result of either the court issuing the warrant, making the bond determination, or later conducting a hearing to determine indigency. While Plaintiff attempts to characterize her claim as challenging the "enforcement" of the warrant, the moving force behind her due process and equal protection claims arise from the determination of conditions of release. That determination is solely within the purview of the court.

There is no evidence that a County policy governs the issuance of the arrest warrants for revocation or probation or the conditions of release required by the warrant. Rather, under Tennessee law, trial judges have the sole authority to issue arrest warrants for renovation of probation. Tenn. Code Ann. § 40-35-311. Furthermore, Judge Parkes and Judge Richardson both testified that they solely make the determination regarding whether to require a secured money bond and, if so, the amount of the bond. *See* Richardson Depo. pp. 34:23-35:9; 56:22-57:2; Parkes Depo. 29:9-30:7. The Judges also testified that there is no set bond schedule. Rather, they both provided detailed testimony about setting bond amounts on a case-by-case basis. *See* Parkes Depo. pp. 26:21-28:16; 29:15-30; 26:6-34:37.

The only "policy" attributed to the County is the Sheriff's enforcement of arrest warrants issued by the state court. However, the County's policy is not unconstitutional. Plaintiff Hilfort does not – and cannot – aver that the arrest warrants at issue in this case are facially invalid: the County's policy of executing facially valid arrest warrants does not violate probationers' constitutional rights. *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005) (holding that "[a]n arrest pursuant to a valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false

imprisonment made pursuant to § 1983") (citing *Baker v. McCollan*, 443 U.S. 137, 143–44 (1979)); *See also Seales v. City of Detroit, Mich.*, 724 F. App'x 356, 359–60 (6th Cir. 2018); *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010); *Fettes v. Hendershot*, 375 F. App'x 528, 532 (6th Cir. 2010). Without establishing that the County's **own** unconstitutional policy is the moving force behind Plaintiff's Fourteenth Amendment claims, *Monell* prohibits holding the County liable – even for prospective relief. *Humphries*, 562 U.S. at 39.

In their pleadings and filings with the Court, Plaintiffs have repeatedly relied upon a case prosecuted by the same attorneys three years ago, *Rodriguez v. Providence Cmty. Corr., Inc.*, No. 3:15–cv–01048, 2015 WL 9239821 (M.D. Tenn. 2015), in support of their claims against the County. As a threshold matter, Plaintiffs' claim that the "allegations in this case are materially indistinguishable from those in *Rodriguez . . .*" is not true. There are significant differences in the underlying facts between these two lawsuits.[11]

The Court's analysis in *Rodriguez*, as relates to the secured money bond issue, is inapposite to whether the County is liable for Count 15 in this case. *See Rodriguez v. Providence Community Corr., et al*, 191 F.Supp.3d 758, 766-79 (2016).[12] In *Rodriguez*, the private probation company defendant was a party to plaintiffs' request for injunctive relief arising from jailing probationers pursuant to preset money bonds. *Id*. at 779. The *Rodriguez* Court rejected the private probation company's motion to dismiss the secured

---

[11] For example in *Rodriguez* (as explained further below), the courts routinely issued arrest warrants with secured money bonds solely for failing to pay fees in costs. In addition, a judge admitted that the probation officers, at time, set the bond amount

[12] The County respectfully disagrees with the application of *Monell*, 436 U.S. at 692 in *Rodriguez*, 191 F.Supp. 3d at 766. Although not relevant for the purposes of the County's current argument, the County argues in its pending Motion to Dismiss that it cannot be held liable for actions of an agent in *respondeat superior*.

money bond claim because the company's probation officers "actively participated in the setting of secured money bonds." *Id.* The *Rodriguez* Court also generally denied Rutherford County's motion to dismiss because, in relevant part, "the County is accused of acting through, PCC, Inc., as its agent." *Id.* Thus, Rutherford County's liability was inextricably linked to the probation company's liability. Conversely, in the instant case, the probation companies are not parties to Count 15. Even if this Court determines that the County is liable for the conduct of the probation companies and their officers, whose liability would not extend to Count 15 of the Amended Complaint. Therefore, the analysis and determination of whether Rutherford County was a proper party to the secured money claim in *Rodriguez* is not applicable to whether the County is liable in Count 15 of the instant case.

Based on the foregoing, there is no basis in law or fact to determine that the Plaintiff's purported constitutional deprivations as alleged in Count 15 are caused by a County policy or custom. Plaintiff Hilfort is not entitled to the prospective relief that she seeks in her Motion.

