# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

KAREN MCNEIL, et al.,
On behalf of themselves and all others similarly situated,

Plaintiffs,

v.

COMMUNITY PROBATION SERVICES, LLC, et al.,

Defendants.

Case No. 1:18-cv-00033
Judge Campbell / Frensley

## PLAINTIFFS' OMNIBUS REPLY IN SUPPORT OF
## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

I. The Sheriff and/or the County Violate Equal Protection and Due Process by Enforcing Secured Money Bail Amounts on Violation-of-Probation Warrants......... 1

A. Plaintiffs' claims must be analyzed under equal protection and due process...... 1

B. Strict scrutiny applies to government conduct that infringes Plaintiffs' rights against wealth-based detention or to bodily liberty................................................. 6

II. CPS Defendants' Arguments for Applying Rational Basis Review are Meritless ..... .8

A. *Tate*, *Williams*, *Bearden*, and *Rainwater* require heightened scrutiny................... 8

B. *Walker*'s analysis is inapplicable where, as here, wealth-based detention far exceeds 48 hours……………………………………………………………….……11

C. *McGinnis* and *Doyle* do not support application of rational basis review ......... 14

III. Even Under Rational Basis Review, Defendants' Policies Are Unconstitutional...... 15

IV. The Secured Money Bail Amounts Are Imposed In Violation of Procedural Due Process...................................................................................................................... 18

V. Plaintiffs Seek to Enjoin Enforcement of Unconstitutional Secured Money Bail Amounts, But Do Not Seek to Enjoin the Execution or Issuance of Any Warrant .. 19

A. Plaintiffs properly seek relief from the County and the Sheriff ......................... 19

B. The relief Plaintiffs seek is an injunction against the enforcement of unconstitutional secured money bail *following* arrest ........................................... 20

VI. The Sheriff Can Be Enjoined from Violating the Federal Constitution Regardless of Whether He Is a County Policymaker or an Enforcement Actor, and Regardless of Whether He Acts on Behalf of the County or the State................................................. 22

A. The Sheriff can be enjoined as an enforcement actor ........................................ 22

B. Alternatively, the Sheriff is a County policymaker with a policy of enforcing unconstitutional money bail amounts .................................................................. 25

C. Defendants repeatedly misstate and misrepresent the issues and holdings in *Rodriguez v. Providence Community Corrections, Inc.* ............................................ 26

VII. *Younger* and *Rooker-Feldman* Abstention Doctrines Do Not Apply ......................... 30

A. *Younger* ................................................................................................................ 30

B. *Rooker-Feldman* .................................................................................................. 34

VIII. This Court Should Preliminarily Certify a Class for Purposes of Count 15 ............ 35

IX. Plaintiffs' Evidence.................................................................................................... 38

X. Balance of Harms and The Public Interest Overwhelmingly Support Granting the Preliminary Injunction............................................................................................... 39

Case 1:18-cv-00033   Document 134   Filed 11/02/18   Page 2 of 47 PageID #: 2104

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Afro Am. Patrolmens League v. Duck*, 503 F. 2d 294 (6th Cir. 1974)..........................................40

*Almodovar v. Reiner*, 832 F.2d 1138 (9th Cir. 1987) ....................................................................34

*Arevalo v. Hennessy*, 882 F.3d 763 (9th Cir. 2018)........................................................................35

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997)........................................................1

*Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378 (2015).......................................25, 38

*Bearden v. Georgia*, 461 U.S. 660 (1983) ............................................................................. passim

*Boddie v. Connecticut*, 401 U.S. 371 (1971) .................................................................................42

*Brown v. Trustees of Boston Univ.*, 891 F.2d 337 (1st Cir. 1989).................................................40

*Buffin v. City and Cty. of San Francisco*, No. 15-cv-04959-YGR, 2016 WL 6025486 ...............26

*Cain v. City of New Orleans*, No. CV 15-4479, 2017 WL 467685 (E.D. La. Feb. 3, 2017)........26

*City of Mayfield Heights v. Woodhawk Club Condo. Owners Assoc.*, 205 F.3d 1339 (6th Cir. 2000)...............................................................................................................................................17

*Clarkson v. Coughlin*, 145 F.R.D. 339 (S.D.N.Y. 1993)................................................................41

*Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985) ................................................17, 18

*Cole v. City of Memphis*, 839 F.3d 530 (6th Cir. 2016).................................................................41

*Cooper v. Aaron*, 358 U.S. 1 (1958) ..............................................................................................21

*County of Riverside v. McLaughlin*, 500 U.S. 44 (1991)................................................................14

*Daves v. Dallas*, No. 3:18-cv-0154-N (N.D. Tex. Sept. 19, 2018)..........................................24, 27

*Davis v. Hutchins*, 321 F.3d 641 (7th Cir. 2003) ...........................................................................40

*Davis v. Romney,* 490 F.2d 1360 (3d Cir. 1974)............................................................................40

*Diamond v. Charles*, 476 U.S. 54 (1986) .........................................................................................1

*Dombrowski v. Pfister*, 380 U.S. 479 (1965) .................................................................................36

*Dotson v. Clark*, 900 F.2d 77 (6th Cir. 1990).................................................................................39

*Doyle v. Elsea*, 658 F.2d 512 (7th Cir. 1981) ................................................................................15

*Ex parte Young*, 209 U.S. 123 (1908).................................................................................25, 26, 27

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ..................................38, 39

*FCC v. Beach Commn's, Inc.,* 508 U.S. 307 (1993).......................................................................17

*Fieger v. Ferry*, 471 F.3d 637 (6th Cir. 2006)................................................................................39

*Frazier v. Jordan*, 457 F.2d 726 (5th Cir. 1972) ..............................................................................4

*Fuentes v. Shevin*, 407 U.S. 67 (1972)......................................................................................14, 34

*G & V Lounge v. Mich. Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir. 1994).......................43

*Gagnon v. Scarpelli*, 411 U.S. 778 (1973)......................................................................................4

*GASH Assocs. v. Vill. of Rosemont, Ill.*, 995 F.2d 726 (7th Cir. 1993) .......................................38

*Gerstein v. Pugh*, 420 U.S. 103 (1975)................................................................................... passim

*Gibbons v. Ogden*, 9 Wheat. 1 (1824) ............................................................................................38

*Gibson v. Berryhill*, 411 U.S. 564 (1973) ......................................................................................37

*Gilbert v. Ferry*, 401 F.3d 411 (6th Cir.) .......................................................................................38

*Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402 (6th Cir. 2012) ............................................40

*Gratz v. Bollinger*, 539 U.S. 244 (2003)..........................................................................................8

*Green v. Johnson*, 513 F.Supp. 965 (D. Mass. 1981) .....................................................................41

*Greenholtz v. Inmates of Nebraska Penal 7 Correctional Complex*, 442 U.S. 1 (1979)............5, 6

*Griffin v. Illinois*, 351 U.S. 12 (1956)...........................................................................7, 9, 10, 26

*Habich v. City of Dearborn*, 331 F.3d 524 (6th Cir. 2003) ....................................................34, 35

iii

*Hafer v. Melo*, 502 U.S. 21 (1991) ....................................................................................... 25

*Hamama v. Adducci*, 261 F. Supp. 3d 820 (E.D. Mich. 2017) ................................................. 39

*Hill v. Snyder*, 900 F.3d 260 (6th Cir. 2018) ......................................................................... 34

*Holland v. Rosen*, 895 F.3d 292 (3d Cir. 2018) ................................................................. 2, 35

*Hunt v. Roth*, 648 F.2d 1148 (8th Cir. 1981) ......................................................................... 35

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997) ................................................. 26

*In re Am. Med. Sys., Inc.*, 75 F. 3d 1069 (6th Cir. 1996) .................................................. 40, 41

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) ............................................................................. 37

*Kugler v. Helfant*, 421 U.S. 117 (1975) ................................................................................. 36

*Lance v. Dennis*, 546 U.S. 459 (2006) ................................................................................... 39

*Leary v. Daeschner*, 228 F.3d 729 (6th Cir. 2000) ................................................................ 23

*Lehman v. MacFarlane*, 529 U.S. 1106 (2000) ...................................................................... 15

*Lewellen v. Raff*, 843 F.2d 1103 (8th Cir. 1988) ................................................................... 36

*M.L.B. v. S.L.J.*, 519 U.S. 102 (1996) ..................................................................................... 7

*MacFarlane v. Walter*, 179 F.3d 1131 (9th Cir. 1999) .......................................................... 15

*Mandel v. Town of Orleans*, 326 F.3d 267 (1st Cir. 2003) .................................................... 38

*McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006) ...................................................... 38

*McGinnis v. Royster*, 410 U.S. 263 (1973) ........................................................................... 15

*Middlesex Cty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) ...................... 33

*Mills v. Rogers*, 457 U.S. 291 (1982) ..................................................................................... 3

*Moore v. Urquhart*, 899 F.3d 1094 (9th Cir. 2018) ................................................ 25, 26, 27, 46

*Morrissey v. Brewer*, 408 U.S. 471 (1972) .......................................................................... 4, 6

*Moss v. Patterson*, 555 F.2d 137 (6th Cir. 1977) ..................................................................... 5

*Murphy v. Hunt*, 455 U.S. 478 (1982) ................................................................................... 35

*Nat'l Ctr. for Immigrants Rights, Inc. v. I.N.S.*, 743 F.2d 1365 (9th Cir. 1984) .......................... 40

*O'Neill v. Coughlan*, 511 F.3d 638 (6th Cir. 2008) ............................................................... 33

*ODonnell v. Goodhart*, 900 F.3d 220 (5th Cir. 2018) ......................................................... 3, 16

*ODonnell v. Harris Cty.*, 892 F.3d 147 (5th Cir. 2018) .................................................... passim

*ODonnell v. Harris Cty., Texas*, 251 F. Supp. 3d 1052 (S.D. Tex. 2017) .................................... 2

*Pederson v. Louisiana State Univ.*, 213 F.3d 858 (5th Cir. 2000) ............................................ 41

*Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978) (en banc) ..................................... 11, 13, 34

*Ray v. Judicial Corr. Servs.*, No.: 2:12-CV-02819-RDP, 2013 WL 5428360 (N.D. Ala. Sept. 26, 2013) ................................................................................................................................ 35

*Reno v. Flores*, 507 U.S. 292 (1993) ....................................................................................... 3

*Robinson v. Purkey*, 2018 WL 5023330, 3:17-cv-01263 (M.D. Tenn. Oct. 16, 2018) (Trauger, J.) ....................................................................................................................................... 18

*Rodriguez v. Providence Cmty. Corrs., Inc.*, 155 F. Supp. 3d 758 (M.D. Tenn. 2015) ........ passim

*Romer v. Evans*, 517 U.S. 620 (1996) .................................................................................... 18

*Rosales-Mireles v. United States*, 138 S. Ct. 1897, (2018) ..................................................... 14

*San Antonio Independent School District v. Rodriguez*, 411 U.S. 1 (1973) ......................... 5, 6, 7

*Schultz v. Alabama*, No. 5:17-cv-00270-MHH (N.D. Ala. Sept. 13, 2018) ......................... 23, 27

*Senter v. Gen. Motors Corp.*, 532 F.2d 511 (6th Cir. 1976) .............................................. 40, 41

*Skinner v. Switzer*, 562 U.S. 521 (2011) ............................................................................... 38

*Soldal v. Cook County*, 506 U.S. 56 (1992) ........................................................................... 14

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013) ............................................. 35, 36

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) ................................................................. 35

iv

*Strawser v. Strange*, 105 F. Supp. 3d 1323 (S.D. Ala. 2015) .................................................. 21, 26

*Sun Ref. & Mktg. Co. v. Brennan*, 921 F.2d 635 (6th Cir. 1990)............................................ 33

*Suster v. Marshall*, 951 F.Supp. 693 (N.D. Ohio 1996) ........................................................ 40

*Tape Head Co. v. R C a Corp.,* 452 F.2d 816 (10th Cir. 1971)................................................ 40

*Tate v. Short*, 401 U.S. 395 (1971) .................................................................................... passim

*Terrace v. Thompson*, 263 U.S. 197 (1923).......................................................................... 25

*Tesmer v. Granholm*, 333 F.3d 683 (6th Cir. 2003) .............................................................. 37

*Thomas v. Haslam*, 2018 WL 3301648, Case No. 3:17-cv-00005 (M.D. Tenn. July 2, 2018)
(Trauger, J.)........................................................................................................................ 17, 18

*Trump*, 138 S.Ct. at ——, slip op. (2018).............................................................................. 17

*United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993) .................................. 14

*United States v. Salerno*, 481 U.S. 739 (1987) ...................................................................... 3

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002) ...................................... 26

*Walker v. City of Calhoun*, 682 Fed. App'x 721 (No. 16-10520) 2016 WL 4376539 (11th Cir.
Aug. 15, 2016) ................................................................................................................... passim

*Washington v. Glucksberg*, 521 U.S. 702 (1997) .................................................................. 3

*Washington v. Harper*, 494 U.S. 210............................................................................... 3

*Whren v. United States*, 517 U.S. 806 (1996) ....................................................................... 14

*Williams v. Illinois*, 399 U.S. 235 (1970) ........................................................................ passim

*Wood v. Detroit Diesel Corp.*, 213 F. App'x 463 (6th Cir. 2007) .............................................. 39

*Younger v. Harris*, 401 U.S. 37 (1971) ............................................................................. passim

*Zablocki v. Redhail*, 434 U.S. 374 (1978)............................................................................. 42

Defendants' briefs reflect fundamental misunderstandings of Plaintiffs' legal claims, the relief Plaintiffs' seek, and this Court's power to grant that relief. For all of the following reasons and those set forth in Plaintiffs' Motion for Preliminary Injunction, Dkt Nos. 51, 52, this Court should enjoin the County and the Sheriff from enforcing secured financial conditions of release on violation-of-probation warrants unless the warrant is accompanied by a record showing that constitutionally required substantive findings and procedural protections were provided. None of Defendants' arguments has merit.[1]

## I.  The Sheriff and/or the County Violate Equal Protection and Due Process by Enforcing Secured Money Bail Amounts on Violation-of-Probation Warrants

CPS Defendants' brief (Dkt. No. 111) obfuscates Plaintiffs' legal claims and confuses the applicable law.[2] Plaintiffs challenge government infringement on well-established substantive rights, and strict scrutiny applies to Defendants' policy and practice of infringing those rights.

