IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| KAREN MCNEIL, et al.,<br>On behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMMUNITY PROBATION SERVICES, LLC, et al.,<br><br>Defendants. | Case No. 1:18-cv-00033<br>Judge Campbell / Frensley |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
PSI DEFENDANTS' MOTION FOR SEVERANCE OR SEPARATE TRIALS**

Plaintiffs Karen McNeil, Lesley Johnson, Tanya Mitchell, Indya Hilfort and Sonya Beard (collectively "Plaintiffs"), on behalf of themselves and a putative class of similarly situated individuals, hereby respond in opposition to the Motion for Severance or Separate Trials (Doc No. 102) and Memorandum in Support (Doc. No. 103) filed by Progressive Sentencing, Inc., PSI-Probation II, LLC, PSI-Probation, L.L.C., Tennessee Correctional Services, LLC, Timothy Cook, Markeyta Bledsoe, and Harriet Thompson (collectively, "PSI" or "PSI Defendants").

**INTRODUCTION**

PSI Defendants bring their Motion for Severance or Separate Trials based on the notion that it would be unfair and unduly burdensome for them to defend Plaintiffs' claims alongside Community Probation Services, LLC, Community Probation Services, Community Probation Services, L.L.C., and Patricia McNair (collectively "CPS" or "CPS Defendants"), because PSI and CPS (collectively the "Defendant companies") are separate entities. CPS Defendants have neither

filed a motion to sever, nor joined in PSI's Motion, and the County has not moved to sever any counts in which it is named jointly with either CPS Defendants or PSI Defendants.

At the heart of Plaintiffs' claims are allegations that CPS and PSI each participate in virtually identical conspiracies with Defendant Giles County, which share a common purpose: to maximize the collection of court debts owed to Giles County and maximize the Defendant company's profits. Plaintiffs allege that the conspiracies are perpetrated in nearly identical ways and involve materially indistinguishable policies and practices. Plaintiffs also allege constitutional violations in which PSI Defendants are named jointly with Defendant Giles County. PSI Defendants impermissibly disregard Plaintiffs' allegations and claims, and ignore the procedural posture of this case, in which discovery is just beginning and which might reveal a broader conspiracy among all three entities. (*See, e.g.*, Doc. No. 41, Corr. First Am. Compl. ¶ 86 ("According to policy and practice, and by agreement or acquiescence of all Defendants, assignments to supervised probation alternate between each company so that each company is assigned approximately the same number of new probationers.").) At this stage of the proceedings, this Court must take Plaintiffs' allegations as true for purposes of PSI Defendants' Motion.

Further, efficiency and judicial economy weigh strongly against severance: Defendant Giles County is involved in nearly identical conduct with each of the Defendant companies. It would be wasteful to require Plaintiffs and the County to engage in duplicative discovery in two separate lawsuits raising identical legal issues and challenging identical conduct on behalf of the County. There is no basis for finding misjoinder or for ordering separate trials, and certainly no basis at this initial stage of the proceedings. As such, this Court should deny PSI's Motion.

2

Case 1:18-cv-00033    Document 141    Filed 11/08/18    Page 2 of 17 PageID #: 2180

# ARGUMENT

I. **The Plaintiffs' Claims against the PSI Defendants and CPS Defendants are Properly Joined, and There is No Basis to Sever Them.**

