**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: December 23, 2019

Mr. Chirag Gopal Badlani
Mr. Matthew J. Piers
Ms. Kate Ellen Schwartz
Hughes, Socol, Piers, Resnick & Dym
70 W. Madison Street, Suite 4000
Chicago, IL 60602

Ms. Cassandra Crane
Ms. Robyn Beale Williams
Farrar & Bates, 211 Seventh Avenue, N., Suite 500
Nashville, TN 37219

Mr. David W. Garrison
Mr. Scott P. Tift
Barrett, Johnston, Martin & Garrison
414 Union Street, Suite 900
Nashville, TN 37219

Mr. Eric Ian Halperin
Ms. Elizabeth Rossi
Mr. Jonas Wang
Civil Rights Corps
910 17th Street, N.W., Suite 200
Washington, DC 20006

Re: Case No. 19-5262, *Karen McNeil, et al v. Community Probation Services, et al*
Originating Case No. : 1:18-cv-00033

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Mr. Kirk L. Davies

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0305p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

| | |
|---|---|
| KAREN MCNEIL, et al.,<br>　　　　　　　　　　　　　　　*Plaintiffs*,<br><br>INDYA HILFORT, on behalf of herself and all others similarly situated,<br>　　　　　　　　　　　　　　　*Plaintiff-Appellee*,<br><br>　　*v.*<br><br>COMMUNITY PROBATION SERVICES, LLC, et al.,<br>　　　　　　　　　　　　　　　*Defendants*,<br><br>GILES COUNTY, TENNESSEE; KYLE HELTON, Sheriff,<br>　　　　　　　　　　　　　　　*Defendants-Appellants*. | Nos. 19-5262 |

Appeal from the United States District Court
for the Middle District of Tennessee at Columbia.
No. 1:18-cv-00033—William Lynn Campbell, Jr., District Judge.

Argued: December 10, 2019

Decided and Filed: December 23, 2019

Before: SUTTON, NALBANDIAN, and READLER, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Cassandra M. Crane, FARRAR & BATES, LLP, Nashville, Tennessee, for Appellants. Elizabeth Rossi, CIVIL RIGHTS CORPS, Washington, D.C., for Appellee. **ON BRIEF:** Cassandra M. Crane, Robyn Beale Williams, FARRAR & BATES, LLP, Nashville, Tennessee, for Appellants. Elizabeth Rossi, Eric Halperin, CIVIL RIGHTS CORPS, Washington, D.C., Matthew J. Piers, Chirag G. Badlani, Kate E. Schwartz, HUGHES SOCOL PIERS RESNICK & DYM, LTD., Chicago, Illinois, David W. Garrison, Scott P. Tift, BARRETT JOHNSTON MARTIN & GARRISON, LLC, Nashville, Tennessee, for Appellees.

Case: 19-5262     Document: 42-2     Filed: 12/23/2019     Page: 2     (4 of 12)

No. 19-5262          *McNeil, et al. v. Cmty. Probation Servs., et al.*          Page 2

_____

## OPINION

_____

SUTTON, Circuit Judge. Several criminal defendants believe that the way Tennessee sets the amount of bail for misdemeanor crimes violates federal due process. Under Tennessee law, a county sheriff enforces probation-violation warrants and the bail amounts are established by state law and set by a local judge. The district court granted the probationers a preliminary injunction against the county's and sheriff's enforcement of the bail requirements. The county and sheriff do not challenge the preliminary constitutional ruling. They argue for now only that the probationers should have sued the state judges who determine the bail amounts instead of suing the county and sheriff who enforce them. We affirm.

I.

Located in southern Tennessee and centered in Pulaski, Giles County contracted with private probation companies to supervise people it convicted of misdemeanors. A group of probationers sued Giles County, Sheriff Kyle Helton, the probation companies, and some of the companies' employees. They alleged problems with the misdemeanor probation system ranging from RICO violations and civil conspiracy to improper debt collection and constitutional violations stemming from private probation supervision.

Just one claim matters today. The probationers say that the county and sheriff violated their "substantive right against wealth-based detention" by detaining them after arrest until they pay bail. R. 41 at 117. The problem, say the probationers, is that the judges set the bail amount "without reference to the person's ability to pay," outside the person's presence, and without determining whether the person poses "a danger to the community or a risk of flight." *Id.*

The district court granted the plaintiffs a preliminary injunction against the county and sheriff on this theory. The injunction prohibits them from "detaining any person on misdemeanor probation . . . based on a secured financial condition of release." R. 225 at 1. The probationers acknowledge that a bail-based detention determined through a different process would work. To that end, the injunction permits the county and sheriff to enforce bail

Case: 19-5262    Document: 42-2    Filed: 12/23/2019    Page: 3    (5 of 12)

No. 19-5262                 *McNeil, et al. v. Cmty. Probation Servs., et al.*                Page 3

accompanied by evidence of the probationer's ability to pay, the necessity of detention, and the alternatives to bail.