### 2. Plaintiff Hilfort is not entitled to injunctive relief through an "enforcement agent" theory.

While not addressed in her Motion, Plaintiff Hilfort will likely argue in reply that Sheriff Helton is subject to § 1983 injunctive relief despite the absence of an unconstitutional County custom or policy causing her alleged damages. In response to the County's pending Motion to Dismiss County, in relevant part, Count 15 of the Amended Complaint, Plaintiff Hilfort apparently attempts to avoid *Monell*'s "policy and custom" requirement by arguing that the Sheriff Helton can be enjoined as an enforcement actor.

[D.E. 96, PageID # 1225-29.] However, the authority relied upon by Plaintiff does not permit the expansive application of Ex Parte Young that Plaintiff requests from this Court.

Ms. Hilfort argues that Sheriff Helton, as a local government official, may be enjoined because the federal court has equity jurisdiction "to enjoin the threatened enforcement of a state law which contravenes the federal Constitution." [D.E. 96, PageID #1226] (citing *Terrace v. Thompson*, 263 U.S. 197, 214 (1923). Ms. Hilfort specifically relies upon authority set forth in *Ex Parte Young*, 209 U.S. 123 (1908) for her requested injunctive relief. [D.E. 37, PageID #1226-27.] The *Ex Parte Young* Doctrine permits a claim for prospective relief against a state official "to end a continuing violation of federal law." *See Diaz v. Mich. v. Dep't of Corr*., 703 F.3d 956, 964 (6th Cir. 2013). Under *Young*,

> Individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal Court of equity from some action.

209 U.S. at 155-56.

Courts "have not read *Young* expansively." *See Children's Healthcare is a Legal Duty, Inc. v. Deter*, 92 F.3d 1412, 1414 (6th Cir. 1996). Ex Parte Young and its progeny limit the exception. *Idaho v. Coeur d'Alene Tribe of Ohio*, 521 U.S. 261, 269 (1997) (affirming that, in applying Ex Parte Young, courts "must ensure that the doctrine of sovereign immunity remains meaningful, while also giving the recognition to the need to prevent violations of federal law"). *Young* "does not reach state officials who lack a 'special relationship to the particular statute' and 'are not expressly directed to see to its enforcement." *See Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1947 (2015).

In Plaintiffs' response to the County's motion to dismiss, they rely heavily a Ninth Circuit case, *Moore v. Urquahart*, 899 F.3d 1094 (9th Cir. 2018). In *Moore*, a class challenged the constitutionality of a state statute that permitted sheriffs to enforce eviction orders without the opportunity for a hearing before the court. 899 F.3d at 1098. The Ninth Circuit found that the prospective relief sought against the sheriff was permitted under *Ex Parte Young* because he had some connection to the enforcement of the allegedly unconstitutional state statute, and Washington law assigned county sheriffs the duty to exercise the warrants. *Id* at 1103.

Here, unlike *Moore*, Plaintiff Hilfort is not seeking to enjoin Sheriff Helton from enforcing a discernable unconstitutional state law. Plaintiff does not challenge the constitutionality of any state law. Rather, Plaintiff Hilfort is challenging whether individual judges are failing to adhere to the Fourteenth Amendment when making distinct and separate decisions from the bench.

Plaintiff Hilfort is seeking to enjoin an executive officer from enforcing arrest warrants for revocation of probation, which are issued by multiple state court judges **who do not adhere to a single policy or custom** when they determine bond. Incredibly, Plaintiff Hilfort's request for relief would require that Sheriff Helton independently make a determination whether the judge sufficiently considered indigency or alternatives to money bond for every arrest warrant for revocation of misdemeanor probation issued in Giles County. Plaintiff Hilfort's request for relief also would require that this federal court disregard Tennessee state law that vests the exclusively authority to issue arrest warrant for revocation in trial court judges. Tenn. Code Ann. § 40-35-311. There is no authority to permit the application of the *Ex Parte Young* doctrine in this case.

## C. Plaintiff Has Not Established a Constitutional Violation.

Plaintiff Hilfort has failed to meet her burden of proof to establish an underlying Fourteenth Amendment due process or equal protection violations.[13] Plaintiff Hilfort avers that "Defendants" have a "policy and practice to enforce secured money bail, predetermined without an inquiry into ability to pay, against misdemeanor probationers accused of violating their probation." [D.E. 52, PageID #706]. Plaintiff also avers that probationers are subject to arrest warrants for violation of probation that require money bonds solely based upon a failure to pay fines and costs. *Id.* (emphasis added). In support of these averments, Plaintiff relies on general, exaggerated, and unsupported factual allegations without citing to evidence to substantiate her claims.[14] [D.E. 52, PageID #708-711]. Plaintiff's reliance on unsubstantiated allegations will not suffice to obtain injunctive relief. *See supra Leary*, 228 F.3d at 395.