### A.  Plaintiffs' claims must be analyzed under equal protection and due process

Plaintiffs allege violations of two well-established substantive rights: (1) the right against wealth-based detention, which arises under a convergence of equal protection and due process, and (2) the fundamental right to bodily liberty, which arises under the due process clause. Dkt. 52

---

[1] Defendants make numerous incorrect factual claims throughout their brief, which will be addressed as part of the hearing on Plaintiff's Motion for Preliminary Injunction and the evidence submitted prior to that hearing as per the deadlines set by the Court.

[2] Plaintiffs' Motion for Preliminary Injunction does not seek relief against CPS Defendants or PSI Defendants, yet both parties responded, and CPS Defendants filed a 37-page Response in Opposition to the Motion. Plaintiffs do not believe that CPS and PSI Defendants have standing to contest the Motion for Preliminary Injunction because they lack a legally protected interest relevant to Count 15. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997); *Diamond v. Charles*, 476 U.S. 54, 62 (1986). However, because their briefs were adopted by the County Defendants (Dkt. No. 112 at n.2), Plaintiffs respond in full to CPS's arguments.

   PSI Defendants did not make any substantive arguments in their brief and therefore Plaintiffs make only one point necessary to correct the reocrd. Plaintiffs did not withhold named Plaintiffs Indya Hilfort's violation-of-probation warrant from the Court, as Defendants claim (Dkt. 110 at 3). Plaintiffs were unable to obtain a copy of it because it had not been executed. Plaintiffs' counsel saw the warrant for the first time when CPS filed it on the record. Moreover, for all the reasons explained *infra* Part VI.C., the underlying allegation is immaterial to Plaintiffs' claim in this Motion.

at 7–13.[3] These rights have been consistently recognized, and are not, as CPS Defendants argue, an "erroneous conflation" of substantive due process, procedural due process, and equal protection. Although heightened scrutiny applies to government conduct infringing these rights (*see infra* Part I.B.; Dkt. No. 52 at 12–13 & n.9), Plaintiffs' claims do not require recognition of a "new fundamental right" (Dkt. No. 111 at 10), a right "to release on recognizance" (Dkt. No. 111 at 8, 9), or a right against "any form" of wealth-based detention (Dkt. No. 111 at 21).[4] Nor do Plaintiffs

---

[3] In support of their argument that these substantive rights do not exist (at least, not for probationers), CPS Defendants misstate the history of secured money bail, arguing incorrectly that "the modern money bail system is deeply rooted in the history and tradition of our Republic." (Dkt. No. 111 at 10–12). In fact, commercial secured money bail was (and is) unlawful in England, and did not even exist in America until 1898. *See* Department of Justice, National Institute of Corrections, Fundamentals of Bail (2014). For nearly 1,500 years before that, "bail" conditions were largely "unsecured." Timothy R. Schnacke, *Fundamentals of Bail: A Resource Guide for Pretrial Practitioners and a Framework for American Pretrial Reform* (Aug. 2014) at 90-91. https://s3.amazonaws.com/static.nicic.gov/Library/028360.pdf; *see also* Center for Legal and Evidence-Based Practices Amicus Br. at 7–8, *Walker v. City of Calhoun*, 682 Fed. App'x 721 (No. 16-10520) 2016 WL 4376539, at *7–8 (11th Cir. Aug. 15, 2016) (citing Blackstone, *Commentaries on the Laws of England*, at 291, 295–297 (Chitty ed., 1857)); *see also Holland v. Rosen*, 895 F.3d 292, 288-289 (3d Cir. 2018) ("At the time of the Constitution, 'bail' in criminal cases … did not require any upfront payment."); F.E. Devine, *Commercial Bail Bonding: A Comparison of Common Law Alternatives* 4-5 (Praeger Publishers, 1991) (describing "[t]he form of bail" at common law as "by recognizance," i.e., "an obligation to pay a specified sum" but "producing the accused for trial" would "void[] the obligation" (citing Blackstone, *Commentaries on the Laws of England* 291 (Chitty ed. 1857)); Paul Lermack, *The Law of Recognizances in Colonial Pennsylvania*, 50 Temp. L.Q. 475, 504-505 (1977) (at common law in colonial Pennsylvania, "posting bail in cash … was not the usual practice" and "sureties [would instead] guarantee payment of the bail on default"); *see also ODonnell v. Harris Cty., Texas*, 251 F. Supp. 3d 1052, 1070 (S.D. Tex. 2017) ("'The rule is, where the offence is prima facie great, to require good bail; moderation nevertheless is to be observed, and such bail only is to be required as the party is able to procure; for otherwise the allowance of bail would be a mere colour for imprisoning the party on the charge.'" (quoting 1 J. Chitty, A Practical Treatise on the Criminal Law 88–89 (Philadelphia ed. 1819))), *aff'd as modified*, 882 F.3d 528 (5th Cir. 2018), and *aff'd as modified sub nom. ODonnell v. Harris Cty.*, 892 F.3d 147 (5th Cir. 2018); Colin Starger & Michael Bullock, *Legitimacy, Authority, and the Right to Affordable Bail*, 26 Wm. & Mary Bill Rts. J. 589 (2018).

Even if history supported Defendants, it would not be a defense. As the Supreme Court explained in a similar context, "the constitutional imperatives of the Equal Protection Clause must have priority over the comfortable convenience of the status quo." *Williams*, 399 U.S. at 245. Nor was this empty rhetoric: *Williams* expressly acknowledged that wealth-based *post-conviction* detention "date[d] back to medieval England and ha[d] long been practiced in this country," *id.* at 240, but nevertheless struck it down, *id.* at 241.

[4] Defendants misleadingly cite the Fifth Circuit's decisions in *ODonnell* to suggest that the Fifth Circuit rejected Plaintiffs' claim on the merits (Dkt. No. 111 at 21). That is wrong. The panel decision in the first interlocutory appeal, *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018) (*ODonnell I*), recognized a substantive equal protection right against wealth-based detention. *Id.* at 162 ("[T]his case presents the same basic injustice: poor arrestees in Harris County are incarcerated where similarly situated wealthy arrestees are not, solely because the indigent cannot afford to pay a secured bond. Heightened scrutiny of the County's policy is appropriate."). The court held only that there is no "fundamental substantive due process right to be free from *any* form of wealth-based detention," *id.* at 163 (emphasis added), and the panel vacated the initial injunction, requiring amended relief that would allow the County to make a determination, in a given case, that wealth-based detention was constitutional. This is why the district court's initial injunction was "overbroad"; "it amount[ed] to the outright elimination of secured bail for indigent misdemeanor arrestees," because it did not allow the county any opportunity to show that wealth-based pretrial detention was

2

argue that "[m]onetary bond violates the Fourteenth Amendment" (Dkt. No. 111 at 7). Rather, Plaintiffs seek a holding that the government must demonstrate that its "interest is sufficiently weighty" before depriving Plaintiffs of their well-established substantive rights. *United States v. Salerno*, 481 U.S. 739, 750-51 (1987).

As Plaintiffs have explained, Dkt. No. 52 at 12–13, just because a policy triggers heightened scrutiny does not mean that the policy is unconstitutional. Few if any constitutional rights are absolute, as there are almost always "conditions under which competing state interests might outweigh" the individual interest. *Washington v. Harper*, 494 U.S. 210, 220 (quoting *Mills v. Rogers*, 457 U.S. 291, 299 (1982)); *see also Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (explaining that even "fundamental liberty interests" can be infringed if the infringement is "narrowly tailored to serve a compelling state interest" (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993))). The Supreme Court definitively addressed this question as it applies to pretrial detention in *Salerno*. After holding that the right to pretrial liberty is "fundamental," the Court explained: "But, as our cases hold, this right may, in circumstances where the government's interest is sufficiently weighty, be subordinated to the greater needs of society." *Salerno,* 481 U.S. at 750-51; *see also Frazier v. Jordan*, 457 F.2d 726, 728 (5th Cir. 1972) (holding that wealth-based detention is permissible, but only if a court has determined that "imprisonment of an indigent defendant . . . is 'necessary to promote a compelling governmental interest.'" (citation omitted)).

---

constitutional in a particular case. *Id.* The court thus "remand[ed] to allow the [district] court to craft a remedy more finely tuned to address the harm." *Id.* at 164.

    After the district court issued a revised injunction, 14 out of the 16 defendant judges sought a stay of the district court's order. The County, the Sheriff, and two of the defendant judges did not join the 14 Judges appeal. Given the expedited timeline, plaintiffs relied largely on their prior briefing and chose not to file a full opposition brief. A motions panel granted an administrative stay, ECF 00514575529 (July 27, 2018); heard oral argument eleven days after the stay motion was filed, ECF 00514579183 (July 31, 2018); and seven days later, granted the stay in a published decision, over a dissent by Judge Graves, *ODonnell v. Goodhart*, 900 F.3d 220 (5th Cir. 2018) (*ODonnell II*). The panel concluded, contrary to binding Supreme Court and Fifth Circuit precedent, that rational basis review applies to the first 48 hours of wealth-based detention and stayed certain provisions of the revised injunction. The merits appeal is currently being briefed and oral argument has not been calendared.

Accordingly, the gravamen of Plaintiffs' claim in this case is a requirement that Defendants demonstrate that "the government's interest is sufficiently weighty" before depriving Plaintiffs of their constitutional rights, not that Plaintiffs can *never* be detained prior to probation revocation.[5] If Giles County can make that showing, wealth-based detention of the indigent is permissible.

Further, the fact that Plaintiffs are on probation does not deprive them of their equal protection and due process rights. CPS Defendants' assertion that because Plaintiffs' "liberty has already been deprived" (Dkt. No. 111 at 6), their "fundamental liberty interest . . . in freedom from confinement" is "extinguished" (*id.* at 9), must be rejected under binding Supreme Court law. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (holding that although a parolee's liberty is "indeterminate," it "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others. . . . By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment."); *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (extending *Morrissey* to the probation context); *Moss v. Patterson*, 555 F.2d 137, 138 (6th Cir. 1977) ("[A] parolee has significant liberty interest in a parole which is entitled to protection under the Due Process Clause."); *Rodriguez v. Providence Cmty. Corrs., Inc.*, 155 F. Supp. 3d 758, 767–68 (M.D. Tenn. 2015) ("[T]his extension of the Fourteenth Amendment [to probation] is not so much a logical leap but a constitutionally mandated conclusion."). In *Bearden v. Georgia*, 461 U.S. 660 (1983), the Court affirmed "the significant interest of the individual in remaining on probation" and held that the state cannot jail a probationer who has made "sufficient bona fide efforts to repay his debt to society solely by lumping him together with other poor persons and thereby classifying him as dangerous," *id.* at 671. To do so

---

[5] Plaintiffs do not endorse additional detention. Nor do Plaintiffs concede that due process authorizes *any* pre-revocation detention on the basis of allegations made by a private company that has a direct pecuniary interest in the probationer's revocation and extension of supervised probation. That issue, however, is not presently before the Court.

4

"would be little more than punishing a person for his poverty." *Id. Bearden* and *Morrissey* make clear that Plaintiffs' status as a probationer does not "extinguish" her liberty interest.[6]

CPS Defendants' reliance (Dkt. No. 111 at 5, 9) on *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979), is therefore misplaced. Indeed, that case actually undermines Defendants' contention that probationers lack a liberty interest protected by the Fourteenth Amendment. *Greenholtz* involved a claim by inmates seeking additional procedural protections prior to a discretionary determination of *parole release*. *Id.* at 3. The inmates argued that they had a liberty interest protected by substantive due process "whenever a state provides for the *possibility* of parole." *Id.* at 8–9 (emphasis in original). The Supreme Court rejected that argument, holding that there is no constitutionally protected liberty interest in the "hope," *id.* at 11, of being "conditionally released before the expiration of a valid sentence." *Id.* at 7. In doing so, the Court specifically distinguished the interest at issue in *Greenholtz* (the "hope" of release) from the liberty interest of those already on parole which was at issue in *Morrissey* (which is protected by the Fourteenth Amendment). *Id.* at 9 ("There is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires."). In other words, *Greenholtz* affirmed the liberty interest at stake when a person who is already

---

[6] It may be true, as Defendants claim (Dkt. No. 111 at 9), that people on probation do not have a right to release prior to a revocation hearing under Tennessee law. But just because the County might be authorized to detain probationers pending an individualized hearing, does not mean that it can grant probationers *release* but make access to release contingent on ability to pay, thereby detaining only poor people. The Constitution prohibits government policies and practices that result in the absolute deprivation of a liberty interest due to a person's poverty. *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 20-21 (1973). Further, the fact that Tennessee law authorizes pre-hearing detention for people on probation does not mean that the federal Constitution allows weeks or months of pre-hearing detention without an individualized hearing to determine whether such detention is necessary.