   **A. The Standard for Permissive Joinder Under Rule 20(a) is Satisfied.**

Plaintiffs have sued the County for engaging in exactly the same conduct with PSI and with CPS. Most of the facts Plaintiffs allege describe conduct that is common to the conspiracy between PSI and the County, and the conspiracy between CPS and the County. (*See, e.g.*, Doc. No. 41, ¶ 79 ("Everyone involved in the process of assessing and collecting court debts, including the County and the Private Defendants, knows that the 'Orders' purporting to find every person charged with a misdemeanor financially able to pay $25 per week are based, in many cases, on coerced statements: Defendants possess information about the probationers' finances, and are present in the courtroom when fees are assessed and the purported colloquy occurs, and many probationers were found indigent for purposes of appointing counsel."); ¶ 90 ("Upon assignment to supervised probation, probationers are required to have an initial meeting with a CPS or PSI representative present in the courtroom."); ¶ 115 ("Non-reporting is deemed to be a violation of probation, and the company employee, in her discretion, can seek an arrest warrant, which she knows will have either a predetermined secured monetary bail amount or an instruction to 'hold' the arrestee, *i.e.*, to detain the arrestee in jail until her court date, or otherwise notify the court of non-reporting.").) Moreover, Plaintiffs bring identical legal claims against the Defendant companies. Because both prongs of the permissive joinder test are satisfied, PSI Defendants incorrectly assert that they are misjoined with CPS Defendants in this action under Rule 20(a) of the Federal Rules of Civil Procedure.

"[T]he purpose of Rule 20(a) is to promote judicial economy and trial convenience" and, as such, it is "governed by the general principle of allowing 'the broadest possible scope of action

consistent with fairness to the parties.'" *Peterson v. Dean*, No. 3:09-CV-628, 2010 WL 5184794, at *14 (M.D. Tenn. Dec. 14, 2010) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) (joinder of claims, parties and remedies is strongly encouraged)). Permissive joinder of defendants is proper under Rule 20(a), so long as two elements are satisfied: "[1] the alleged claim 'arises out of the same transaction, occurrence, or series of transactions or occurrences,' and [2] 'any question of law or fact common to all defendants will arise in the action.'" *Peterson*, 2010 WL 5184794, at *14 (citing Fed.R.Civ.P. 20(a)(2)). The two requirements are "flexible concepts" that courts must interpret "as broadly as possible whenever doing so is likely to promote judicial economy." *Howard v. Wilkes & McHugh, P.A.*, No. 06-2833-JPM, 2007 WL 9706138, at *2 (W.D. Tenn. Sept. 26, 2007). Here, both are easily satisfied.

1. **Plaintiffs' Claims Satisfy Rule 20(a)'s Transactional Relatedness Requirement.**

The "words 'transaction or occurrence' are given a broad and liberal interpretation in order to avoid a multiplicity of suits." *LASA Per L'Industria Del Marmo Societa Per Azioni of Lasa, Italy v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969). "[A]ll 'logically related' events entitling a person to institute legal action against another are generally regarded as comprising a transaction or occurrence." *Thompson v. Janssen Pharm., Inc.*, No. 15-CV-2558-SHL-CGC, 2015 WL 12844456, at *1 (W.D. Tenn. Dec. 21, 2015) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)); *Mosley*, 497 F.2d at 1333 ("'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon on the immediateness of their connection as upon their logical relationship.").

Here, Plaintiffs' claims against the Defendant companies are "logically related," because: (1) the legal claims themselves are identical; (2) the analogous claims against the Defendant companies include the County, either as a common Defendant (*see* Doc. No. 41, Counts 5-8, 10-

4

Case 1:18-cv-00033   Document 141   Filed 11/08/18   Page 4 of 17 PageID #: 2182

14, 16 (section 1983 claims), 20-23 (abuse of process claims)) or as a common co-conspirator (*see* Doc. No. 41, Counts 1-4 (RICO claims), 24-25 (civil conspiracy)); and (3) the Defendant companies engage in materially indistinguishable policies and practices, which are authorized and perpetuated by the County in exactly the same way. (*See* Doc. No. 41, ¶¶ 70-71.)

First, Plaintiffs' claims arise out of the County's identical conspiracies with two private, for-profit probation companies in Giles County to authorize their collection of court debts by extortion. (*See* Doc. No. 41, ¶¶ 57-346.) Indeed, every claim of Plaintiffs and the putative class members can be traced to the exact same occurrence: the County's decision to contract with PSI and CPS. Therefore, the County's decision to contract with PSI and with CPS is part of a "series of occurrences" that are "logically related" to the County's collection of court debts through user-funded private probation companies, which engage in extortion and systemic constitutional violations of probationers' equal protection and due process rights to meet their bottom lines and collect court debts for the County.