Sheriff Helton and Giles County appeal. Accepting the preliminary constitutional ruling for purposes of this appeal, they argue only that the district court permitted the plaintiffs to sue the wrong party and thus imposed the wrong remedy. Instead of enjoining them from enforcing the arrest warrants, they say, the court should have enjoined the judges from issuing them.

The contours of Giles County's probation, arrest, and detention procedures are relatively straightforward. When someone commits a Giles County misdemeanor and receives a sentence that includes a term of supervised probation, she is assigned to a probation officer from one of the probation companies. If all goes well, she checks in with her probation officer regularly and probation ends on schedule. If not, the officer reports probation violations to the Giles County court that convicted her of the misdemeanor in the first place—usually the General Sessions Court, sometimes the Circuit Court.

If convinced a probation violation occurred, the judge issues a warrant requiring the probationer to appear in court. Four warrant options are available. Sometimes the judge wishes only to inform the probationer of the date of her probation violation hearing. In that case, the judge marks the warrant "cite." Other times, the officer must arrest the probationer but can release her if she promises to appear in court. The judge marks those warrants "ROR"—"release on recognizance." When a promise isn't enough, the arrested probationer must pay a designated amount of bail in order to be released from jail. The judge writes that amount on the warrant. Sometimes, the officer holds the probationer without the opportunity to pay bail. Judges mark those warrants "hold."

If the judge decides to set bail, the third category just mentioned, Tennessee law requires him to set the amount "as low as the court determines is necessary to reasonably assure the appearance of the defendant as required." Tenn. Code Ann. § 40-11-118(a). It also spells out things the judge must consider in determining that amount, including how long the person has lived in the community, her prior criminal record, and her financial condition. *Id.*

Case: 19-5262    Document: 42-2    Filed: 12/23/2019    Page: 4    (6 of 12)

No. 19-5262          *McNeil, et al. v. Cmty. Probation Servs., et al.*          Page 4

§ 40-11-118(b)(1), (2), (7). Giles County judges consider those factors before arrest and outside the probationer's presence. Once a judge sets the bail amount, only a judge can change it.

When officers arrest someone for a probation violation on a warrant that specifies bail, Sheriff Helton detains her unless she pays the amount printed on the warrant. The parties estimate that Sheriff Helton collected bail from, or detained, about 130 people arrested for probation violations (whether for underlying misdemeanors or felonies) between January and August 2018.

The first opportunity to convince a judge to lower bail takes a few weeks. General Sessions Court arrestees receive their first court appearance within 10 to 14 days, but they may not challenge bail amounts until the second court appearance, 10 to 14 days after the first. Circuit Court arrestees appear in court on one designated day a month, meaning the county can detain them for up to 30 days without an opportunity to challenge the bail amounts.

II.

The stage set, we ask whether the district court preliminarily enjoined the right parties. Four factors guide a district court's decision to issue a preliminary injunction: whether the plaintiffs will likely win down the road, whether an injunction would prevent the plaintiffs from being irreparably harmed, whether an injunction would harm others, and how the injunction would impact the public interest. *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017). This appeal turns on a narrow likelihood-of-success question and a legal one at that: Did the plaintiffs sue the right parties?

The Eleventh Amendment and background principles of sovereignty ordinarily bar lawsuits against States and state officials. *See Alden v. Maine*, 527 U.S. 706, 712–14 (1999). Two exceptions to this rule (with rules and exceptions of their own) bear on this action. Sovereign immunity protects States, not state subdivisions such as counties. *Lincoln County v. Luning*, 133 U.S. 529, 530 (1890). And private parties may sue state officials to stop ongoing constitutional violations. *Ex parte Young*, 209 U.S. 123, 155–56 (1908). Seeking to take advantage of both exceptions, the probationers sued the county sheriff and the county.

### A.

Start with the sheriff—and his amenability to suit. The short answer is that the plaintiffs can sue the sheriff, and it makes no difference whether he acts for the State or the county. If he acts for the State, *Ex parte Young* permits this injunction action against him. If he acts for the county, neither sovereign immunity, qualified immunity, nor any other defense stands in the way at this stage of the case.

The longer answer, the more precise answer that accounts for some of the sheriff's arguments, requires us to consider some details of the Tennessee bail system. The threshold question is whether Sheriff Helton acted for the county or the State when he enforced the bail amounts by detaining probationers until payment. *Crabbs v. Scott*, 786 F.3d 426, 429 (6th Cir. 2015). When a county official commits an alleged constitutional violation by "simply [] complying with state mandates that afford no discretion, they act as an arm of the State," not the county. *Brotherton v. Cleveland*, 173 F.3d 552, 566 (6th Cir. 1999).