Master bond schedules have been scrutinized for the potential of resulting due process and equal protection violations. *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (holding that "[u]tilization of a master bond schedule provides speedy and convenient release for those who have no difficulty in meeting its requirements. The

---

[13] Plaintiff Hilfort, the only named Plaintiff in Count 15, has not demonstrated that she has standing to seek injunctive relief on behalf of the purported class. *See Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) (holding that "[a] named plaintiff in a class action who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone—not for himself, and not for any other members of the class"; *See also Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class for that relief").

[14] It is impossible to determine the timeframe in which Plaintiff's allegations occurred. To the extent that Plaintiff is relying upon occurrences outside of the applicable on-year statute of limitations, the County will object to the Court considering untimely evidence. *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (holding that Section 1983 actions are governed by the state's general personal injury statute of limitations).

incarceration of those who cannot, without meaningful consideration of other possible alternative, infringes on both due process and equal protection requirements"). However, "[a] bail setting is not unconstitutionally excessive merely because a defendant is financially unable to pay the requirement." *United States v. McConnell*, 842 F.2d 105, 107 (1988 5th Cir.).

In her Motion, Plaintiff asserts several unsupported allegations that the County has "policy" of setting pre-determined bonds for warrants without an inquiry into relevant factors for setting bond. [D.E. 52, PageID # 709-711.] Plaintiff will not be able to prove these claims. As discussed further above, the judges who sit in the Giles County do not adhere to a bond schedule. Rather, Judges Richardson and Parkes both provided lengthy testimony about the various considerations that they rely upon before issuing an arrest warrant and setting a bond thereon. The decisions to set bonds are made on a case-by-case basis and do not conform to a single or cohesive policy. Plaintiff similarly relies on unsupported allegations that the County has a "policy" of keeping probationers incarcerated for "days or longer" prior to the opportunity to be heard by the court.

In support of her request for injunctive relief, Plaintiff Hilfort also claims that misdemeanor probationers are subject to arrest requiring secured money bond solely based upon a probationers' failure to pay fees and costs. [D.E. 52, PageID #706.]   In addition, Plaintiff Hilfort asserts that the Sheriff enforces warrants issued "solely for non-payments, even though he knows that the money bond was determined without an inquiry and findings concerning ability to pay or consideration of alternative conditions." [D.E. 52, PageID #710.] As a threshold matter, this allegation is not relevant to and should not be considered in support of Plaintiff Hilfort's Motion.  There is no evidence that Ms. Hilfort's probation has been revoked solely as a result of her failure to pay fines and costs.

Her revocations always have occurred with other charges – such as testing positive for marijuana, an arrest for selling morphine, or an arrest for endangering the lives of her children. Thus, Plaintiff Hilfort is no standing to injunctive relief on this basis, nor can she represent a class. *Hodger-Durgin*, 199 F.3d at 1045.

However, even if Plaintiff Hilfort or any other representative Plaintiff had standing, there is no evidence to substantiate Plaintiff's claim that there is a policy or common practice of issuing arrest warrants that require bonds solely based upon a failure to pay. More egregiously, Plaintiff has no evidence upon which to base her assertion that the Sheriff ***knows*** that the court commonly issues warrants that require a secured money bond solely for failure to pay. Plaintiff's willingness to make such baseless assertions – without qualifying that the allegations have been asserted based upon information and belief – is commonplace in her Motion.[15]

During the course of discovery, the County has produced revocation warrants issued by state court judges in Giles County since January 2018. There were only three instances in which the state court issued arrest warrants requiring money bonds solely based upon a failure to pay fines and costs. *See* Group **Exhibit F**. These three warrants were issued by two Circuit Court judges in January 2018 and, crucially, none of these warrants were issued against Plaintiff Hilfort or any other named Plaintiff. Moreover, Judges Parkes and Richardson both testified that it is not either of their current practices to require money bonds solely on the basis of failing to pay fees and costs. *See* Richardson Depo.22:9-13; Parkes Depo. 32:21-33:13.

---

[15] It is not clear why Plaintiff chose to highlight this issue – which is not pervasive in Giles County and is not alleged by any of the individual Plaintiffs – other than to attempt to bolster her reliance upon the *Rodriguez* Litigation.

Based on the foregoing, Plaintiff has failed to sufficiently establish a constitutional deprivation giving rise to injunctive relief.