The fact that people can be released if they have two people sign for them as "sureties" (Dkt. No. 111 at 24) does not cure the violation. Judge Parkes testified that the sureties must have sufficient net worth to secure the bond. Tr. at 59. Accordingly, indigent arrestees who either do not have or cannot contact sufficiently wealthy friends or family will still be stuck in jail.

released on probation or parole—albeit conditionally—is faced with a potential revocation of that liberty interest. *Greenholtz* does not help Defendants.

### B. Strict scrutiny applies to government conduct that infringes Plaintiffs' rights against wealth-based detention or to bodily liberty

Government conduct that infringes on Plaintiffs' rights to bodily liberty and against wealth-based detention is subject to strict scrutiny. CPS Defendants' argument (Dkt. No. 111 at 5, 13) that indigents are not a suspect class, and therefore rational basis review applies to Plaintiffs' claim, has already been squarely rejected by the Supreme Court, which has held that cases involving wealth-based detention constitute an exception to the ordinary equal-protection rules that poverty is not a suspect class, *see San Antonio Independent School District*, 411 U.S. at 20-21 (excepting cases in which individuals who, "because of their impecunity[,] [ ] were completely unable to pay for some desired benefit, and as a consequence, [ ] sustained an absolute deprivation of a meaningful opportunity to enjoy that benefit."); *ODonnell v. Harris County*, 892 F.3d 147, 161–62 (5th Cir. 2018) (*ODonnell I*) , (relying on the exception set forth in *San Antonio Independent School District* in applying heightened scrutiny to wealth-based pretrial detention), and against disparate-impact liability, *see M.L.B. v. S.L.J.*, 519 U.S. 102, 125-127 (1996) (applying heightened scrutiny in a case involving an indigent mother's inability to pay fees to appeal a termination of her parental rights, noting that such scrutiny applies where the sanction is " wholly contingent on one's ability to pay, and thus 'visi[ts] different consequences on two categories of persons' . . .[ ]; they apply to all indigents and do not reach anyone outside that class.").[7] *See* Dkt. No. 52 at 8–9.

---

[7] Defendants make the rather remarkable argument that the relief Plaintiffs seek would create a wealth-based distinction that would disadvantage wealthier people who should not be required to "surrender their hard-earned money if others do not have to." Dkt. 111 at 8. But the Supreme Court has already rejected this argument on behalf of the rights of those with greater wealth, holding that there is no "constitutional infirmity in imprisonment of a defendant with the means to pay a fine who refuses or neglects to do so." *Tate*, 401 U.S. at 400. Moreover, Defendants' argument that the line between "wealth" and "indigency" cannot be drawn ignores decades of caselaw that has enjoined policies and practices in the criminal system that discriminate against indigent people. *E.g.*, *Griffin v. Illinois*, 351 U.S. 12 (1956); *Williams v. Illinois*, 399 U.S. 235 (1970); *Tate v. Short*, 401 U.S. 395 (1971); *Bearden v. Georgia*, 461 U.S.

6

The application of heightened scrutiny here does not, of course, threaten the general rule under equal-protection that poverty is not a suspect class; wealth-based-detention claims are a narrow exception to that general rule, as acknowledged in *San Antonio Independent School District*. 411 U.S. at 20. *See* Dkt. No. 52 at 12–13.

Because heightened scrutiny applies (*see* Dkt. 52 at 17 n.9), even if Defendants are correct that the judges do not use a bail schedule, and "consider" all of the mandatory statutory factors under state law, Dkt. No. 111 at 7, that is *not* enough to satisfy due process and equal protection. The government must also make a substantive factual finding on the record that detention is necessary to meet a compelling government interest. *See* Dkt. No. 52 at 12–13.

This principle—that governmental deprivation of a substantive right must be justified by a particular, substantive finding—is not unique to claims involving the right to bodily liberty or against wealth-based detention. The same is true, for example, in the First, Second, and Fourth Amendment contexts, and in the context of racial discrimination. The government could not justify preventing a person from publishing a book or possessing a firearm in her own home by announcing that it had provided procedures and had "considered" the relevant factors but was still banning the book's publication or the firearm's possession. Similarly, a Giles County judicial officer issuing an arrest warrant would violate the Fourth Amendment if she announced that she had "considered" whether probable cause was met but refused to make a *finding* of probable cause that a crime was committed. And the government would violate the Equal Protection Clause if it merely "considered" alternatives to racially segregated swimming pools, and then proceeded to

---

660 (1983). The entire point of the procedural protection of an inquiry and findings concerning ability to pay is to provide a forum in which to make a factual finding about the amount of money a person can afford, and whether that person is too poor to pay the amount contemplated, to ensure that wealth-based detention does not occur unless necessary. This determination can be done in the same way as findings of indigency for purposes of appointing counsel or determining ability to pay court debts in other jurisdictions.

segregate those public facilities without meeting the applicable substantive standard. *See generally, e.g., Gratz v. Bollinger*, 539 U.S. 244, 270 (2003) ("[A]ny person, of whatever race, has the right to demand that any governmental actor subject to the Constitution justify any racial classification subjecting that person to unequal treatment under the strictest of judicial scrutiny.") (quotation and citation omitted). In the same way, the procedural step of considering ability to pay or alternatives to detention, although necessary, is not sufficient to satisfy the requirement that the government make an actual finding, after having considered alternatives, that detention is necessary because no less-restrictive conditions are adequate to serve the government's interests. *See* Dkt. No. 52 at 12–13 & n.9.

## II.     CPS Defendants' Arguments for Applying Rational Basis Review are Meritless

### A.     *Tate*, *Williams*, *Bearden*, and *Rainwater* require heightened scrutiny

In an attempt to argue that rational basis review applies to Plaintiffs' claim, CPS Defendants misrepresent the holdings and analysis of the Supreme Court's decisions in *Williams*, *Tate*, and *Bearden*, and of the Fifth Circuit's decision in *Rainwater*. They also fail to address *Griffin*. *See* Dkt. No. 111 at 14–17.

"Providing equal justice for poor and rich, weak and powerful alike is an age-old problem. People have never ceased to hope and strive to move closer to that goal." *Griffin v. Illinois*, 351 U.S. 12, 16 (1956) (citing Leviticus, c. 19, v. 15; Magna Carta). The *Griffin* Court considered the constitutionality of denying appellate transcripts to indigent defendants who could not afford to pay for them. The indigent petitioners argued that they were denied equal protection and due process "solely because of poverty." *Id.* at 15. The Court agreed: "Both equal protection and due process emphasize the central aim of our entire judicial system—all people charged with crime must, so far as the law is concerned, stand on an equality before the bar of justice in every American

court." *Id.* at 17 (citations and quotations omitted). Defendants completely ignore *Griffin*—which provides the foundation for the principle against wealth-based detention—and mischaracterize the holdings of the cases that further this precedent so essential to this core principle of our criminal justice system.

First, CPS Defendants misread *Williams v. Illinois*, 399 U.S. 235, 242 n.19 (1970). CPS Defendants argue that *Williams* "stands only for the proposition that confinement for nonpayment of fines and court costs cannot exceed the statutory maximum prison sentence for the underlying offense." (Dkt. No. 111 at 14.) That narrow reading is unsupported by the Supreme Court's own elaboration on *Williams*. *Williams* stands for the principle that the state cannot "visit[] different consequences on two categories of persons" "contingent upon one's ability to pay." *Williams*, 399 U.S. at 242 (citing *Griffin*, 351 U.S.) "[T]his is an illusory choice for Williams or any indigent who, by definition, is without funds," *id.*, and such imprisonment of indigents constitutes "impermissible discrimination that rests on ability to pay." *Id.* at 241. Therefore, in the context of the case, the Court made clear that an indigent person could be sentenced to a longer sentence than a non-indigent individual for the same offense, *provided that* the reason for the longer imprisonment was legitimate reason and *not* due solely to the person's inability to pay for his release. *See id.* at 242 n.19 (noting that only "imprisonment for *willful* refusal to pay a fine or court cost" was permissible) (emphasis added).

*Tate* similarly guards against wealth-based jailing, and held that it violates equal protection and due process to "automatically" convert a fine to a prison sentence. *Tate v. Short*, 401 U.S. 395, 398 (1971). The Court reiterated that prior to imprisoning a person for inability to make a monetary payment, the Court must consider "alternatives" to detention and determine whether any of those alternatives serves the government's "valid interest in enforcing payment of fines." *Id.* at 399.

9

In *Bearden*, 461 U.S. 660, the Court made explicit what was implicit in *Williams* and *Tate*: that heightened scrutiny applies to government conduct infringing an indigent person's right against wealth-based detention. The Court explained, "The rule of *Williams* and *Tate*, then, is that the State cannot 'impos[e] a fine as a sentence and then automatically conver[t] it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full." *Id.* at 667. To protect against the erroneous deprivation of the important substantive right against wealth-based detention, which arises under both equal protection and due process, prior to "imprison[ing] a probationer who has made sufficient bona fide efforts to pay," *id.* at 672, the government must not only provide certain pre-revocation procedural protections, including an inquiry into the reasons for nonpayment, but must *also* make a substantive factual finding that the probationer "willfully refused to pay" and that "alternate measures are not adequate to meet the State's interests in punishment and deterrence." This is the language of strict scrutiny and of substantive due process. *See id.* at 673 (holding that unless the government concludes that alternatives are inadequate to meet its compelling interests, imprisonment due to inability to pay "would be contrary to the fundamental fairness required by the Fourteenth Amendment.").

Defendants' assertion that *Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978) (en banc), applied rational basis review to wealth-based detention is equally erroneous. That case held that "[t]he incarceration of those who cannot [pay secured money bail], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements," *id.* at 1057, and the Court emphasized that the government must make a factual determination as to whether a particular condition of release "is necessary to provide reasonable assurance of the accused's presence at trial," *id.*, because "[a]ny requirement in excess of that amount would be inherently punitive and run afoul of due process requirements," *id.* The court

had "no doubt that in the case of an indigent, whose appearance at trial could reasonably be assured by one of the alternate forms of release, pretrial confinement for inability to post money bail would constitute imposition of an excessive restraint." *Id.* at 1058. *See* Dkt. No. 52 at 8–12.

Thus, the applicable cases all require heightened scrutiny of government conduct that results in detention of indigents due solely to their inability to make a monetary payment.

### B. *Walker*'s analysis is inapplicable where, as here, wealth-based detention far exceeds 48 hours

*Walker v. City of Calhoun, Ga.*, 901 F.3d 1245 (11th Cir. 2018), considered whether a municipality could detain a person due to inability to pay secured money bail for up to 48 hours, at which point the person would be released if she was deemed indigent. This case is different: it involves a period of wealth-based detention that far exceeds 48 hours: one to two weeks in General Sessions Court, and up to a month or more in Circuit Court.[8] *Walker* explicitly did not address whether a substantive right was implicated when the government detains a person for longer than 48 hours. Although the court vacated the district court's injunction of the City's revised bail policy (over a strong dissent), the court held that "the district court may enjoin a return to that original policy." *Id.*, 901 F.3d at 1272. Thus, the Eleventh Circuit actually upheld the district court's injunction of the City's *original* bail policy, which had improperly authorized one to two weeks of wealth-based detention. And Defendants are therefore wrong to suggest that *Walker* rejected the merits arguments Plaintiffs raise in this case: here, indigent misdemeanor probationers challenge Defendants' policy of detaining them due to inability to pay for up to one to two weeks

---

[8] Although discovery is ongoing, Plaintiffs will establish at the Preliminary Injunction Hearing that periods of wealth-based detention—i.e. detention due solely to inability to pay and which the government has not justified with a substantive finding that such detention is necessity—for individuals subject to violation-of-probation warrants far exceed 48 hours.

11

(if the case is in General Sessions Court) or for up to one to two months (if the case is in Circuit Court) prior to any opportunity to challenge conditions of release.[9]

CPS Defendants cite *Walker* for the claim that *Bearden* involved only a procedural-due-process claim. That characterization of *Bearden* is incorrect. Heightened scrutiny in this context has both substantive and procedural components. In *Bearden*, the Court held that "[o]nly if alternate measures are not adequate to meet the State's interests . . . may the court imprison a[n indigent] probationer[.]" 461 U.S. at 672. That is a substantive holding: Imprisonment of an indigent probationer without a particular substantive finding that the detention is necessary is unconstitutional. But heightened scrutiny also entails a procedural remedy: "[I]t is fundamentally unfair to revoke probation automatically without *considering* whether adequate alternative methods of punishing the defendant are available." *Id.* at 668–69 (emphasis added).

*Rainwater* illustrates this same point in the bail context. The plaintiff class there challenged Florida's court rules on their face, seeking a presumption that secured bail was unconstitutional for indigent arrestees. 572 F.2d at 1055–56. The Court began its analysis by citing *Williams* and *Tate* for "the principle that imprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible." *Id.* at 1056. The Court accordingly had "no doubt" that if the government's interest in "appearance at trial could reasonably be assured by . . . alternate [conditions] of release, pretrial confinement for inability to post money bail would" be unconstitutional. *Id.* at 1058. That is a substantive rule. As such, *Rainwater* stated that "[t]he

---

[9] CPS Defendants make numerous incorrect assertions regarding *Walker*. They claim (1) (without elaboration) that *Walker* involved an "entirely different situation[]" (Dkt. No. 111 at 12), and that the Eleventh Circuit (2) reversed the district court's decision in *Walker* "more than once" (Dkt. No. 111 at 2; *id.* at 12), (3) applied "just a procedural due process analysis" (Dkt. No. 111 at 15), (4) rejected heightened scrutiny (Dkt. No. 111 at 16), and (5) analyzed plaintiffs' claim in that case under the Eighth Amendment (Dkt. No. 111 at 16–17). They further argue on the basis of *Walker* that (6) the County should be able to detain a person who cannot afford money bail for *longer* than 48 hours without providing any justification for the detention (Dkt. No. 111 at 23). All of these claims are wrong, and *Walker* provides no support for CPS Defendants' arguments.