Plaintiffs have also satisfied the "transaction or occurrence" prong by alleging coordinated action among all three entities. (*See, e.g.* Doc. No. 41, ¶ 85 ("Pursuant to the companies' contracts with the County, any misdemeanor offender who is sentenced to probation must be assigned to be supervised by either CPS or PSI."); ¶ 86 ("According to policy and practice, and by agreement or acquiescence of all Defendants, assignments to supervised probation alternate between each company so that each company is assigned approximately the same number of new probationers.").) Plaintiffs intend to seek further discovery to determine whether the Defendant companies, and/or all Defendants, have coordinated their actions in additional ways.

It makes no difference that Plaintiffs have alleged two conspiracies: between CPS and the County and between PSI and the County. Severance is still inappropriate. *See State Comp. Ins.*

*Fund v. Drobot*, No. SACV 13-956 AG (CWX), 2014 WL 12586244, at *4 (C.D. Cal. Jan. 28, 2014). In *Drobot*, the plaintiff alleged two RICO enterprises with a common purpose, "one between the Surgical Defendants and [individual Defendants] the Drobots, and one between the Pharmacy Defendants and the Drobots." *Id.* at *1. The court held that "just because Plaintiff alleges two separate RICO enterprises doesn't mean Plaintiff's right to relief against all Defendants does not arise from the same series of transactions or occurrences." *Id.* at *4.

Here, although Plaintiffs allege two RICO enterprises—the PSI enterprise and the CPS enterprise (Doc. No. 41 at 77–98)—Plaintiffs further allege that each enterprise conspired with Defendant Giles County for the same purpose: to collect court debts on behalf of the County while earning revenue and profit through probation fees by using credible threats of arrest, jailing, and repeated extensions of supervised probation. (*See* Doc No. 41 ¶¶ 2, 368, 372, 396, 400, 427, 432, 459, 463.) As in *Drobot*, Plaintiffs' allegations involving two related RICO enterprises, with a common co-conspirator (here, Giles County) and a common purpose are sufficient to satisfy the transactional relatedness prong of the permissive joinder test. *See also Peterson*, 2010 WL 5184794, at *14 ("It is clear from the Amended Complaint (which is at present the only basis for the Court's determination) that Plaintiffs' claims arise out of the same alleged transaction or occurrence—the alleged conspiracy . . . ."); *Valley Forge Ins. Co. v. Colello*, No. 89 C 9016, 1990 WL 141461, at *3 (N.D. Ill. Sept. 20, 1990) (holding joinder to be proper where plaintiffs claimed to be victims of the same pattern of racketeering activity, because the pattern of racketeering is "the same series of acts or transactions" giving rise to each plaintiff's causes of action). PSI Defendants rely on cases that are factually distinguishable because they involve neither a conspiracy among all Defendants, nor two factually and legally related conspiracies where a

Defendant is common to both.[1]

In addition, Plaintiffs satisfy the transactional relatedness requirement because they allege that Defendants maintain a common County-wide policy of extorting indigent probationers to generate revenue for Defendant Giles County and maximize the Defendant companies' profits. Plaintiffs allege that in furtherance of those goals and policies (in addition to contracting with the County to provide supervised probation "services" and being assigned probationers by the County on an alternating basis) each Defendant company had a practice of subjecting Plaintiffs to common forms of abuse and constitutional violations, such as continuous and repeated threats of jailing, invasive drug screens during which employees of the companies observe probationers urinating, and repeated revocations and extensions of probation for not making payments that the companies know the probationers cannot afford. (*See, e.g.,* Doc. No. 41, ¶¶ 2-3.) Those materially indistinguishable policies and practices give rise to Plaintiffs' constitutional claims, in which either PSI Defendants are named jointly with Defendant Giles County or CPS Defendants are named jointly with Defendant Giles County. (*See, e.g.,* Doc. No. 41, ¶¶ 487, 497, 507, 517, 528, 534, 540, 546, 551, 556, 561, 565) (alleging Defendant companies' policies customs and/or procedures deprive Plaintiffs of their constitutional rights to due process and equal protection); *see also id.* at Counts 5-8, 10-14, 16 (section 1983 claims).)