Tennessee law suggests that Sheriff Helton acted for the State when he enforced the bail amounts. The Tennessee Constitution creates the office of county sheriff. Tenn. Const. art. VII, § 1. And the state legislature prescribes a sheriff's "qualifications and duties." *Id.* The legislature requires sheriffs to "obey the lawful orders and directions of the court[s]" as well as to "[t]ake charge and custody" of the county jail "and of the prisoners therein . . . and keep them . . . until discharged by law." Tenn. Code Ann. § 8-8-201(a)(2)(A), (a)(3).

Discharged by law as told by whom? The Tennessee Supreme Court tells us. When Tennessee law does not assign anyone the duty to determine whether a county jail detainee is eligible for release, the county sheriff has the responsibility. *Shorts v. Bartholomew*, 278 S.W.3d 268, 281–82 (Tenn. 2009). When Tennessee law by contrast assigns that duty to an entity, the sheriff "is not authorized to release" the county jail detainee until notified by the decisionmaker. *Id.* at 279.

Case: 19-5262    Document: 42-2    Filed: 12/23/2019    Page: 6    (8 of 12)

No. 19-5262             *McNeil, et al. v. Cmty. Probation Servs., et al.*             Page 6

In this instance, the condition of release is the bail amount. Tennessee entrusts the determination of that amount to its judges. Tenn. Code Ann. § 40-11-118. That means Tennessee directs Sheriff Helton to hold probationers in the county jail until they pay bail. Tenn. Code Ann. § 8-8-201; *Shorts*, 278 S.W.3d at 281–82. And that, in turn, means he acts for the State when he takes the challenged action, detaining probationers under judge-set bail amounts.

That leaves the question of whether the sheriff can be sued in an injunction action as an official enforcing state policies. In accordance with *Ex parte Young*, 209 U.S. at 155–56, sovereign immunity does not stand in the way of a lawsuit against a public official "actively involved with administering" the alleged violation. *Doe v. Dewine*, 910 F.3d 842, 849 (6th Cir. 2018) (quoting *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048 (6th Cir. 2015)). Tennessee statutes command that involvement when they place the sheriff in charge of keeping detainees in the county jail. Tenn. Code Ann. § 8-8-201(a)(3). As a factual matter, the parties agree that Sheriff Helton carries out his statutory responsibility by detaining arrestees in the county jail. All in all, Sheriff's Helton's actions come within *Ex parte Young*'s domain.

The Sheriff disputes this conclusion on a few fronts. He claims that his detention of the probationers is not the real violation. The true problem, he says, is the way the judges set bail amounts. There's something to the point. Think of the difficulty of describing the alleged violation without mentioning a judge's action. Fair though the point is, it does not come to grips with another reality—that an alleged violation may involve two actors and the potential immunity of one does not necessarily free the other from suit. Consider the alleged violation to be two actions. Action one: A judge determines a bail amount without considering ability to pay or adequacy of alternatives. Action two: Sheriff Helton detains the probationer until she pays the bail amount. The alleged constitutional violation is detention on an improperly determined bail amount. The plaintiffs might have employed a different theory and sued the judges, if not immune themselves, for their part in carrying out the alleged harm. But "the plaintiff is the master of the complaint" and free to choose between legal theories. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398–99 (1987). Absent some other bar, they are free to sue the sheriff.

Case: 19-5262 Document: 42-2 Filed: 12/23/2019 Page: 7 (9 of 12)

No. 19-5262 *McNeil, et al. v. Cmty. Probation Servs., et al.* Page 7

Sheriff Helton insists that this approach unduly expands *Ex parte Young* by permitting an injunction against an official who implements a constitutional violation caused by another official, citing our observation that courts "have not read *Young* expansively." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996). The probationers, he says, should have sought an injunction against the judges themselves, and we should not expand *Ex parte Young* when the probationers could receive relief by structuring their lawsuit differently. But this objection suffers from the same flaw as the last. The probationers are free to structure their complaint as they wish. Plus, this approach does not expand *Ex parte Young* anyway. There are plenty of cases allowing injunction actions like this one. *See, e.g.*, *Doe*, 910 F.3d at 846, 848–49 (permitting suit under *Ex parte Young* against state actors at multiple points in the enforcement chain of the challenged statute); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 958–59, 966 (6th Cir. 2013) (permitting *Ex parte Young* suit against state actors at three levels of allegedly unlawful action).