## II.     The Balance of Harms Weighs Against Injunctive Relief

As Plaintiff cannot establish a likelihood of success on the merits of her claim against the County, the inquiry should end there. *See Gonzalez v. Nat'l Bd. of Exam'rs.*, 225 F.3d 620, 625 (6th Cir. 1997) (holding that a "finding that there is simply no likelihood of success on the merits is usually fatal" to a movant's request for injunctive relief"). To the extent that the Court continues its analysis, the balance of harms also weighs against granting Plaintiff Hilfort injunctive relief.

Plaintiff's proposed injunction would prohibit the Sheriff's Department from enforcing any arrest warrants for violation of probation that require a probationer to post a secured money bond – ***regardless of the grounds for revocation*** – unless the Sheriff can make a determination that the issuing judge made an inquiry or finding concerning ability to pay or considered alternatives to detainment. [D.E. 52, PageID #712.] "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, its suffers a form of irreparable injury." *Maryland v. King*, 133 S.Ct. 1, 3 (2012) (quoting *New Motor Vehicle Bd. v. Orrin W. Fox Co*., 434 U.S. 1345, 1351 (1977)). In this circumstance, the interest and potential harm to the State "merges with that of the public." *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott,* 734 F.3d 406, 419 (5th Cir. 2013).

The Sheriff's Department and their deputies – who likely do not have law degrees – cannot be expected to second guess state court judges by determining whether the court sufficiently considered indigency. The relief sought by Plaintiff Hilfort would, for all intents and purposes, result in the Sheriff's Department's inability to execute any arrest

warrants for misdemeanor probation that require a secured money bond. The allegations asserted in Count 15 do not necessitate such drastic relief.

Accordingly, the balance of equities weighs against granting Plaintiff injunctive relief.

## <u>CONCLUSION</u>

Based on the foregoing, the County respectfully requests that the Court deny Plaintiff Hilfort's Motion for Preliminary Injunction.

Respectfully submitted,

*/s/ Cassandra M. Crane*
Robyn Beale Williams, BPR #19736
Cassandra M. Crane, BPR #034889
**FARRAR & BATES, LLP**
211 Seventh Avenue North, Suite 500
Nashville, Tennessee 37219
(615) 254-3060
(615) 254-9835 Fax
robyn.williams@farrar-bates.com
casey.crane@farrar-bates.com
*Counsel for Giles County*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 15th day of October, 2018, a true and correct copy of the foregoing was sent via electronic filing to:

Kyle Mothershead
The Law Office of Kyle Mothershead
414 Union Street, Suite 900
Nashville, TN 37219
Phone: 615-982-8002
Fax: 615-229-6387
kyle@mothersheadlaw.com
*Counsel for Plaintiffs and Proposed Classes*

Elizabeth Rossi
Jonas Wang
Eric Halperin
Civil Rights Corps
910 17th Street NW, Suite 500
Washington, DC 20006
Phone: 202-599-0953
Fax: 202-609-8030
elizabeth@civilrightscorps.org
Jonas@civilrightscorps.org
eric@civilrightscorps.org
*Counsel for Plaintiffs and Proposed Classes*

Matthew J. Piers
Chirag G. Badlani
Kate E. Schwartz
Hughes, Socol, Piers, Resnick & Dym, Ltd.
70 W. Madison Street, Suite 4000
Chicago, IL 60602
Phone: 312-580-0100
Fax: 312-580-1994
mpiers@hsplegal.com
cbadlani@hsplegal.com
kschwartz@hsplegal.com
*Counsel for Plaintiffs and Proposed Classes*

J. Christopher Williams
Williams Law and Mediation Group
101 S. 1st Street
Pulaski, Tennessee 38478
Phone: 931-363-6500
Fax: 931-363-8904
cwilliams@newsouthlaw.com
*Counsel for Giles County*

Brandt M. McMillan
Tune, Entrekin & White, P.C.
315 Deaderick Street
Suite 1700
Nashville, TN 37238
Phone: 615-244-2770
Fax: 615-244-2778
bmcmillan@tewlawfirm.com

David W. Garrison
Scott P. Tift
Barrett Johnston Martin & Garrison, LLC
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Phone: 615-244-2202
Fax: 615-252-3798
dgarrison@barrettjohnston.com
stift@barrettjohnston.com

Daniel H. Rader, IV
Moore, Rader, Clift & Fitzpatrick, P.C.
P O Box 3347
Cookeville, TN 38502
Phone: 931-526-3311
Fax: 931-526-3092
danny@moorerader.com

*/s/ Cassandra M. Crane*