12

incarceration of those who cannot [pay the amount required by a bail schedule], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection." *Id.* at 1057. That is a procedural rule.

CPS Defendants further claim that the *Walker* court rejected heightened scrutiny (Dkt. No. 111 at 16). But the Court's statement that individuals subjected to 48 hours of prehearing detention do not suffer an "absolute deprivation" of their liberty interest, *Walker*, 901 F.3d at 1261–62, conflicts with Supreme Court precedent and is not binding on this Court. As the Supreme Court recently reiterated, "[a]ny amount of actual jail time is significant and has exceptionally severe consequences for the incarcerated individual and for society[.]" *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907 (2018) (citation and quotation marks omitted); *see also Fuentes v. Shevin*, 407 U.S. 67, 85 (1972) ("[A] temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment."). The Eleventh Circuit was wrong to apply rational basis review to the first 48 hours of wealth-based detention.[10] In any event, Plaintiffs will demonstrate that the period of pre-hearing detention at issue in Giles County is significantly longer than 48 hours—and Defendants cite no authority, because there is none, to suggest that

---

[10] To the extent Defendants and the Eleventh Circuit rely on *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), to argue for a 48-hour safe harbor in which the equal protection clause does not apply and during which prehearing wealth-based detention is permissible, the argument is wrong. First, it would yield untenable results. For example, if the equal protection clause does not apply for 48 hours, Defendants would be able to release all white, male, and Protestant arrestees on unsecured bail but detain all black, female, and Catholic arrestees for 48 hours until a bail hearing. (*Gerstein* and *McLaughlin*, of course, did not involve jurisdictions that delayed probable-cause hearings only for certain groups, but for all arrestees.) Such invidious discrimination is patently impermissible, regardless of whether such pretrial detention is permitted under the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 813 (1996) (a police officer's subjective motivation does not invalidate an objectively reasonable traffic stop under the Fourth Amendment but the Equal Protection Clause would "of course … prohibit[] selective enforcement of the law based on considerations such as race"). Second, it is wrong under Supreme Court doctrine. *Gerstein* and *McLaughlin* are Fourth Amendment cases, and the Court has rejected "the proposition that the Fourth Amendment is the beginning and end of the constitutional inquiry whenever a seizure occurs." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 51 (1993). "So even assuming that the Fourth Amendment were satisfied," this court must nevertheless consider whether prehearing wealth-based detention is permissible under the Fourteenth Amendment. *Id.* at 52. That conclusion is consistent with the Court's more general recognition that "[c]ertain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands." *Soldal v. Cook County*, 506 U.S. 56, 70 (1992). In that situation, a court is not to "identify[] as a preliminary matter the claim's 'dominant' character" but instead must "examine each constitutional provision in turn." *Id.*

anything less than strict scrutiny applies to detention that lasts for one to two weeks, let alone one to two months.[11]

### C. *McGinnis* and *Doyle* do not support application of rational basis review

CPS Defendants cite *McGinnis v. Royster*, 410 U.S. 263 (1973), and *Doyle v. Elsea*, 658 F.2d 512 (7th Cir. 1981), to argue that rational basis review applies to government policies that result in the detention of indigent people (Dkt. No. 111 at 21). That is incorrect.

*McGinnis* is distinguishable from this case in two key respects. First, the parties agreed that rational-basis review applied, and thus the Court had no occasion to decide the proper level of scrutiny. *Id.* at 270. Second, while the plaintiffs there alleged that a statute discriminated against those who did not obtain release on bail, they did not allege that this was due *solely* to indigence or in violation of the principles at issue here (there being reasons other than indigence why a person may be detained pretrial). *Id.* at 265, 268. The right against wealth-based incarceration was simply not implicated, as the Ninth Circuit has recognized. *See MacFarlane v. Walter*, 179 F.3d 1131, 1140 n.11 (9th Cir. 1999), *vacated on other grounds sub nom. Lehman v. MacFarlane*, 529 U.S. 1106 (2000). On the other hand, *Doyle* relied on a distinction—that *Williams* and *Tate* apply only if the detention exceeds the statutory maximum, 658 F.2d at 518—that was subsequently rejected by *Bearden*. *See* 461 U.S. at 661 (noting the "impermissibility of imprisoning a defendant solely because of his lack of financial resources"); *id.* at 667–68. Neither case helps Defendants.

Defendants also cite without discussion *ODonnell I* and *ODonnell v. Goodhart*, 900 F.3d 220 (5th Cir. 2018) (*ODonnell II*), to argue that detaining people due to inability to pay does not

---

[11] To the extent Defendants imply that the *Walker* analyzed plaintiffs' claim under the Eighth Amendment (Dkt. No. 111 at 16–17), that, too, is wrong. *Walker*, 901 F.3d at 1258. Moreover, *Walker* does not support Defendants' unsubstantiated assertion that automatic and unjustified wealth-based detention of an indigent probationer could exceed 48 hours without violating the Constitution. (Dkt. No. 111 at 23). The Eleventh Circuit did not address anything other than a 48–hour period of detention after which indigents would be released.

14

violate the Equal Protection Clause (Dkt. No. 111 at 20), but the *ODonnell I* panel reached the opposite conclusion, *ODonnell*, 892 F.3d at 161–63, and the stay panel did not disturb the first merits panel's holding in that respect, though it concluded that the district court's remedy was overbroad. *ODonnell*, 900 F.3d at 224–28.[12]

As such, heightened scrutiny applies, and this Court should reject CPS Defendants' arguments to the contrary.

### III.    Even Under Rational Basis Review, Defendants' Policies Are Unconstitutional

For all of the reasons set forth above, governmental infringement on a person's right to bodily liberty and right against wealth-based detention must be subjected to "careful inquiry." *Bearden*, 461 U.S. at 666. But because Defendants dispute the level of scrutiny applicable to Plaintiffs' claim, at the evidentiary hearing on this Motion, Plaintiffs will show that pre-hearing detention due to inability to pay for any amount of time actually undermines the government's interests and does not survive even rational basis review. "Rational-basis review requires a two-step process. First, one must identify a legitimate government interest the enacting government body could have been pursuing. Second, one must determine whether a rational basis exists to believe that the legislation would further the hypothesized purpose." *City of Mayfield Heights v. Woodhawk Club Condo. Owners Assoc.*, 205 F.3d 1339 (6th Cir. 2000) (citation and quotations omitted). CPS Defendants argue for a version of rational basis review that is applied to business regulation, where a court must look simply for any conceivable basis for the challenged distinction. Dkt. No. 111 at 17 (quoting *FCC v. Beach Commn's, Inc.,* 508 U.S. 307, 313 (1993)).[13]

---

[12] The stay panel was incorrect to conclude that rational basis review applies to the first 48 hours of post-arrest detention. *See supra* note 4.

[13] Plaintiffs note that the Government Defendants against whom Plaintiffs have sought a preliminary injunction have not themselves articulated a legitimate government interest in the current practice of pre-hearing detention due to inability to pay, except through their blanket incorporation of CPS Defendants' brief.

But in civil rights cases, courts routinely apply a more stringent version of rational basis review. *See Thomas v. Haslam*, 2018 WL 3301648, Case No. 3:17-cv-00005 (M.D. Tenn. July 2, 2018) (Trauger, J.). In *Thomas*, plaintiffs were indigent people who owed court debts they could not afford to pay. Because they did not pay the court debts, their licenses were revoked, causing plaintiffs to lose job opportunities and contact with their families. The court applied rational basis review and struck down the state statute on equal protection and due process grounds, holding that, where "the law at issue targets indigent criminal debtors in a way that threatens to exacerbate their preexisting poverty," the court must apply something more stringent than the "rational basis" test applied, for example, to determine the rationality of business regulations. *Id.* at *11. (citing *Trump*, 138 S.Ct. at ——, slip op. at 33 (2018)); *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 448–50 (1985)); *see also Robinson v. Purkey*, 2018 WL 5023330, 3:17-cv-01263 (M.D. Tenn. Oct. 16, 2018) (Trauger, J.) at Dkt. No. 222 (preliminarily enjoining automatic license suspension of indigent debtors owing traffic fines and fees). A more "searching" review is required when the case involves both "a politically unpopular group and a law affirmatively and unjustifiably inflicting harm on them." *Thomas*, 2018 WL 3301648 at *11; *see Bearden*, 461 U.S. at 666 ("Whether analyzed in terms of equal protection or due process, the issue cannot be resolved by resort to easy slogans or pigeonhole analysis. . . .'" (internal citation omitted)); *Romer v. Evans*, 517 U.S. 620, 631–32 (1996); *Cleburne*, 473 U.S. at 448–50. As in this case, that "combination" was "undeniably present" in *Thomas* because "[i]t is difficult to imagine a group more politically unpopular than criminal defendants or less able to protect itself politically than the very poor." *Id.* at *11, *29.

Plaintiffs do not dispute that the government has legitimate interests in court appearance and community safety. At the hearing, however, Plaintiffs will show that detention due to inability

to pay actually causes failures to appear and new criminal activity. It is not rational to pursue a policy that makes it more difficult for the government to achieve its interests.

CPS Defendants also claim that they have a legitimate interest in using the threat of wealth-based detention to "deter" probationers from violating their probation. Dkt. No. 111 at 20 ("The possibility of revocation and the attendant procedures—including arrest, detention, and bond—is part of the State's punishment scheme that serves a deterrent purpose."). That is not a legitimate interest. The deterrent effect of the threat of wealth-based detention operates only against poor people: and there can be no legitimate government interest in deterring or punishing *only* poor people.[14] *See Bearden*, 461 U.S. at 670–71 ("A rule that imprisonment may befall the probationer who fails to make sufficient bona fine efforts to pay restitution may indeed spur probationers to try hard to pay. . . Such a goal is fully served, however, by revoking probation only for persons who have not made sufficient bond fide efforts to pay.").

Further, there is no legitimate interest in *pre-hearing* punishment: at the time probationers are detained due to inability to pay money bail, they have not been found guilty of any probation violation. Instead, they are merely alleged to have violated a condition and have had no opportunity to contest the allegation or to argue that, although they violated a condition of probation, jailing is not the appropriate penalty. It is especially true that there is no legitimate interest in pre-hearing punishment where the allegations are made by a private company that has a direct financial interest in the person's probation being revoked and extended. Finally, the only legitimate purpose of

---

[14] CPS Defendants also claim that "[t]here is a also a legitimate interest even in securing the payment of criminal fines." Dkt. No. 111 at 14. It is unclear what point CPS Defendants are making because they have also claimed that people are not arrested and jailed solely for nonpayment of court debts or probation fees. In any event, Plaintiffs do not dispute that the government has a legitimate interest in payment of criminal fines, but using unattainable money bond to detain a person as a means of coercing that person into paying court costs and probation fees is obviously not rational: the threat of detention and actual detention can have little coercive effect on someone who has no money to pay, and the government has *no* legitimate interest in coercing payments from people who must choose between paying the government (or a private company) and meeting basic necessities. That is what *Bearden*, *Williams*, and *Tate* say. *See supra* Part II.A.

money bail is to incentivize a person to return to court. *Supra* n.4. As a factual matter, Plaintiffs will show that money bail does not have that effect. But even if it did, the incentive cannot operate if the condition of release instead operates to detain people for extended periods of time prior to an individualized hearing. When money bail functions as a de facto detention order, defendants have a high burden to meet in proving that the policy is necessary. *See* Brief for American Bar Association As Amicus Curiae Supporting Appellees, Case No. 16-5058 (Apr. 26. 2016).[15]

## IV. The Secured Money Bail Amounts Are Imposed In Violation of Procedural Due Process

CPS Defendants argue that there is no procedural due process violation in this case because there is an "adequate post-deprivation remedy" (Dkt. No. 111 at 6–7; *see also id.* at 3, 23–24). That is wrong as a matter of fact and law.[16] At the hearing, Plaintiffs will disprove the factual assertions Defendants make in their brief about the post-arrest process: the evidence will show that monetary conditions of release are determined prior to arrest without any reference to the person's ability to pay; those conditions of release operate to detain indigent arrestees who cannot afford them; arrestees whose cases are in General Sessions Court remain in the jail without an opportunity to raise ability to pay for up to one to two weeks after arrest, and arrestees whose cases are in Circuit Court could be detained for up to a month or more before meeting a lawyer or having a hearing scheduled; most probationers plead guilty to the violation at their first court appearance. As a matter of law, the procedures Defendants describe are inadequate for the reasons Plaintiffs explained in their initial brief. *See* Dkt. No. 52 at 13–18.[17] But even assuming *arguendo* that the

---

[15] After the ABA filed an amicus brief in support of Plaintiffs-Appellees, the appeal of *Rodriguez* was stayed.

[16] In their effort to explain procedural due process, CPS Defendants assert that rational basis review applies when the government seeks to deprive a person of her liberty (Dkt. No. 111 at 6). That is wrong under long-standing precedent that recognizes bodily liberty as a fundamental right, which can only be deprived if the government meets the strictest of judicial scrutiny. *See supra* Part I.

[17] To take just one example, the fact that an arrestee could purportedly be released if they have two people who can sign for them as "sureties" (Dkt. No. 111 at 24) does not cure the violation for at least two reasons. First, Judge Parkes testified that the sureties must have sufficient net worth to secure the bond. Tr. at 59. Accordingly, indigent

asserted procedures were constitutionally adequate, Defendants procedural due process argument must be rejected because it will be established at the hearing that they do not, in fact, exist.

V.     **Plaintiffs Seek to Enjoin Enforcement of Unconstitutional Secured Money Bail Amounts, But Do Not Seek to Enjoin the Execution or Issuance of Any Warrant**

A.  **Plaintiffs properly seek relief from the County and the Sheriff**

Defendants assert that Plaintiffs are asking this Court to "indirectly enjoin the practices of the Tennessee state courts" and are "attempting an end-run around" a request for relief directly from the judges. (Dkt. No. 111 at 1; *see also id.* at 3, 8, 11, 17, 25, 26, 27; Dkt. No. 112 at 2.) The relief Plaintiffs seek is proper. First, Plaintiffs do not seek relief against judicial actors: the judges can continue to determine appropriate conditions of release in individual cases, and can even require unattainable secured money bail. The relief Plaintiffs seek would simply prohibit the Sheriff and his employees and agents from enforcing illegal directives from local judges that violate the federal Constitution.

Government entities and officials like Defendant Giles County and Sheriff Helton have an independent obligation not to violate the United States Constitution, and federal courts have unquestioned authority to order state and local officials to cease their violations of federal civil rights laws. *See, e.g.*, *Cooper v. Aaron*, 358 U.S. 1, 17 (1958) ("[T]he prohibitions of the Fourteenth Amendment extend to all action of the State denying equal protection of the laws; whatever the agency of the State taking the action, or whatever the guise in which it is taken . . . . [Constitutional rights] can neither be nullified openly and directly by state legislators or state executive or judicial officers, nor nullified indirectly by them . . . ." (internal citations omitted)).

---

arrestees who either do not have or cannot contact sufficiently wealthy friends or family will still be stuck in jail. Second, whether a person has two people to act as sureties is not a factor in determining the monetary amount.

As *Cooper* and numerous other cases establish, if a local court ordered Defendants Giles County and Sheriff Helton to detain only black probationers after arrest in Giles County, the County and Sheriff Helton would be required to follow a federal injunction that prevented such a federal law violation. *Id.* To hold otherwise would mean, for example, that the federal courts were powerless to order local clerks to issue marriage licenses to same-sex couples even though state judges had told them not to. *E.g.*, *Strawser v. Strange*, 105 F. Supp. 3d 1323, 1329 (S.D. Ala. 2015), *aff'd* (Oct. 20, 2015) (explaining that "the choice should be simple" when a local official is "faced with complying with either [state court orders] or with complying with the United States Constitution"); *see infra* Part VI; Dkt. No. 96 at 38–40. Furthermore, to the extent Defendants suggest Plaintiffs should have challenged a particular state law, that is wrong (Dkt. 111 at 3, 15): Plaintiffs assert a constitutional violation, and nothing about the relief Plaintiffs seek requires the County to act in a manner that is inconsistent with state law or the Court to invalidate any state law. Plaintiffs properly seek prospective relief against the County Defendants, who unquestionably have an independent obligation not to violate the United States Constitution. Accordingly, it is entirely appropriate for this Court to enjoin the Sheriff from enforcing an order to pay an amount of money a person cannot afford if that order is not accompanied by a record showing that a judicial officer made a factual determination that detention is necessary and that procedural protections were provided to ensure the accuracy of that finding.

### B. The relief Plaintiffs seek is an injunction against the enforcement of unconstitutional secured money bail *following* arrest

Defendants assert that Plaintiffs are asking this Court to enjoin the *execution* of violation-of-probation warrants (Dkt. Nos. 112 at 1-2, 11; 111 at 27; 110 at 3). That is wrong. The relief Plaintiffs seek is an injunction against the enforcement of the unconstitutional *secured money bail amounts* required for release *after* arrest pursuant to a valid violation-of-probation warrant.

Plaintiffs' Motion does not challenge the issuance of the warrants themselves, or the validity of the companies' allegations of probation violations (though they, too, may be infirm for reasons not raised in Plaintiffs' Motion). But because the secured money bail amounts written on the warrants are determined without the constitutionally required substantive finding of necessity and without the procedural protections required to ensure the accuracy of any such determination, the County and the Sheriff violate equal protection and due process when they require the money bail amounts as a condition of release *following* arrest.[18]

The relief Plaintiffs seek is simple and narrow: an injunction from this Court prohibiting the Sheriff from requiring an arrestee to pay secured money bail amounts prior to release unless there is a written record accompanying the warrant showing that a judicial officer provided the required findings and procedural protections. The type of written record that would suffice is not complicated. It could, for example, include a simple form that a judicial officer can use to communicate whether a particular factual finding was made and whether specific procedural protections were provided prior to the monetary amount being determined. In other words, without a record showing that the person can afford the monetary amount, or that a judicial officer determined that pre-hearing detention is necessary, the Sheriff may not require an arrestee to make an up-front payment prior to releasing the person from the jail.[19] This is precisely the relief granted in *Schultz v. Alabama*, No. 5:17-cv-00270-MHH, ECF 162-1 (N.D. Ala. Sept. 13, 2018);[20]

---

[18] *See, e.g.*, Dkt. No. 67 (Hr'g Tr. on Pls.' Motion for a T.R.O.) at 27 ("THE COURT: . . . I don't view the request by the plaintiff as asking me to prohibit service of a duly executed warrant. This related to a presupposed bond amount. MS. ROSSI: That's correct, Your Honor.").

[19] The County Defendants briefly suggest that Plaintiffs' burden of proof at the preliminary injunction stage is greater than their burden would be at summary judgment (Dkt. No. 112 at 8) (quoting *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). But that statement from *Leary* is irrelevant because it compares the showing a moving party must make to merit a preliminary injunction to the showing a *non-moving* party must make to *survive* a motion for summary judgment.

[20] Preliminary Injunction Order issued in *Schultz* on September 13, 2018 (requiring all arrestees eligible for release under the secured money bail schedule to be released on unsecured bonds unless an arresting officer submits a formal request for pre-hearing detention, in which case the Sheriff may detain the person without money bail until an

*ODonnell*, 892 F.3d at 165 (authorizing the Sheriff to refuse to enforce unconstitutional orders; *Daves v. Dallas*, No. 3:18-cv-0154-N, ECF 165 at 4 (N.D. Tex. Sept. 19, 2018) (same).

This relief does not require the Sheriff to exercise discretion in deciding whether to enforce orders to require secured money bail as a condition of release, as Defendants claim (Dkt. Nos. 111 at 1, 3, 11; 112 at 3). The question for the Sheriff and his deputies is objective: is there a record showing that the requisite findings and procedures were provided? If the record shows that the constitutionally required procedural protections were provided and a substantive finding was made either that the person can afford the amount or that detention is necessary because alternatives are inadequate then the Sheriff may require the monetary payment prior to release. If the record does not exist, the Sheriff must release the person without requiring an up-front payment. Moreover, nothing about the relief Plaintiffs seek inherently violates Rule 65 (Dkt. No. 111 at 27). The Court will hear evidence and argument from the parties at the preliminary injunction hearing, and can apply the evidence in the record to craft a workable, specific injunction.

**VI.   The Sheriff Can Be Enjoined from Violating the Federal Constitution Regardless of Whether He Is a County Policymaker or an Enforcement Actor, and Regardless of Whether He Acts on Behalf of the County or the State**

At this stage, the question is whether Plaintiffs are likely to succeed on at least one of their theories of liability against the Sheriff. They are. The County Defendants' arguments as to why this Court cannot enjoin the Sheriff from prospective constitutional violations are inapposite.[21]

**A.   The Sheriff can be enjoined as an enforcement actor**

---

individualized hearing within 48 hours of arrest; at the hearing, the arrestee must be given notice, an inquiry into ability to pay, and an opportunity to be heard on critical issues; the arrestee must be released after the hearing unless the judicial officer makes a finding by "clear and convincing evidence, that the defendant poses a significant risk of flight or danger to the community")

[21] Plaintiffs also address this argument fully in their Response in Opposition to Defendants' Motion to Dismiss Count 15, Dkt. No. 96 at 34-40, and incorporate herein the relevant portions of their Response.

22

Regardless of whether the Sheriff acts on behalf of the County or the state, this Court has inherent equitable power to prohibit the Sheriff from violating the federal Constitution. *See* Dkt. 96 at 34-40.

The plain language of Section 1983 allows prospective injunctive relief against the Sheriff. *See* 42 U.S.C. § 1983 (permitting suits in "equity" against any "person" who "under color of any statute" "causes" a "deprivation of any rights[] . . . secured by the Constitution."); *see also Hafer v. Melo*, 502 U.S. 21, 27 (1991). Moreover, federal courts have inherent equitable power to stop constitutional violations by government actors. *See Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015) (finding that there is "a long history of judicial review of illegal executive action," and an "ability to sue to enjoin unconstitutional actions by state and federal officers"); *see also Terrace v. Thompson*, 263 U.S. 197, 214 (1923) ("Equity jurisdiction will be exercised to enjoin the threatened enforcement of a state law which contravenes the federal Constitution.").

Local government actors, therefore, have an independent obligation not to violate the U.S. Constitution, and federal courts have unquestioned authority to order state and local officials to cease their violations of federal civil rights laws. In *Ex parte Young*, 209 U.S. 123, 156 (1908), the Supreme Court held that government officials who "are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . to enforce . . . an unconstitutional act . . . may be enjoined . . . from such action." *Id.* at 156; *see also Moore v. Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018) ("Actions under *Ex parte Young* can be brought against both state and county officials, so it is unnecessary for us to resolve the parties' dispute over whether the Sheriff acts on behalf of King County or the State of Washington when he executes writs of restitution. . . . The Sheriff's role in executing those writs makes him a proper defendant." (citation omitted)) Under *Ex Parte Young*, a court need only conduct a

"straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation omitted). In sum, if the orders the Sheriff enforces violate the federal Constitution, he can be enjoined. *See* Dkt. No. 96 at 36–38.[22]

The County's argument that the Sheriff cannot be enjoined as an enforcement actor (Dkt. No. 112 at 15) appears to be based on two assertions: (1) Plaintiffs do not challenge a statute or a policy—such as a bond schedule—attributable to the judges, and (2) the relief Plaintiffs seek would purportedly require the Sheriff to exercising discretion in deciding whether to enforce secured money bail amounts required for release after arrest pursuant to a violation-of-probation warrant.

As to the County's first point, it is immaterial to Plaintiffs' claim whether "the judges . . . adhere to a bond schedule" in determining conditions of release. Dkt. No. 112 at 17. The federal court has authority to enjoin the Sheriff, even if he is enforcing directives issued by judges acting in their judicial capacity, instead of acting pursuant to a uniform policy. Dkt. No. 96 at 36–40. Monetary amounts set pursuant to a schedule violate equal protection and due process when they operate to detain poor people; so too do individualized money bail amounts determined after a

---

[22] "An allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient" to merit injunctive relief against a government actor. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997); *See also Griffin v. Sch. Bd. of Prince Edward Cty.*, 377 U.S. 218 (1964) (enjoining county officials); *Moore*, 899 F.3d at 1103 ("The Sheriff's role in executing those writs makes him a proper defendant."); *Brotherton v. Cleveland*, 173 F.3d 552, 566 (6th Cir. 1999) (holding injunctive relief can be granted where "county officials are sued simply for complying with state mandates that afford no discretion"); *Bostic v. Schaefer*, 760 F.3d 352, 371 n.3 (4th Cir. 2014) (holding that a city clerk could be enjoined from enforcing state marriage law); *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 957 (9th Cir. 2002) (reinstating claims against municipal officers because they were "classic *Ex parte Young* defendants"); *Cain v. City of New Orleans*, No. CV 15-4479, 2017 WL 467685, at *17-18 (E.D. La. Feb. 3, 2017) (holding that a suit brought against a Louisiana Sheriff "in his official capacity" can be a suit against the Sheriff in his capacity as a *state* official enforcing *state* law, and that he can be enjoined in that capacity for federal constitutional violations); *Buffin v. City and Cty. of San Francisco*, No. 15-cv-04959-YGR, 2016 WL 6025486, at *9 (N.D. Ca. Oct. 14, 2016) (holding that the Sheriff can be enjoined as a state enforcement actor pursuant to principles set forth in *Ex Parte Young* even though, when enforcing unconstitutional directives to pay money bail, he is following state law and lacks discretion to avoid enforcing the directives); *Strawser v. Strange*, 105 F. Supp. 3d 1323, 1329 (S.D. Ala. 2015) ("[T]he choice should be simple" when local officials are faced with a choice between complying with state law or the United States Constitution "as directed by this [federal district] Court"), *aff'd sub nom. Strawser v. Alabama*, No. 15-12508 (11th Cir. Oct. 20, 2015). If the orders the Sheriff enforces violate the federal Constitution, he can be enjoined.

decision maker considers various factors, if the government does not *also* provide the substantive findings and procedural protections necessary to justify wealth-based detention. The origin of the directive to the Sheriff—a bail schedule or a judicial decision—makes little difference; he can be prospectively enjoined from violating federal law.[23] *E.g.*, *Schultz*, No. 5:17-cv-00270-MHH, ECF 162-1; *ODonnell*, 892 F.3d at 165; *Daves*, No. 3:18-cv-0154-N, ECF 165 at 4.

As to the County's second point, nothing about the relief Plaintiffs seek requires the Sheriff to second-guess a judge's determination of conditions of release or whether any hearing was adequate. As explained *supra* Part V.B., the relief Plaintiffs seek simply requires the Sheriff to make an objective determination of whether the secured money bail amount is accompanied by a record showing that the required findings and procedural protections were provided.

## B. Alternatively, the Sheriff is a County policymaker with a policy of enforcing unconstitutional money bail amounts

The County makes several misstatements relating to the Sheriff's liability as a County policymaker. First, the County asserts that "the issuance of arrest warrants is the 'moving force' behind Plaintiff's purported constitutional deprivation" (Dkt. 112 at 10). As explained, Plaintiffs do not challenge the issuance or execution of the warrants themselves. Plaintiffs challenge only the *enforcement* of the monetary conditions required for release *after* execution of the warrants because those secured financial conditions operate to detain only indigent people without any of the substantive findings or procedural protections necessary to justify detention.

Next, the County relies on its first misstatement to make the irrelevant assertion that no County policy governs the issuance of the warrant or determination of the conditions of release on

---

[23] The County Defendants fail in their attempt to distinguish *Ex Parte Young* and *Moore*. The fact that Plaintiffs do not challenge a state law in Count 15 does not bar relief. *Ex Parte Young* permits prospective injunctive liability against state officials for violating federal law, 209 U.S. at 159-160, so long as they have "some connection with the enforcement of the" challenged acts, *id*. at 157. Here, the Sheriff unquestionably enforces the secured financial condition of release on violation-of-probation warrants.

the warrant. Dkt. 112 at 11. But that point, even if true, is immaterial to Plaintiffs' claim against the County and the Sheriff both because Plaintiffs challenge an undisputed County policy of *enforcing* the illegal money bail amounts, and because the monetary amounts are illegal due to the lack of a substantive findings and procedural protections to ensure the accuracy of those findings, regardless of how those amounts were reached. In other words, the constitutional violation does not require use of a bail schedule or a County policy that applies to determining the specific conditions of release.[24] The policy Plaintiffs challenge is exactly the County policy that was properly enjoined in *Rodriguez*, 155 F. Supp. 3d at 770–71.[25]

Third, the County claims that there is no unconstitutional conduct because the arrest warrants are "facially valid." Dkt. 112 at 11. But Plaintiffs do not argue otherwise. The warrants' facial validity or invalidity, however, is immaterial to whether the Sheriff has a policy of enforcing secured money bail amounts despite knowing that they operate to detain only indigent arrestees.[26]

### C. Defendants repeatedly misstate and misrepresent the issues and holdings in *Rodriguez v. Providence Community Corrections, Inc.*

Defendants make numerous misstatements about the *Rodriguez* case in an effort to distinguish a case that is directly on point.[27] First, Defendants assert incorrectly that the probation officers in Rutherford County set the bonds, and that the probation officers' involvement in bond setting played a role in Judge Sharp's decision to find the County liable. Dkt. No. 111 at 34; *see*

---

[24] It makes no difference that the judges do not use a bail schedule to determine conditions of release (Dkt. No. 112 at 11, 17). If they did, then the judges might also be subject to injunctive relief as policymakers. *See, e.g.*, *ODonnell*, 892 F.3d at 156–57. But here, Plaintiffs have challenged an entirely separate policy and practice: that of the Sheriff in enforcing illegal directives to pay secured money bail amounts determined without the required substantive findings and procedures.

[25] In *Rodriguez*, the Sheriff was not named as an independent Defendant. The injunction was issued against the County.

[26] As Plaintiffs explained in their Response to County Defendants' Motion to Dismiss (Dkt. No. 96 at 34), if the Sheriff is a County policymaker for purposes of enforcing the warrants, then Plaintiffs agree with the County (Dkt. 112 at 1 n.1) that the claim against him in his official capacity is duplicative.

[27] Defendants assert, wrongly and hyperbolically, that *Rodriguez* is "vastly and categorically distinguishable" and "irrelevant" to this case. (Dkt. No. 111 at 2; 34–36).

*also* Dkt. 112 at 12 n.11. In fact, a Rutherford County General Sessions Judge testified that although "he had previously received affidavits with bond amounts already listed in the past," that practice had ceased by the time of the preliminary injunction proceedings. *Rodriguez*, 155 F. Supp. 3d at 762. And, although he considered and typically accepted the bond recommendations, he exercised his own discretion in determining bond amounts. *Rodriguez v. PCC*, 3:15-cv-01048, ECF 70, Tr. 12/17/15 at 74:21–76:16. Moreover, the private probation company in *Rodriguez* was not a party to the preliminary injunction motion, and the federal court enjoined only the County in *Rodriguez*, 3:15-cv-01048, ECF No. 69. Therefore, whatever role the private probation officers played in bail practices in Rutherford County was not material to Judge Sharp's legal ruling enjoining the County, and is not a basis for distinguishing that case from this one.[28]

Next, seeking to provide support for the same nonexistent distinction, the County misquotes, miscites, and misapplies a portion of the *Rodriguez* motion-to-dismiss decision (Dkt. 112 at 13). Giles County asserts, "The *Rodriguez* Court also generally denied Rutherford County's motion to dismiss because, in relevant part, 'the County is accused of acting through, PCC, Inc., as its agent.'" *Id.* (purporting to quote page 779 of the *Rodriguez* motion-to-dismiss decision, but actually quoting page 766).[29] But this portion of the *Rodriguez* motion-to-dismiss opinion had nothing to do specifically with the money-bail claim in *Rodriguez*. Instead, at page 766, the *Rodriguez* court rejected the County's judicial immunity defense to *damages* claims and held that the County *was* liable under *Monell*, for all of plaintiffs' constitutional claims in that case. Plaintiffs in this case do not seek damages in Count 15, and the County and the Sheriff (properly)

---

[28] Additionally, discovery is ongoing in this case and Plaintiffs have not yet determined what role, if any, probation officers play in determining conditions of release on violation-of-probation warrants.

[29] The quotation is actually from page 766 of the federal court's opinion largely denying defendants' motions to dismiss (not the decision granting Plaintiff's motion for preliminary injunctive relief), and the internal quotation is from plaintiffs' complaint in *Rodriguez*, which the County fails to cite.

27

have not raised any immunity defenses. The full quote from that section of the *Rodriguez* decision is as follows:

> Plaintiffs seek to do just that: hold the County liable for its own actions, namely, its policies and practices that allegedly violate the Constitution, RICO, and state law. The Complaint not only expounds on the problematic policies and practices at some length, but also accuses the County of 'acting through PCC, Inc. as its agent,' (Docket No. 1 at ¶ 60), not acting through judges. Far from an 'end run' around judicial immunity, the allegations in the Complaint set forth a compelling claim of county liability, one which comports with the pleading requirements of *Monell* and *Burgess*.

191 F. Supp. 3d at 766. Accordingly, to the extent Giles County relies on an abbreviated version of this quotation from the *Rodriguez* motion-to-dismiss decision to suggest that Rutherford County's liability at the *preliminary injunction* stage in that case hinged on the probation officers' role in setting bond amounts (Dkt. 112 at 12 n.11), the County's brief is misleading.[30]

Defendants make other misstatements about *Rodriguez*. For example, Defendants are wrong that the plaintiffs in *Rodriguez* principally challenged the use of money bonds on warrants issued solely for nonpayment of court debts and probation fees, and wrong to suggest that Judge Sharp made a factual finding that people arrested solely for nonpayment in Rutherford County

---

[30] Whatever role the companies played in determining money bail amounts was not relevant at the preliminary-injunction stage in *Rodriguez*. Defendants' contrary assertions (Dkt. No. 112 at 12–13)—which are based largely on apparent confusion about the court's holdings at the preliminary-injunction stage as compared to its holdings at the motion-to-dismiss stage—are wrong. To clarify: at the preliminary injunction stage in *Rodriguez*, plaintiffs sought to enjoin only the County from enforcing secured money bail amounts on violation-of-probation warrants. The private probation company, Providence Community Correction, Inc., was not a party to or involved in that motion. Following an evidentiary hearing, the court held that the County was liable based on the Sheriff's policy of enforcing illegal secured money bail amounts on violation-of-probation warrants and issued a preliminary injunction order against the County, which was binding on the Sheriff.

Subsequently, at the motion-to-dismiss stage, the company argued that although the plaintiffs' money-bail claim was brought against "Defendants," PCC, Inc. could not be liable because the company did not itself jail people. *Rodriguez*, 191 F. Supp. at 779. The court rejected that argument because the probation officers actively participated in the setting of secured money bail and concluded that the company, too, was liable for the harm alleged in the money-bail claim. *Id.* The court then affirmed its prior holding at the preliminary injunction stage with respect to the County, stating, "Plaintiffs have plausibly alleged that the practice of jailing probationers solely for nonpayment and keeping probationers on preset secured money bonds violate the Fourteenth Amendment." *Id.*

At this stage, as in the preliminary injunction proceedings in *Rodriguez*, Plaintiffs do not seek injunctive relief against the Private Defendants.

were "often" required to pay money bail prior to release. Dkt. No. 112 at 12 n.11; Dkt 111 at 34–35. In fact, people in Rutherford County who were alleged by the private company to have violated probation solely by not making payments were typically released on their own recognizance after arrest. *Rodriguez*, 155 F. Supp. 3d at 770. And, although plaintiffs in *Rodriguez* "provided at least two warrants where nonpayment resulted in arrest warrants with secured money bonds," *id.*, plaintiffs in that case—as here—challenged the more general policy of "jailing probationers subject to preset secured money bonds[31] while they await formal revocation hearings," regardless of the nature of the underlying alleged violation, be it solely for nonpayment or for other violations. *Rodriguez*, 155 F. Supp. 3d at 767–68.[32]

Judge Sharp recognized that enjoining the practice of using preset bonds on violation-of-probation warrants "likely disposes of the other conduct about which Plaintiffs' complain—jailing probationers when the only probation violation alleged is nonpayment," *id.* at 770–71, and explicitly confirmed that the practice ran afoul of equal protection and due process, *id.* at 770. In other words, contrary to Defendants' characterization of the facts, in Rutherford County, the general practice was to *not* require payment of secured money bail as a condition of release after arrest when the *sole* allegation was nonpayment, although there were exceptions, namely, a few warrants issued by the Circuit Court in Rutherford County alleging solely non-payment. Plaintiffs will demonstrate at the evidentiary hearing that the exact same facts are true in Giles County today. As in *Rodriguez*, Plaintiffs' claim in this case does not turn on the specific violation alleged.

---

[31] The phrase "preset secured money bonds," as used here and as defined by Judge Sharp, describes "secured money bonds that are assigned without an inquiry into the individual's ability to pay the bond and whether alternative methods of ensuring attendance at revocation hearings would be adequate." *Rodriguez*, 155 F. Supp. 3d at 767 n.10.

[32] Defendants argue that because Ms. Hilfort is alleged to have violated probation by being arrested for an alleged new offense—i.e. not solely for nonpayment—she cannot seek injunctive relief on behalf of people who are subjected to money bail amounts on violation-of-probation warrants where the only alleged violation is nonpayment. Dkt. No. 112 at 18–19. But the constitutional harm Plaintiffs challenge is detention due to inability to pay secured money bail as a condition of release following arrest for an alleged violation of probation. That harm occurs regardless of the underlying alleged violation.

29

Defendants make further attempts to distinguish this case from *Rodriguez* on the facts (albeit without citation to any evidence).[33] Plaintiffs will demonstrate at the evidentiary hearing on this Motion that many of those factual assertions are incorrect, most are irrelevant, and none is material to the issues before the court at the preliminary injunction hearing. In all material respects, the facts before the court in this case are identical to those before Judge Sharp in *Rodriguez*.

In sum, *Rodriguez* is instructive to Plaintiffs' claims before this Court on their Motion for Preliminary Injunction, notwithstanding Defendants' attempts to mischaracterize it.

## VII. *Younger* and *Rooker-Feldman* Abstention Doctrines Do Not Apply

### A. *Younger*

*Younger* abstention is inappropriate. CPS Defendants argue, Dkt. No. 111 at 29-32, that this Court should abstain from exercising jurisdiction pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), because there are "ongoing criminal proceedings" and "no 'extraordinary circumstances'" (Dkt. No. 111 at 30). These arguments are foreclosed by binding precedent.

*Younger* abstention has three necessary prerequisites: (1) the potential for undue interference with an ongoing state-court proceeding, (2) an important state interest implicated by that proceeding, and (3) an adequate opportunity to raise the relevant claim in that proceeding. *Middlesex Cty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 433 n.12 (1982); *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008); *Sun Ref. & Mktg. Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990). None is satisfied.

---

[33] For instance, among other things, Defendants assert that there was a 30- to 60-day period of detention prior to a revocation hearing in Rutherford County for those who could not afford to pay money bail (Dkt. No. 111 at 35). That is only partly correct as a matter of fact. In Rutherford County, the General Sessions judges conducted "ten-day hearings" in the jail every Monday and Friday. *Rodriguez*, 155 F. Supp. 3d at 763. At these hearings, a judge and prosecutor were present, and the probationer was given an opportunity to plead guilty at that hearing or wait 30 to 60 days for a court date and a lawyer to be assigned. *Id.* As a matter of law, Judge Sharp did not conclude that this lengthy detention period was *necessary* to his holding.

First, there is no potential for undue interference with ongoing state court proceedings. The injunction sought in this case is collateral to, and thus would not interfere with, prosecutions themselves. *See Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975) (abstention improper where "[t]he injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing"); *Almodovar v. Reiner*, 832 F.2d 1138, 1141-42 (9th Cir. 1987) ("Probation is not a pending criminal action for *Younger* purposes.[34] *Younger* abstention permits exclusion of constitutional claims from federal court because the constitutional defenses can be raised during the state proceedings. Post-trial proceedings, such as probation, do not offer this opportunity.") (citation omitted); *Pugh v. Rainwater*, 483 F.2d 778, 781-82 (5th Cir. 1973) (rejecting *Younger* abstention because challenge to wealth-based pretrial detention "would [only] affect state procedures for handling criminal cases" and was not "'against any pending or future court proceedings *as such*'" (quoting *Fuentes v. Shevin*, 407 U.S. 67, 71 n.3 (1971) (emphasis in *Rainwater*)), *aff'd in part, rev'd in part on other grounds by Gerstein*, 420 U.S. 103; *Rodriguez*, 191 F. Supp. 3d at 763 (rejecting *Younger* because "an incomplete sentence . . . does not constitute an 'ongoing state judicial proceeding' for purposes of *Younger* abstention."); *see also Ray v. Judicial Corr. Servs.*, No.: 2:12-CV-02819-RDP, 2013 WL 5428360, at *14 (N.D. Ala. Sept. 26, 2013) (holding same).[35]

---

[34] *See also Hill v. Snyder*, 900 F.3d 260, 266 (6th Cir. 2018) (rejecting invitation to abstain under *Younger*) (quoting *Gerstein*, 420 U.S. at 107 n.9); *Habich v. City of Dearborn*, 331 F.3d 524, 532 (6th Cir. 2003) (citing cases and explaining that *Younger* abstention was not appropriate where "the issues in [the plaintiff's] federal suit could neither be proven as part of the state case-in-chief nor raised as an affirmative defense").

[35] *See also Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018) ("Regardless of how the bail issue is resolved, the prosecution will move forward unimpeded."); *Hunt v. Roth*, 648 F.2d 1148, 1154 (8th Cir. 1981) (abstention inappropriate where declaratory judgment sought regarding non-bailable status of certain offenses did "not interfere with the state's orderly criminal prosecution" of plaintiff and plaintiff's claim that "bail has been unconstitutionally denied [wa]s no defense to the criminal charge"), *rev'd on other grounds Murphy v. Hunt*, 455 U.S. 478 (1982); *Holland v. Rosen*, 277 F. Supp. 3d 707, 737 (D.N.J. 2017) (finding that bail challenge "would not interfere with the criminal prosecutions themselves" because it merely "involved a challenge to pretrial restraint." (quoting *Stewart v. Abraham*, 275 F.3d 220, 225 (3d Cir. 2001))).

Second, and most obviously, the adequacy prong of *Younger* is not met. *Younger* prevents a federal court from enjoining an ongoing state proceeding only if the proceeding is adequate to address violation of the plaintiff's constitutional rights. *Younger*, 401 U.S. at 43-44. If the state proceeding does not give the plaintiff a meaningful chance to vindicate her rights, *Younger* abstention is inappropriate. The Supreme Court has stressed that *Younger* abstention, grounded in principles of equity, federalism and comity, is an exceedingly narrow exception to the federal courts' "virtually unflagging" obligation to vindicate federal rights. *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013). In *Gerstein v. Pugh*, 420 U.S. 103, 107 n.9 (1975), the Supreme Court explained that *Younger* is inapplicable when arrestees complain about the legality of their detention prior to being brought to court to challenge that detention. If it were otherwise, plaintiffs would be forced to endure the very thing they allege is unconstitutional (sitting in jail without a hearing) before they have a chance to challenge it. [36]

Plaintiffs will prove at the evidentiary hearing that there are no adequate proceedings within which to raise their constitutional claim. By the time arrestees have an opportunity to challenge conditions of release, "a liberty deprivation absent an inquiry into indigency, has already occurred." *Rodriguez*, 155 F. Supp. 3d at 766 (rejecting *Younger*). "*Gerstein* stands for the principle that when it comes to the adequacy of the state court proceedings as an opportunity to address constitutional harms, the opportunity must be available *before* the harm is inflicted." *Id.*

---

[36] Without explanation or legal citation, CPS Defendants assert that "[t]he Court should abstain from creating the conflict between the state and federal courts in this context, and require the Plaintiffs and their purported class to utilize the court system available to them to challenge an unlawful practice." (Dkt. No. 111 at 32.) It is difficult to understand what CPS Defendants mean by this. The ability to bring a separate civil suit in state court has never been held to be a reason for *Younger* abstention. Indeed, the plaintiffs in *Gerstein*, *Habich*, and, indeed, in every single federal court Section 1983 action, could have brought their Section 1983 civil actions in state court instead. The Supreme Court has repeatedly "cautioned . . . that federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not refuse to decide a case in deference to the States." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (citation and alterations omitted). "Circumstances fitting within the *Younger* doctrine, we have stressed, are *exceptional*." *Id.* (emphasis added).

(emphasis in original). If Ms. Hilfort were arrested, she would be detained for up to one to two weeks with no opportunity to challenge those conditions of release solely because of her poverty. This Court should not abstain.

Even if *Younger* applied, abstention would be inappropriate under the exceptions for bad faith and proceedings that lack neutrality. The Supreme Court has made clear that *Younger* is no bar when the state proceeding is brought in "bad faith" or for "harassment," or when Plaintiffs can show "extraordinary circumstances" and "irreparable injury." *Kugler v. Helfant*, 421 U.S. 117, 124 (1975); *see also Dombrowski v. Pfister*, 380 U.S. 479 (1965); *Lewellen v. Raff*, 843 F.2d 1103, 1110 (8th Cir. 1988). Bad faith exists when a prosecution is brought "without a reasonable expectation of obtaining a valid conviction." *Id*. at 126 n.6. As noted above, this case involves no pending prosecution (nor any forum in which to raise the federal claims), but even if *future* revocation proceedings were a potential forum, the Complaint alleges (and the Contract corroborates) that Defendants use the revocation process for the purpose of making money and "without the reasonable expectation of obtaining" a valid revocation.[37] Additionally, Ms. Hilfort and the class she represents will suffer irreparable harm if her motion is not heard.

*Kowalski v. Tesmer*, which CPS Defendants quote at length, *see* Dkt. No. 111 at 30-31, is readily distinguishable. In *Kowalski*, indigent plaintiffs filed suit in federal court to challenge the constitutionality of a Michigan statute that prohibited, with certain exceptions, the appointment of counsel to indigent individuals who plead guilty. *Kowalski*, 543 U.S. 125, 127-28 (2004). The plaintiffs, who were indigent individuals denied appellate counsel after pleading guilty, *id.* at 128,

---

[37] Finally, even without bad faith, abstention is improper here because any future revocation proceedings lack the requisite neutrality. *See Gibson v. Berryhill*, 411 U.S. 564, 577 (1973). As the Contracts establish, Dkt. Nos. 46-1, 46-2, any proceedings that would eventually be initiated, in addition to not being timely or adequate to address the constitutional deprivations that the Plaintiffs would already have suffered, would be held in a tribunal in which the probation officer (who acts like a prosecutor to initiate the charge, as a witness to establish the charge, and as a judicial advisor to recommend revocation sanctions) has an unconstitutional financial conflict of interest in the decision of issues critical to the case. *See id.* at 579.

had avenues in state court to challenge the denial of appellate counsel *before any of the harms of that denial took place*. *Kowalski*, 543 U.S. at 133; *see also Tesmer v. Granholm*, 333 F.3d 683, 689 (6th Cir. 2003), *rev'd on other grounds and remanded sub nom. Kowalski v. Tesmer*, 543 U.S. 125 (2004) (noting opportunities available to the indigent plaintiffs to file a delayed application for leave to appeal with the Michigan supreme court and to request for rehearing). The plaintiffs in *Kowalski* could have raised their constitutional objections and had them addressed through the state court criminal proceedings they were already in. In contrast, here, Ms. Hilfort and the putative class members do not have an opportunity to contest the secured financial condition of release until after they are detained for days or weeks (and sometimes longer) due to their inability to pay it.[38] *Younger* does not provide a basis for abstention.

### B. *Rooker-Feldman*

CPS Defendants' argument that this Court should abstain under *Rooker-Feldman* (Dkt. 111 at 27–29) is also meritless. The Supreme Court most recently addressed the *Rooker-Feldman* doctrine in *Skinner v. Switzer*, 562 U.S. 521, 531-32 (2011). The Court rejected an expansive reading of the doctrine (like the one Defendants urge at 28–29, discussing *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006)) and admonished that *Rooker-Feldman* is a "narrow" doctrine. *Id.* at 532 (alterations omitted)*; see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 287 (2005) ("Since *Feldman*, this Court has never applied *Rooker–Feldman* to dismiss an action for want of jurisdiction."). The Supreme Court has never applied the

---

[38] Defendants assert in the abstention section of their brief that "Plaintiffs—and their attorneys—want to create . . . mischief here by creating conflict: which state or federal court orders is the Sheriff supposed to follow?" Dkt. No. 111 at 31. The Supremacy Clause provides the answer. U.S. Const. art. VI, cl. 2; *see, e.g.*, *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383 (2015) ("It is apparent that [the Supremacy] Clause creates a rule of decision: Courts 'shall' regard the 'Constitution,' and all laws 'made in Pursuance thereof,' as 'the supreme Law of the Land.' They must not give effect to state laws that conflict with federal laws.") (quoting *Gibbons v. Ogden*, 9 Wheat. 1, 210 (1824)). *See* Dkt. No. 96 at 38–39; *supra* Part V.A.

*Rooker-Feldman* doctrine to federal claims related to state court criminal proceedings, let alone to pre-hearing bail policies.[39]

The determination of secured financial conditions of release is not a "final state-court judgment" under *Rooker-Feldman*.[40] *E.g.*, *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (precluding federal courts "from exercising appellate jurisdiction over final state-court judgments."). Instead, "bail determinations, even in a post-conviction relief proceeding, are appealable interlocutory orders." *Dotson v. Clark*, 900 F.2d 77, 78 (6th Cir. 1990) (citations omitted). *Rooker-Feldman* does not apply to interlocutory orders. *Fieger v. Ferry*, 471 F.3d 637, 640 (6th Cir. 2006) ("[T]his Court held that, under *Exxon Mobil*, the *Rooker–Feldman* doctrine did *not* preclude the district court's review of the plaintiffs' claims regarding the [defendant judges'] interlocutory orders . . . .") (emphasis added). Defendants' arguments are meritless.

## VIII.   This Court Should Preliminarily Certify a Class for Purposes of Count 15

This Court is well within its power to conditionally certify a Rule 23(b)(2) class for purposes of granting class-wide preliminary injunctive relief from the irreparable harms challenged in Count 15 of Plaintiffs' Complaint. *See Wood v. Detroit Diesel Corp.*, 213 F. App'x 463, 472 (6th Cir. 2007) (affirming district court granting of preliminary injunction to named plaintiffs and "*proposed* Plaintiff class members," *Wood v. Detroit Diesel Corp.*, No. 05-74106, 2005 WL 3579169, at *8 (E.D. Mich. Dec. 30, 2005) (emphasis added)); *see also Hamama v. Adducci*, 261 F. Supp. 3d 820, 840 n.13 (E.D. Mich. 2017) (*quoting Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 433(6th Cir. 2012)) (granting preliminary classwide injunction); *Rodriguez*,

---

[39] The Courts of Appeal have likewise generally limited the doctrine to civil cases. *E.g.*, *Gilbert v. Ferry*, 401 F.3d 411, 417 (6th Cir.), *on reh'g in part*, 413 F.3d 578 (6th Cir. 2005) (citing *Mandel v. Town of Orleans*, 326 F.3d 267, 271 (1st Cir. 2003) (noting that *Rooker–Feldman* is "premised on the rule that ... only the U.S. Supreme Court has authority to invalidate state civil judgments."); *GASH Assocs. v. Vill. of Rosemont, Ill.*, 995 F.2d 726, 727 (7th Cir. 1993) (recognizing that under *Rooker-Feldman* "[l]itigants cannot file collateral attacks on civil judgments").

[40] Plaintiffs are not asking this Court to "overturn" the "decision to issue a violation warrant" (Dkt. No. 111 at 29) (nor does the issuance of a warrant constitute a final state-court order requiring abstention).

155 F. Supp. 3d at 767.[41] *See* Dkt. No. 52 at 23 n.21,

Defendants' arguments on the merits of class certification are unavailing. First, Plaintiffs will demonstrate at the hearing that they easily satisfy numerosity. "There is no strict numerical test for determining impracticality of joinder." *In re Am. Med. Sys., Inc.*, 75 F. 3d 1069, 1079 (6th Cir. 1996); *see also, e.g.*, *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976) (affirming a district court's class certification after the trial showed that the class consisted of sixteen individuals); *Afro Am. Patrolmens League v. Duck*, 503 F. 2d 294, 298 (6th Cir. 1974) (affirming certification of a class of 35 identifiable members).[42]

As to commonality, Rule 23(a) requires that there be "questions of law or fact common to the class." And, "[t]o be typical, a representative's claim need not always involve the same facts

---

[41] CPS Defendants cite a string of cases without any analysis (Dkt. No. 111 at 32). These cases miss the mark. In *Nat'l Ctr. for Immigrants Rights, Inc. v. I.N.S.*, the circuit court reversed and remanded for possible modification of the scope of the preliminary injunction because the complainant failed to move for class certification prior to the preliminary injunction, 743 F.2d 1365, 1371 (9th Cir. 1984), which is not the case here. Dkt. No. 36 (plaintiffs' amended motion for class certification); Dkt. No. 42 (plaintiffs' motion for preliminary injunction). *Davis v. Hutchins* does not concern class-wide preliminary relief but rather the district court's grant of class-wide relief in a default judgment where no class was actually certified. 321 F.3d 641 (7th Cir. 2003). *Davis v. Romney* similarly did not concern a preliminary injunction motion, but rather a district court granting partial summary judgment to plaintiffs on a class-wide basis without certifying a class. 490 F.2d 1360, 1363, 1366 (3d Cir. 1974). Likewise, *Tape Head Co. v. R C A Corp.* admonished a district court for issuing a preliminary injunction without actually determining, either conditionally or as part of its equitable powers, the appropriateness of preliminary classwide relief. 452 F.2d 816, 820 (10th Cir. 1971). The district court in *Suster v. Marshall* similarly declined to issue classwide relief, but the docket for the case does not reflect a class certification motion, and the court makes clear that it refrained from granting broader relief because there was no reason to believe that individuals besides the two plaintiffs faced the challenged enforcement action, 951 F.Supp. 693, 701 n.12 (N.D. Ohio 1996) (citing *Brown v. Trustees of Boston Univ.*, 891 F.2d 337, 361 (1st Cir. 1989), which issued relief to only the plaintiff because the plaintiff had "established that she *alone* had been the victim of sex discrimination") (emphasis added).

[42] Likewise, CPS Defendants' passing remarks to "an uncertain number of unnamed and unverified putative class members," Dkt. No. 111 at 32 suggests a basic misunderstanding of the law. *E.g.*, *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000) ("[T]he fact that the class includes unknown, unnamed future members also *weighs in favor* of certification." (emphasis added)); *Clarkson v. Coughlin*, 145 F.R.D. 339, 346 (S.D.N.Y. 1993) ("The class action device is particularly well-suited in actions brought by prisoners due to the fluid composition of the prison population. . . . Class actions therefore generally tend to be the norm in actions such as this."); *Green v. Johnson*, 513 F.Supp. 965, 975 (D. Mass. 1981) (finding numerosity after considering "the fact that the inmate population at these facilities is constantly revolving"); Newberg on Class Actions § 3.15 (5th ed.) (stream of future class members and impracticality of counting them "make[s] class certification more, not less, likely"); *cf. Gerstein*, 401 U.S. at 125 n.11 ("[I]n this case the constant existence of a class of persons suffering the deprivation is certain . . . ."). Moreover, the "precise identity of each class member need not be ascertained" for a Rule 23(b)(2) class, which the preliminary injunction motion for Count 15 proceeds under. *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016), *cert. denied sub nom. City of Memphis, Tenn. v. Cole*, 137 S. Ct. 2220 (2017).

or law, provided there is a common element of fact or law." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082 (*quoting Senter*, 532 F.2d at 525 n.31); *see also Jeremy v. Nortek Glob. HVAC LLC*, No. 3:14-CV-1940, 2016 WL 5724232, at *9 n.13 (M.D. Tenn. Sept. 30, 2016) ("Rule 23(a)(3) requires that the named plaintiffs' claims be 'based on the same legal theory' as the class claims . . . .") (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082)); *see* Dkt. No. 37 at 10-11. Ms. Hilfort presents multiple common questions of fact and law, *see* Dkt. No. 52, Dkt. No. 37 at 7-10 (arguments on commonality). And, for many of the same reasons Ms. Hilfort meets the commonality requirement, she satisfies typicality, as her experiences are "typical" of the putative class members who also face jailing on violation-of-probation warrants because they cannot purchase their freedom and her claims are based on the same legal theory as those of the class.[43]

CPS Defendants argue that Ms. Hilfort is not an "adequate" class representative because she has never been jailed solely for inability to pay court costs, fines, and fees. Dkt. No. 111 at 33. But that fact does not matter. Ms. Hilfort challenges imminent jailing solely because she cannot afford to pay the secured financial condition required for release after her arrest for allegedly violating her probation, Dkt. Nos. 42, 51, not because she cannot afford to pay *court debt*. Second, Ms. Hilfort moved for preliminary, *prospective* injunctive relief, Dkt. Nos. 42, 42-1; it therefore makes no difference to this Motion whether she has been jailed *previously* for nonpayment or due to inability to pay secured money bail. Ms. Hilfort adequately represents a class of similarly situated people who are currently jailed or who will be jailed due solely to their inability to pay secured money bail amounts required for release after arrest for allegedly violating their probation.

---

[43] CPS Defendants make a number of disconnected statements at the conclusion of their argument regarding the fact-specific nature of indigency (Dkt. No. 111 at 34). Because the Defendants cite no case law, it is difficult to understand what is being argued. However, the identity of the putative class as impoverished is no barrier to relief. Federal courts have long granted classwide injunctive relief requested by indigent individuals and class members. *E.g.*, *Gerstein*, 402 U.S.; *Boddie v. Connecticut*, 401 U.S. 371, 374 (1971); *Zablocki v. Redhail*, 434 U.S. 374, 394 (1978).

Next, CPS Defendants assert that "Ms. Hilfort is not even indigent." Dkt. No. 111 at 33. Plaintiffs will establish the fact of her indigency with testimony and evidence at the preliminary injunction hearing.[44] Ms. Hilfort's declaration in support of the temporary restraining order provides details about her economic circumstances, among them that she is a single mother of four children under the age of ten, had just started a job when the arrest warrant was issued, faced a $2,500 secured financial condition of release, and had only five dollars on hand. Dkt. No. 41-1.[45] Plaintiffs will offer Ms. Hilfort's live testimony at the hearing.

## IX.     Plaintiffs' Evidence

The County states (Dkt. No. 112 at 16) that Plaintiffs have not yet substantiated their factual claims with actual evidence. First, that is wrong: Plaintiffs filed dozens of arrest warrants with secured money bail amounts on them and a sworn declaration from named Plaintiff Indya Hilfort in support of their Motion. More importantly, however, this Court has scheduled an evidentiary hearing for exactly the purpose of providing the parties an opportunity to present and challenge evidence. The parties are currently exchanging written discovery, taking depositions, continuing investigation, and identifying witnesses who will testify live. At the appropriate time and pursuant to this Court's order, Dkt. No. 117, Plaintiffs will present evidence that secured money bail is required as a condition of release on misdemeanor violation-of-probation arrest warrants without an inquiry or findings concerning ability to pay, that people who are indigent are kept in jail pursuant to these warrants for one to two weeks—and longer if their case is in Circuit Court—

[44] Defendants' purported evidence to the contrary does not support their claim. Ms. Hilfort was not, "declared only partially indigent in Lawrence County" (Dkt. No. 111 at 33). In fact, Lawrence County deemed her "an indigent person" and appointed the public defender.

[45] Moreover, CPS Defendants' implication that she could not adequately represent the class because she previously was able to borrow money to pay for her release on secured financial conditions of release that she herself could not afford is incorrect. Dkt. No. 111 at 33. First, Ms. Hilfort seeks *prospective* injunctive relief; the proper inquiry is her current indigency. Ms. Hilfort could not, and cannot, afford the $2,500 secured financial condition of release set on her violation-of-probation warrant issued in Giles County in July 2018, or the $287.50 nonrefundable premium to a private bail bonds company. Dkt. No. 42-1.

without an opportunity to raise ability to pay or challenge the conditions of release, and that the harm to those individuals is devastating.

## X. Balance of Harms and The Public Interest Overwhelmingly Support Granting the Preliminary Injunction

Illegal jailing by the government constitutes irreparable harm and avoiding constitutional violations is always in the public interest. Dkt. No. 52 at 20-22; *e.g.*, *G & V Lounge v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights."). Defendants do not dispute these points. Instead, they traffic in wrong and hyperbolic claims about the supposed parade of horribles that will result from releasing misdemeanor probationers, failing to mention that Ms. Hilfort and every single class member are people *who have already been deemed eligible for release*.

Defendants (again) erroneously claim that Plaintiffs seek to enjoin arrests (Dkt. No. 112 at 19). That is incorrect. Plaintiffs seek to enjoin the County and Sheriff from enforcing secured money bail amounts required for release *after arrest*. Whenever money bail is imposed as a condition of release, it means that the person has been deemed eligible for release, but the County and Sheriff's current policy and practice is to continue jailing individuals if they are too poor to pay for release. That policy and practice is what Plaintiffs seek to have enjoined. Therefore, Defendants' claims that Plaintiffs' relief will create "enforcement problems," Dkt. No. 111 at 25, is specious. Defendants can continue to arrest people alleged to have violated probation and can detain them for a brief period of time to determine conditions of release, or release them after arrest with instructions to return to court for a revocation hearing. There is no need to conduct "additional needless hearings." *Id.* Every class member is someone a judge has deemed releasable—if only she can make a small monetary payment.

39

Next, Defendants claim that the relief Plaintiffs seek would require the Sheriff to "make a determination that the issuing judge made an inquiry or finding concerning ability to pay or considered alternatives to detainment." Dkt. No. 112 at 19. That is incorrect for all of the reasons previously explained. Nor do Plaintiffs seek to enjoin effectuation of a statute, *contra* Dkt. No. 112 at 19; *cf.* Dkt. No. 96 at 29-30 (Plaintiffs' challenge is not directed against a statute).

Defendants' arguments about the financial costs of implementing the injunction Plaintiffs seek are also meritless. *See, e.g.*, *ODonnell v. Harris Cty., Texas*, 251 F. Supp. 3d 1052, 1145 (S.D. Tex. 2017) , *aff'd as modified*, 882 F.3d 528 (5th Cir. 2018), and *aff'd as modified sub nom. ODonnell v. Harris Cty.*, 892 F.3d 147 (5th Cir. 2018) (finding that it costs less to supervise people in the community than to jail them prior to trial). While Plaintiffs have cited empirical evidence, *see* Dkt. No. 52 at 22 & n.18, Defendants deal in unfounded speculation. Plaintiffs will show that the costs of alternatives to detention are less than the cost of jailing people. Defendants provide no credible argument that the County, Sheriff, or the private companies would be harmed by an injunction. The balance of harms and the public interest overwhelming favor relief.

Dated: November 2, 2018

Respectfully Submitted,

*s/ Elizabeth Rossi*

Elizabeth Rossi (*pro hac vice*)
Jonas Wang (*pro hac vice*)
Eric Halperin (*pro hac vice*)
CIVIL RIGHTS CORPS
910 17th Street NW, Suite 200
Washington, DC 20006
Telephone: (202) 599-0953
Facsimile: (202) 609-8030
elizabeth@civilrightscorps.org
jonas@civilrightscorps.org
eric@civilrightscorps.org

Matthew J. Piers (*pro hac vice*)

David W. Garrison, BPR 24968
Scott P. Tift, BPR 27592
BARRETT JOHNSTON MARTIN &
GARRISON, LLC
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
dgarrison@barrettjohnston.com
stift@barrettjohnston.com

Kyle Mothershead, BPR 22953

Chirag G. Badlani (*pro hac vice*)
Kate E. Schwartz (*pro hac vice*)
HUGHES SOCOL PIERS RESNICK
& DYM, LTD.
70 W. Madison St., Suite 4000
Chicago, Illinois 60602
Telephone: (312) 580-0100
Facsimile: (312) 580-1994
mpiers@hsplegal.com
cbadlani@hsplegal.com
kschwartz@hsplegal.com

414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 982-8002 =
Facsimile: (615) 229-6387
kyle@mothersheadlaw.com

*Attorneys for Plaintiffs and Proposed Classes*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on November 2, 2018, I electronically filed the foregoing PLAINTIFFS'

OMNIBUS REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY

INJUNCTION using the CM-ECF System, which caused notice to be sent to all counsel of record

who are registered with the CM/ECF system, including the following Counsel for Defendants:

Daniel H. Rader, IV
Moore, Rader, Clift & Fitzpatrick, P.C.
P O Box 3347
Cookeville, TN 38502
(931) 526-3311
Fax: (931) 526-3092
Email: danny@moorerader.com

Brandt M. McMillan
Tune, Entrekin & White, P.C.
315 Deaderick Street
Suite 1700
Nashville, TN 37238
(615) 244-2770
Email: bmcmillan@tewlawfirm.com

Timothy N. O'Connor
Tune, Entrekin, & White, P.C.
315 Deaderick St., Ste. 1700
Nashville, TN 37238-1700
p: (615) 244-2770
Email: toconnor@tewlawfirm.com

Robyn Beale Williams
Farrar & Bates
211 Seventh Avenue, North
Suite 500
Nashville, TN 37219
(615) 254-3060
Fax: (615) 254-9835
Email: robyn.williams@farrar-bates.com

Cassandra M. Crane
Farrar & Bates
211 Seventh Avenue, North
Suite 500
Nashville, TN 37219
615-254-3060
Fax: 615-254-9835
Email: casey.crane@farrar-bates.com

John Christopher Williams
Williams Law and Mediation Group
101 S 1st Street
Pulaski, TN 38478
(931) 363-6500
Fax: (931) 363-8904
Email: cwilliams@newsouthlaw.com

*s/* Elizabeth Rossi

42