---

[1] *See Stojcevski v. Cty. of Macomb*, 143 F. Supp. 3d 675 (E.D. Mich. 2015) (finding misjoinder of incarcerated brothers' claims that they were denied necessary medical care, where no conspiracy was alleged); *Demboski v. CSX Transp., Inc.*, 157 F.R.D. 28 (S.D. Miss. 1994) (finding misjoinder of three wrongful death claims and one personal injury claim, where no conspiracy was alleged); *Harris v. Spellman*, 150 F.R.D. 130 (N.D. Ill. 1993) (finding misjoinder of inmates' § 1983 claims, where no conspiracy was alleged); *Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d 597, 600 (D. Del. 2012) (finding misjoinder in patent infringement action, where no conspiracy was alleged); *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 429 (S.D.N.Y. 2013) (dismissing plaintiffs' conspiracy claims and finding severance of the "remaining claims" against defendant to be appropriate because "[g]iven the infirmity of plaintiffs' conspiracy allegations . . . there remains no unifying scheme . . . .") (citing *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 214 F.R.D. 152, 155-56 (S.D.N.Y.2003) (granting severance where conspiracy claim was insufficient)). This Court should reject the PSI Defendants' reliance upon such factually distinguishable case, particularly given that "[t]he question of whether a particular factual situation constitutes a single transaction or occurrence' is a case-specific inquiry." *Stojcevski*, 143 F. Supp. 3d at 682 (internal quotations omitted).

*Lee v. Dell Prod., L.P.* demonstrates that Defendants' common policies and practices are sufficient to satisfy the first Rule 20(a) requirement. No. CIVA 3:06CV0001, 2006 WL 2981301 (M.D. Tenn. Oct. 16, 2006). There, the District Court for the Middle District of Tennessee held that eight Plaintiffs' claims regarding treatment of African Americans within two separate Dell plants met Rule 20's transactional relatedness requirement, even though the Plaintiffs admittedly did not all work in the same jobs, under the same supervisors or even in the same departments and allegedly suffered different effects from the alleged discrimination, because the eight Plaintiffs who alleged race discrimination were governed by the same "policies, procedures, and practices," which allegations were tantamount to "a widely held policy of discrimination." *Lee*, 2006 WL 2981301, at *8-9. *See also Lowery v. Greater Chattanooga Pub. Television Corp.*, No. 1:07-CV-238, 2008 WL 269542, at *7-8 (E.D. Tenn. Jan. 25, 2008) (discussing recognition among courts that "a pattern or practice allegation may be sufficient to satisfy the transactional relatedness requirement in an FLSA case" and finding such requirement satisfied where complaint alleged systemic violations of the Act) (citing cases).

PSI acknowledges that Plaintiffs' allege materially indistinguishable policies and practices, but denies those allegations, referring to them as "unsupported and conclusory." (*See* Doc. No. 103, PSI's Motion for Severance, at pp. 2, 6.) Plaintiffs' detailed complaint allegations are not "conclusory," and at this stage, the Court must presume the truth of Plaintiffs' allegations. *See Lee*, 2006 WL 2981301 at *6 (accepting Plaintiffs' allegations as true in deciding Defendant's pre-discovery severance motion); *accord Nali v. Michigan Dep't Of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007); *Harper v. Pilot Travel Centers, LLC*, No. 2:11-CV-759, 2012 WL 395122, at *4 (S.D. Ohio Feb. 7, 2012) ("Without discovery . . . the Court at this stage is limited to the allegations in Plaintiffs' Complaint in determining whether the Plaintiffs

have properly joined their claims[.]").[2] In sum, for purposes of PSI's motion, this Court must accept as true that each Defendant company engages in virtually identical policies and practices jointly with the County for the same goal: to generate County revenue and company profit. Those allegations are more than sufficient to satisfy the transactional relatedness requirement for joinder.

2. **A Question of Law or Fact Common to the PSI Defendants and CPS Defendants Will Arise in This Action.**

The second requirement for permissive joinder, "the common question test, is usually easy to satisfy." *Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 231 (M.D. Tenn. 2001). This case is no exception. Here, Plaintiffs have pled numerous questions of law and numerous questions of fact that are common to PSI Defendants and CPS Defendants. Any one of them is sufficient to satisfy the second element of permissive joinder under Rule 20(a). (*See* Doc. No. 41, ¶ 351 (setting forth 17 exemplary common legal and factual questions including, for instance "[w]hether a contract creating a probation company with a direct financial stake in the management and outcome of every probationer's case it supervises violates state law," and "[w]hether it is lawful to use legal process purportedly concerning probation violation and probation judgments with a motive to earn profit.").) Indeed, the plain language of the Rule requires only a single common

---

[2] In accordance with the precedent cited, particularly given that the parties just recently had their initial case management conference and are still approximately 10 months away from the close of discovery, this Court should treat all allegations in Plaintiffs' Amended Complaint as true for purposes of this motion, notwithstanding the fact that the PSI Defendants attached a Declaration by Tim Cook. Moreover, the only allegation that Mr. Cook specifically contests is that PSI "exercises its discretion to charge varying amounts for drug tests" and "sometimes charges for every drug test, and other times charges a lump sum for some period of time, regardless of the number of drug tests actually conducted during that time period." (Doc. No. 41, ¶102.) Mr. Cook avers (without specifying what time period he is referring to) that PSI's "in-office urine screens are conducted with no charge to probationers" and probationers are only charged the $25 it costs PSI to send the sample to a lab "if a probationer contests a positive screen." (Doc. No. 103-1, ¶ 8.) Even if this Court were to assume Mr. Cook's averment refers to the full timeframe at issue in Plaintiffs' Amended Complaint and accept his averment as true, it would be insufficient to undermine the numerous other ways in which Plaintiffs allege the Defendants companies' policies are materially indistinguishable. And in any event, Plaintiffs have the right to take discovery to test the accuracy and scope of Mr. Cook's assertions.

question of "law *or* fact," yet here there are over a dozen common legal questions alone. Fed. R. Civ. P. 20(a)(2)(B) (emphasis added). *See also Orlowski v. Bates*, No. 211 CV 01396 JPMCGC, 2014 WL 12773800, at *8 (W.D. Tenn. Feb. 11, 2014) (emphasizing same).

Defendants acknowledge that Plaintiffs allege the exact same legal theories against PSI Defendants and CPS Defendants. (Doc. No. 103 at p.7.) That is sufficient to satisfy the common-question prong of Rule 20(a). *See, e.g. Orlowski*, 2014 WL 12773800, at *8 (holding that plaintiffs' "common allegations" that Defendants acted in concert to defraud customers "will necessarily raise at least one common question of law or fact" in satisfaction of the Rule 20(a) requirement); *Adams v. Diversicare Leasing Corp.*, No. 14-2990, 2015 WL 4208779, at *4 (W.D. Tenn. July 10, 2015) (holding that Plaintiffs federal and state law claims will share at least one common question of law or fact in satisfaction of Rule 20(a) where plaintiffs alleged that defendants' workplace policies violated the FLSA and Tennessee law).

In sum, Plaintiffs' allegations against the PSI Defendants and the CPS Defendants satisfy both the common question and the transactional relatedness prongs of the permissive joinder test under Rule 20(a).

### B. Severance is Inappropriate Under Rule 21 Because the PSI Defendants Fail to Establish Misjoinder Under Rule 20(a), and Other Relevant Factors Weigh in Favor of the Case Proceeding as A Single Action Against All Defendants.

Under Rule 21 of the Federal Rules of Civil Procedure, severance is permitted if parties are misjoined under Rule 20(a). As discussed in part A, *supra*, however, Rule 20(a) is satisfied in this case, so misjoinder is not a proper basis for severance under Rule 21. "Outside of the context of misjoinder, Rule 21 severance may also be called for where failure to sever would place an undue burden on the parties, impose unnecessary expense, or would risk jury confusion at trial." *Alvion Properties, Inc. v. Weber*, No. 3:08-0866, 2009 WL 3060419, at *8 (M.D. Tenn. Sept. 23,

2009). The district court has broad discretion in determining whether actions should be severed under Rule 21. *Id.* at *8. Given the factors applicable to a severance determination under Rule 21, the allegations in Plaintiffs' Complaint, and the current posture of this case, the Court should deny PSI's Motion. At the very least, this Court should find the PSI Defendants' motion for severance premature. *See e.g. Sojo Prods. Inc. v. Does 1-67*, No. 3:12-CV-599, 2013 WL 1759561, at *3 (E.D. Tenn. Apr. 24, 2013) (finding request to sever premature at early stage of litigation); *cf. Fed. Home Loan Mortg. Corp. v. Kantz*, No. 3:15-CV-00932, 2016 WL 3975435, at *2 (M.D. Tenn. July 25, 2016) (finding motion to sever premature where the moving party was preparing to file an amended complaint in intervention).

Courts consider several factors in determining whether claims should be severed under Rule 21: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for separate claims." *Six L's Packing Co. v. Beale*, No. 3:10-CV-01132, 2012 WL 928897, at *2 (M.D. Tenn. Mar. 19, 2012) (internal quotations omitted). The first two factors mirror the requirements for permissive joinder under Rule 20(a) and, for all of the reasons discussed in part A, *supra*, those two factors do not support severance. Therefore, only the latter three factors warrant additional consideration.

At this early stage in the litigation, the third factor, judicial economy, would not be facilitated by severance. *See Terry v. Cmty. Bank of N. Virginia*, 255 F. Supp. 2d 817, 824–25 (W.D. Tenn. 2003) (finding that "the interests of justice and judicial economy mitigate against dismissal or severance . . . at this stage" when discovery had yet to be completed). To the contrary,

severance would impede the interests of judicial economy by requiring the court to oversee discovery in two separate litigations on potentially two separate timetables, delaying progress as to both of them. *See Sojo Prods. Inc.*9, 2013 WL 1759561, at *3 ("[S]evering these claims at this early stage of litigation is likely to cause delays and hinder disposition of these matters.") (citing *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 253 (N.D. Ill. 2011) (finding severance "likely to cause delays" and tax the court's resources)). This is especially true here since County actors would be common to both actions, resulting in largely duplicative document requests and depositions.

With respect to the fourth factor—whether severance would avoid prejudice—Defendants argue that they will be prejudiced at trial, purportedly because they would be "forced to conduct a confusing and comingled defense," because of "the large number of class members," and because it will be "impossible" for a jury to distinguish "the evidence that would be presented as to the differing policies and activities of the Defendants." (Doc. No. 103, pp.8-9.) Once again, the PSI Defendants ignore that discovery is just beginning and that Plaintiffs' allegations that the Defendants companies' policies are materially indistinguishable must be taken as true at this early stage of the proceedings. They also fail to show that a separate action against PSI would be any less "complicated" or would not involve a large number of class members, and they offer only conclusory assertions that jury confusion is an inevitable result that would be avoided by severance. *See Drobot*, 2014 WL 12586244, at *5 (where case against two RICO enterprises was "already complicated," court wasn't persuaded "that there would be a significantly higher risk of jury confusion if the two groups of defendants are kept together" or "that either group would be substantially prejudiced if the groups are kept together").

12
Case 1:18-cv-00033   Document 141   Filed 11/08/18   Page 12 of 17 PageID #: 2190

Notably, the PSI Defendants do not argue that severance would avoid prejudice to them during the discovery phase of this litigation, and their sweeping conclusions as to the prejudice they will suffer at trial is entirely speculative. *See Peterson*, 2010 WL 5184794, at *14 ("With respect to the prejudice to which Defendants claim they may be subject as a result of joinder, such prejudice is purely speculative at this stage, and Defendants have not demonstrated that any potential prejudice could not be readily limited by a court order under Rule 20(b) directed toward minimizing prejudice."). Thus, they present no basis to conclude that severance will avoid prejudice at this time.

For their argument regarding prejudice, Defendants rely on *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258 (D. Conn. 2012), which does not support severance here. The *Costello* court found that prejudice would result absent severance *only after* the parties had engaged in extensive discovery (including at least 60 depositions) and the court had decertified the collective action. 888 F. Supp. 2d at 262. Thus, the procedural posture of *Costello* was materially distinguishable from this case, in which the Defendant companies and Plaintiffs have hardly engaged in any discovery, and the court has yet to rule on class certification. *Costello* is also distinguishable because the plaintiffs there improperly relied on other cases where the evidence would in part involve discriminatory policies or practices by the defendants, and the court found that the *Costello* case would involve far more individualized evidence than the other cited cases. *Id.* at 265-66. This case, in contrast, will involve primarily evidence about common policies and practices. Individualized evidence may be relevant to damages, but almost certainly not to liability. Finally, the *Costello* court also found that the transactional relatedness and judicial economy factors favored severance, while here, as discussed above, those factors do not support severance. *Id.* at 266.

Last, as with their arguments in support of the fourth factor, regarding prejudice at trial, the PSI Defendants cannot presently demonstrate that such different witnesses and documentary proof will be required in this case for purposes of the fifth factor. Until discovery is completed, the parties can only speculate as to what witnesses and evidence they will rely upon at trial, and given Plaintiffs' allegations—including identical conspiracies with Defendant Giles County and materially indistinguishable policies and practices—it is reasonable to presume that much of the evidence and witnesses presented will be common to both Defendant companies, as well as to Defendant Giles County. *See Drobot*, 2014 WL 12586244, at *5 (finding in RICO case that "severance might result in a duplication of effort for the parties and the Court if the case eventually goes to trial. The parties may call witnesses and present exhibits common to claims against both sets of defendants.").

## II. The PSI Defendants' Motion for Separate Trials is Premature and Unfounded and Should be Denied.

The PSI Defendants alternatively seek a separate trial under Rule 42(b) of the Federal Rules of Civil Procedure. Their single-sentence argument is devoid of factual or legal support and should be denied. (Doc. No. 103, p. 10.) Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). "In determining whether separate trials are necessary, the trial court should consider whether the claims are likely to involve many overlapping issues of facts, causing plaintiffs to put on many of the same witnesses and evidence in support of their claims." *Beal through Putnam v. Walgreen Co.*, No. 05-2237, 2009 WL 10665197, at *2 (W.D. Tenn. Feb. 17, 2009) (internal quotations omitted).

As discussed above, where Plaintiffs allege that both PSI and CPS conspired with Defendant Giles County for a common goal and that the Defendant companies maintain materially

14

indistinguishable policies and practices in furtherance of their common goal and coordinate alternate case assignments in the same courtrooms, the Plaintiff is likely to present common witnesses and evidence with respect to both companies, as well as with Defendant Giles County (which is named jointly with each Defendant company in many of the Counts alleged). The PSI Defendants offer no reason to believe otherwise and, given that discovery is just beginning in this case, any such argument they do offer in reply will be purely speculative. At the very least, Defendants' motion under Rule 42(b) is premature and should be denied without prejudice. *See Lee*, 2006 WL 2981301, at *12 (finding request for separate trials pursuant to Rule 42(b) premature); *Peterson*, 2010 WL 5184794, at *15 (same).

## CONCLUSION

For the foregoing reasons, this Court should deny the PSI Defendants' Motion for Severance or Separate Trials, and grant Plaintiffs such other relief as the Court deems just and appropriate.

Dated: November 8, 2018                                             Respectfully Submitted,

                                                                    *s/* David W. Garrison

| | |
|---|---|
| Elizabeth Rossi (*pro hac vice*) | David W. Garrison, BPR 24968 |
| Jonas Wang (*pro hac vice*) | Scott P. Tift, BPR 27592 |
| Eric Halperin (*pro hac vice*) | BARRETT JOHNSTON MARTIN & |
| CIVIL RIGHTS CORPS | GARRISON, LLC |
| 910 17th Street NW, Suite 200 | Bank of America Plaza |
| Washington, DC 20006 | 414 Union Street, Suite 900 |
| Telephone: (202) 599-0953 | Nashville, TN 37219 |
| Facsimile: (202) 609-8030 | Telephone: (615) 244-2202 |
| elizabeth@civilrightscorps.org | Facsimile: (615) 252-3798 |
| jonas@civilrightscorps.org | dgarrison@barrettjohnston.com |
| eric@civilrightscorps.org | stift@barrettjohnston.com |
| | |
| Matthew J. Piers (*pro hac vice*) | Kyle Mothershead, BPR 22953 |
| Chirag G. Badlani (*pro hac vice*) | 414 Union Street, Suite 900 |
| Kate E. Schwartz (*pro hac vice*) | Nashville, TN 37219 |
| HUGHES SOCOL PIERS RESNICK | Telephone: (615) 982-8002 |

& DYM, LTD.  
70 W. Madison St., Suite 4000  
Chicago, Illinois 60602  
Telephone: (312) 580-0100  
Facsimile: (312) 580-1994  
mpiers@hsplegal.com  
cbadlani@hsplegal.com  
kschwartz@hsplegal.com

Facsimile: (615) 229-6387  
kyle@mothersheadlaw.com

*Attorneys for Plaintiffs and Proposed Classes*

## CERTIFICATE OF SERVICE

I certify that on November 8, 2018, I electronically filed the foregoing PLAINTIFFS' RESPONSE IN OPPOSITION TO PSI DEFENDANTS' MOTION FOR SEVERANCE OR SEPARATE TRIALS using the CM-ECF System, which caused notice to be sent to all counsel of record who are registered with the CM/ECF system, including the following Counsel for Defendants:

Daniel H. Rader, IV
Moore, Rader, Clift & Fitzpatrick, P.C.
P O Box 3347
Cookeville, TN 38502
(931) 526-3311
Fax: (931) 526-3092
Email: danny@moorerader.com

Brandt M. McMillan
Tune, Entrekin & White, P.C.
315 Deaderick Street
Suite 1700
Nashville, TN 37238
(615) 244-2770
Email: bmcmillan@tewlawfirm.com

Timothy N. O'Connor
Tune, Entrekin, & White, P.C.
315 Deaderick St., Ste. 1700
Nashville, TN 37238-1700
p: (615) 244-2770
Email: toconnor@tewlawfirm.com

Robyn Beale Williams
Farrar & Bates
211 Seventh Avenue, North
Suite 500
Nashville, TN 37219
(615) 254-3060
Fax: (615) 254-9835
Email: robyn.williams@farrar-bates.com

Cassandra M. Crane
Farrar & Bates
211 Seventh Avenue, North
Suite 500
Nashville, TN 37219
615-254-3060
Fax: 615-254-9835
Email: casey.crane@farrar-bates.com

John Christopher Williams
Williams Law and Mediation Group
101 S 1st Street
Pulaski, TN 38478
(931) 363-6500
Fax: (931) 363-8904
Email: cwilliams@newsouthlaw.com

s/ David W. Garrison