Truth be told, *Ex parte Young* more often gets plaintiffs in trouble for suing an official too far removed from implementing a policy than for selecting an official too intimately involved in its execution. That's because *Ex parte Young* permits only lawsuits that can be meaningfully described as being against the named official, not those that "merely mak[e] him a party as a representative of the state, and thereby attempt[] to make the state a party." *Ex parte Young*, 209 U.S. at 157. Suing an official too far up the chain from the challenged action was precisely the problem in the case on which Helton and the county ground their argument. *Children's Healthcare*, 92 F.3d at 1415. Plaintiffs sued the Ohio Attorney General to compel her to disregard statutory limitations on enforcing other statutes. *Id.* at 1416. We concluded that "Ohio law delegates the enforcement of the challenged statutes to local prosecutors, not the Attorney General." *Id.* That meant the attorney general lacked the "connection to the enforcement of the statutes" that *Ex parte Young* requires. *Id.* at 1417.

It also remains unclear whether the plaintiffs could structure their lawsuit by suing the judges who set the bail amounts. Judges have absolute immunity from suits based on their judicial acts, except in matters over which they clearly lack jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 9, 11–12 (1991) (per curiam). Although declaratory relief is sometimes available against

Case: 19-5262    Document: 42-2    Filed: 12/23/2019    Page: 8    (10 of 12)

No. 19-5262        *McNeil, et al. v. Cmty. Probation Servs., et al.*        Page 8

judges, our sister circuits have pointed out that there is usually no case or controversy between judges acting as adjudicators and litigants displeased with litigation outcomes. *In re Justices of Supreme Court of P.R.*, 695 F.2d 17, 21–24 (1st Cir. 1982); *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197–200 (3d Cir. 2000). We have not staked out our own position on the matter, but we have cited that position favorably in unpublished opinions. *See, e.g.*, *Cooper v. Rapp*, 702 F. App'x 328, 333–34 (6th Cir. 2017). And the Supreme Court reversed us on a threshold issue in our closest-to-relevant published decision. *Tesmer v. Granholm*, 333 F.3d 683, 701–04 (6th Cir. 2003) (en banc), *rev'd on standing, Kowalski v. Tesmer*, 543 U.S. 125 (2004).

All of this leaves the matter more complex and less settled than defendants suppose, especially given that "we err on the side of granting [judicial] immunity in close cases." *Norfleet v. Renner*, 924 F.3d 317, 319 (6th Cir. 2019) (citation omitted). For this reason too, we cannot fault the plaintiffs for taking the well-trodden path marked by *Ex parte Young* instead of charting a new-to-our-circuit course through the comparative jungle of judicial immunity.

B.

The lawsuit also may proceed against the county for now. The county does not deny that it employs the sheriff. Nor does it deny the sheriff's involvement in the challenged detention. Nor does it claim he acted against its commands when he detained the plaintiffs. Nor does sovereign immunity protect counties from lawsuits. *Luning*, 133 U.S. at 530; *Jinks v. Richland County*, 538 U.S. 456, 466 (2003).

The county, it is true, may be able to raise defenses to this § 1983 claim. It may be able to show, for example, that no constitutional violation occurred or that a county policy or custom did not trigger it. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978). But a few considerations counsel against resolving that defense today. At this phase of the case, the county has accepted plaintiffs' allegations that the bail system violates the federal constitution but reserved its right to defend the system during the permanent injunction phase of the case. There's value in assessing the role of any county policy in these alleged constitutional violations in the context of a concrete debate about what those violations are or are not. Discovery may shed light on whether there is a pertinent county policy or not, as the only facts in evidence are a

Case: 19-5262 Document: 42-2 Filed: 12/23/2019 Page: 9 (11 of 12)

No. 19-5262 *McNeil, et al. v. Cmty. Probation Servs., et al.* Page 9

stipulation solely for preliminary injunction purposes. And it's hard to see a practical difference between affirming a preliminary injunction against the sheriff alone and affirming it against both the county and the sheriff, at least in the context of a case in which neither one thus far defends the constitutionality of the practices here. All of that said, the district court may wish to resolve the *Monell* defense promptly on remand.

    We affirm.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 19-5262

KAREN MCNEIL, et al.,

    Plaintiffs,

INDYA HILFORT, on behalf of herself and all others similarly situated,

    Plaintiff - Appellee,

    v.

COMMUNITY PROBATION SERVICES, LLC, et al.,

    Defendants,

GILES COUNTY, TENNESSEE; KYLE HELTON, Sheriff,

    Defendants - Appellants.

```
                              FILED
                           Dec 23, 2019
                       DEBORAH S. HUNT, Clerk
```

Before: SUTTON, NALBANDIAN, and READLER, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Middle District of Tennessee at Columbia.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk