**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION**

| | |
|---|---|
| KAREN MCNEIL, *et al.*,<br><br>                Plaintiffs,<br><br>    v.<br><br>COMMUNITY PROBATION SERVICES, LLC; *et al.*,<br><br>                Defendants. | Case No. 1:18-cv-00033<br>Class Action<br>Judge William L. Campbell, Jr.<br>Magistrate Judge Chip Frensley |

**CONSENT DECREE**

## I.     INTRODUCTION

1. This Consent Decree is entered into between the Plaintiff class, represented by named Plaintiffs Indya Hilfort and Victor Gray (collectively, the "Plaintiffs"), and Defendants Giles County ("County") and the Giles County Sheriff ("Sheriff") (collectively, the "County Defendants"). The Plaintiffs and the County Defendants will be referred to collectively as "the Parties." The other Defendants to this lawsuit—Community Probation Services, LLC and PSI Probation, LLC ("the Defendant companies"), Timothy Cook, Patricia McNair, Harriet Thompson, and Markeyta Bledsoe—did not participate in the negotiation of any portion of this Consent Decree. They object to and are not bound by any factual or legal findings and are not bound by any provision of the Consent Decree.

2. The Parties, after engaging in extensive litigation, jointly enter into this Consent Decree to resolve Plaintiffs' claims and remedy the violations challenged in this litigation under state law and the federal Constitution.[1] This Consent Decree is intended to protect the due process rights and equal protection rights of any person who may be sentenced to misdemeanor probation in Giles County.

3. The Parties agree that the purpose of probation in Tennessee law "is rehabilitation of the defendant." *State v. Burdin*, 924 S.W.3d 82, 85 (Tenn. 1996); *State v. Jones*, 328 S.W.3d 520, 523 (Ten.. 2010).

---

[1] *McNeil v. Cmty. Prob. Servs, LLC*, Case No. 19-5660, 803 Fed. App'x 846 (6th Cir. Feb. 28, 2020); *McNeil v. Cmty. Prob. Servs., LLC*, Case No. 1:18-cv-00033, 2019 WL 633012 (M.D. Tenn. Feb. 14, 2019)*, aff'd,* 945 F.3d 991 (6th Cir. 2019); *McNeil v. Cmty. Prob. Servs., LLC*, Case No. 1:18-cv-00033, 2021 WL 366776 (M.D. Tenn. Feb. 3, 2021); *McNeil v. Cmty. Prob. Servs., LLC*, Case No. 1:18-cv-00033, 2021 WL 365844 (M.D. Tenn. Feb. 3, 2021).

## II.    FACTUAL FINDINGS

4.  This class action lawsuit alleged systemic constitutional and statutory violations in Giles County, Tennessee, which contracted with two for-profit companies—Community Probation Services, LLC and PSI Probation, LLC ("the Defendant companies")—to run the County's misdemeanor probation system.

5.  Pursuant to the contracts, for years, the companies generated 100% of their revenue and profit from fees paid by the people they supervised on probation. At the same time, the companies had tremendous power over Plaintiffs' liberty, including determining reporting requirements, and deciding whether and when to administer drug tests, to report alleged violations of probation conditions including nonpayment, or to convert a person's supervised probation to unsupervised. This arrangement gave the companies a financial stake in every decision they made affecting individual liberty, thereby creating a financial conflict of interest.

6.  Plaintiffs were assigned to supervised probation with one of the Defendant companies. Plaintiffs and others on probation sacrificed basic necessities—such as food, clothing, shelter, medical care, and hygiene products—to make payments to the companies and County in an effort to avoid arrest, jailing, and extended periods of supervised probation.

7.  As a matter of policy, the companies routinely collected fees from people who could not afford them and kept people on supervised probation due solely to their inability to make monetary payments.

## III.    DECLARATORY RELIEF

8.  The neutrality requirement of the Due Process Clause of the United States Constitution "applies to officials performing quasi-judicial functions and those performing enforcement functions." *McNeil*, 2021 WL 366776, at *23; *McNeil*, 2021 WL 365844, at *15. Probation officers in Giles County perform both enforcement and quasi-judicial functions. *McNeil*, 2021 WL 366776, at *23–24; *McNeil*, 2021 WL 365844, at *15–16. Therefore, probation officers must be neutral, *i.e.* free of financial conflicts of interest. Giles County's "100% funding arrangement" with CPS and PSI "creates an impermissible conflict of interest, and [] this conflict is not too remote to be of concern[.]" *McNeil*, 2021 WL 366776, at *24 (quotation marks omitted); *id.* at *24 n.13; *McNeil*, 2021 WL 365844, at *17 (quotation marks omitted).

9.  *Bearden v. Georgia*, 461 U.S. 660 (1983) protects indigent people from the "extensive restrictions on [] liberty" that are associated with supervised probation—including submitting to drug tests for which they are charged, refraining from travel and other restrictions on movement, and the threat of arrest and jailing for alleged violations of probation conditions—"which are not imposed on those who can afford to pay off their debt." *McNeil*, 2021 WL 366776, at *28–29. Liberty interests such as the "right to privacy" and the "right to freedom of movement, among others," are "significant," and are

"substantially affected" by the conditions of supervised probation. *Id.* at *29. There is no "rational connection between the purpose of the policies and the means of achieving that purpose." *Id.* And Defendants have an "alternative means" of collecting outstanding debts without infringing on a person's liberty through the probation system, namely, through civil debt collection procedures. *Id.* at *30. Thus, it violates equal protection and due process to keep a person on supervised probation solely to make payments if the person is too poor to pay without sacrificing basic necessities.

## IV.   DEFINITIONS

10. "Ability to pay" or "ability to make payments" or "able to pay" or "able to make payments" means a person can afford a payment without sacrificing the basic necessities of life, including but not limited to food, medical care, clothing, shelter, transportation, and hygiene products for the person and their dependents.

11. "County" refers to Defendant Giles County.

12. "County Defendants" or "Defendants" refers to Giles County and the Giles County Sheriff in his official capacity, collectively.

13. "Drug-related offense" refers to a misdemeanor offense involving the personal use of a controlled substance that is regulated by the federal Controlled Substances Act.

14. "Hold warrants" are warrants issued in connection with an alleged violation of misdemeanor probation and that instruct the Sheriff's Office to detain the person subject to the warrant without an opportunity to be released prior to appearing before a judge for a hearing.

15. "Inability to pay" or "inability to make payments" or "unable to pay" or "unable to make payments" refers to the inability to make a monetary payment without sacrificing the basic necessities of life, including but not limited to food, medical care, clothing, shelter, transportation, and hygiene products for the person and the person's dependents.

16. "Indigent" describes a person who in unable to make a monetary payment without sacrificing the basic necessities of life, including but not limited to food, medical care, clothing, shelter, transportation, and hygiene products for the person and the person's dependents. Any person who meets any of the following criteria is "indigent":

    a.  Has a net household income that does not exceed 200% of the Poverty Guidelines as revised annually by the United States Department of Health and Human Services and published in the Federal Register ("FPG");

    b.  Is eligible for appointed counsel in their underlying misdemeanor case;

      c.  Is, or has dependents who are, eligible to receive aid from any federal or state public assistance program based on financial hardship; and/or

      d.  Is homeless as that term is defined by federal public health and welfare law found at 42 U.S.C. § 11302.

17. "Legal Financial Obligations" or "LFOs" refers to court costs, probation fees, drug test fees, supervision fees, any fee associated with a condition of probation, and all discretionary fines and fees. LFOs do not include restitution.

18. "Misdemeanor case" refers to any case alleging a misdemeanor offense under Tennessee law that is filed, litigated, and/or resolved in General Sessions or Circuit Court.

19. "Misdemeanor Probation Services" refers to supervision, drug tests, rehabilitation classes, treatment classes, any other program in which people who are sentenced to misdemeanor probation may be required to participate, and the administration of any other condition with which people who are sentenced to misdemeanor probation may be required to comply.

20. "Net monthly income" refers to a person's take-home pay after taxes and other required deductions.

21. "Non-financial conditions of probation" refers to any condition of probation other than a requirement to make a monetary payment.

22. "Payment" or "payments" refers to any money paid, or required to be paid, in connection with a person's conviction in a misdemeanor case, including LFOs and restitution.

23. "Plaintiffs" refers to named Plaintiffs Karen McNeil, Lesley Johnson, Indya Hilfort, Lucinda Brandon, Victor Gray, and the Plaintiff classes they represent for damages and injunctive relief.

24. "Probation" refers to a custodial sentence of a specified length that is suspended for a specified period of time, contingent on a person's compliance with specific conditions of release.

25. A warrant is "Recalled" if the warrant is taken out of circulation such that the Giles County Sheriff's Office will not rely on the warrant to arrest a person.

26. "Restitution" refers to a monetary payment ordered under Tenn. Code Ann. § 40-35-304 that is intended to compensate a victim for pecuniary losses, including in connection with a misdemeanor case.

4

27. "Sheriff" refers to the Giles County Sheriff in his official capacity.

28. "Will" as a verb refers to a mandatory obligation and has the same meaning as the word "must."[2]

## V. GENERAL PROVISIONS

29. In the interest of avoiding a costly and protracted trial, County Defendants agree to entry of this Consent Decree by which they are enjoined from engaging in conduct that deprives persons of rights, privileges, or immunities secured or protected by the laws of the United States.

30. This Consent Decree resolves all claims in Plaintiffs' Third Amended Complaint filed in this case, Dkt. No. 440.

31. This Consent Decree will constitute the entire integrated Consent Decree agreed to by the Parties. No prior drafts of this Consent Decree or prior or contemporaneous communications, oral or written, about this Consent Decree will be relevant or admissible for purposes of determining the meaning of any provisions of this Consent Decree in any litigation or any other proceeding.

32. This Consent Decree is binding upon all Parties hereto, by and through their officials, officers, agents, assigns, employees, and successors. County Defendants must require their officials, officers, employees, agents, assigns, and successors to comply with this Consent Decree. If County Defendants contract with a government or non-government agency or entity whose function includes overseeing, regulating, accrediting, investigating, or otherwise reviewing or assuming the operations of County Defendants or their officials, officers, agents, assigns, employees, or successors, including any functions relating to the provision of misdemeanor probation services, County Defendants agree to ensure these functions are consistent with the terms of this Consent Decree and must incorporate the terms of this Consent Decree into the functions of the government agency or contracting entity as necessary to ensure consistency.

33. Giles County will ensure that any third-party entity operating in the County complies fully with all provisions of this Consent Decree.

34. This Consent Decree is enforceable only by the Parties. No other person or entity is intended to be a third-party beneficiary of the provisions of this Consent Decree for purposes of any civil, criminal, or administrative action, and accordingly, no other person or entity may assert any claim or right as a beneficiary or protected class under this Consent Decree.

---

[2] Thus, terms such as "Party A will take Action X" mean that Party A is required to take Action X, and terms such as "Party B will not take Action Z" mean that Party B is prohibited from taking Action Z.

5

35. The County is responsible for providing the support and resources necessary to fulfill County Defendants' obligations under this Consent Decree, and as otherwise necessary to ensure that the requirements of this Consent Decree are fully implemented and sustained. To meet this requirement, the County may pursue and use grant funding or other non-County sources of financial support.

36. All time periods specified in this final Consent Decree must be computed according to Rule 6 of the Federal Rules of Civil Procedure.

37. If any term, condition, or provision of this Consent Decree, or the application thereof to any person or circumstance, is to any extent held by this Court to be invalid, void, or unenforceable, that term, condition or provision must be severed and will be inoperative, and the remainder of this Consent Decree will remain operative and binding on the Parties.

38. As set forth in Section 94, the parties to the Consent Decree have a duty to confer in good faith with each other and with the court-appointed Monitor before seeking intervention from the federal Court.

39. The County is not required to collect LFOs and is not required to supervise people sentenced to misdemeanor probation. However, if the County chooses to collect LFOs or restitution, or if the County supervises people sentenced to misdemeanor probation, it must comply with all applicable provisions of this Consent Decree.

## VI.    INJUNCTIVE RELIEF

### A.  Ensuring Probation Officers Are Neutral

40. As of the date this Consent Decree is entered, no entity or individual supervises people sentenced to misdemeanor probation in Giles County.

41. Giles County will not in the future contract with any third party for the provision of misdemeanor probation services if the third party relies on payments made by people on probation to fund the administration of the misdemeanor probation system. Similarly, Giles County will not rely on payments made by people on probation to administer its own misdemeanor probation system.

42. Giles County will not contract with, or otherwise permit to provide any aspect of misdemeanor probation services in its jurisdiction, a for-profit entity that earns its revenue or profits from money paid by the people the entity supervises.

43. If at any point in the future Giles County intends to contract with a third party to fully or partially administer misdemeanor probation services, then before finalizing such an arrangement, the County must provide to Plaintiffs' counsel the specifics of the agreement or contract, explain the source of funding for the third party and the nature of the service to be provided, and will arrange an opportunity for Plaintiffs' counsel to speak with a

6

representative of the third party and a county official knowledgeable about the services to be provided and the financing of those services.[3] Giles County must ensure that any third party fully complies with all provisions of this Consent Decree.

44. Within 7 days of the entry of the Consent Decree, the Giles County Sheriff's Office will identify all outstanding arrest or citation warrants for alleged violations of misdemeanor probation, will cease executing any such warrants, and will mark each warrant as "inactive" within the Sheriff's Office's computer system. Within 7 days of the entry of the Consent Decree, the County will notify all relevant authorities in other jurisdictions that arrest and citation warrants for alleged violations of misdemeanor probation will not be executed by the Giles County Sheriff's Office pursuant to a federal Consent Decree, and the County will request that the appropriate authorities not execute arrest or citation warrants for alleged misdemeanor probation violations. Within 7 days of the entry of the Consent Decree, with respect to any misdemeanor violation-of-probation arrest or citation warrants that were issued in Giles County and sent to another jurisdiction to be executed, the Sheriff's Office will inform each such jurisdiction that Giles County will not accept into custody people who are subject to such warrants. If Giles County is notified by another jurisdiction that the other jurisdiction has arrested a person pursuant to a misdemeanor violation-of-probation warrant issued in Giles County, the Sheriff's Office will inform the other jurisdiction that Giles County will not accept that person into custody and will ask the other jurisdiction to release the person.

   a. If the subject of any warrant affected by Section 44 of this Consent Decree is still on probation when the Consent Decree is entered, within 30 days of entry of the Consent Decree, the County is permitted to make a fresh determination about whether to re-report the old violation to the extent consistent with Tennessee law. If the person is no longer on probation, the County must not report any alleged violation. After 30 days from the entry of the Consent Decree, the County is not permitted to re-issue any warrant that is affected by Section 44.

   b. With respect to any warrant that was issued solely or partially on the basis of alleged nonpayment of any payment, the County is not required to conduct an ability-to-pay determination if the County does not re-allege a violation for nonpayment. However, prior to alleging a violation of probation on the basis of nonpayment, the County must first conduct an ability-to-pay determination according to Sections 47–54 using the form required by Section 46 and set forth in Appendix A. All provisions of the Consent Decree will apply to people who are unable to make a payment.

---

[3] The purpose of this Section is to ensure that Plaintiffs fully understand the nature of the misdemeanor probation system Giles County is contemplating and to allow Plaintiffs an opportunity to satisfy themselves that the new system complies with the terms of the settlement and is constitutionally sound.

7

c. For any warrant that is affected by Section 44 of this Consent Decree, the County will provide notice to the person who is the subject of the warrant that his or her warrant will not be executed or enforced in Giles County and that the alleged violation underlying the warrant might be reassessed within 30 days of the warrant being recalled, after which the warrant will not reissue. Notice must be provided using the following means, unless the Parties agree otherwise: a mailer to the person's last known address (if the warrant was issued on or after April 23, 2015); a poster at the courthouse; and notice on the websites for the Giles County General Sessions Court, Giles County Circuit Court, and Giles County Sheriff's Office websites, stating generally that outstanding misdemeanor violation-of-probation warrants are being recalled and might be reissued within 30 days, after which the warrant will not reissue; and any other means the Parties agree are reasonably necessary to ensure individuals are aware that their warrants were recalled.

## B. Determining Ability to Pay

45. The provisions of Part VI.B. apply upon entry of the Consent Decree.

46. If the County decides to collect payments from people convicted of misdemeanor offenses in Giles County, the form set forth in Appendix A will be used to provide notice and to determine ability to pay in accordance with this Consent Decree. Defendants are permitted to modify the form, but for the five years following entry of the Consent Decree, Class Counsel must approve any such modifications.

47. As stated in Section 10, a person has the "ability to pay" if the person can make a monetary payment without sacrificing the basic necessities of life, including but not limited to food, medical care, clothing, shelter, transportation, and hygiene products for themselves and their dependents. As stated in Section 15, a person is "unable to pay" if the person cannot make a monetary payment without sacrificing the basic necessities of life, including but not limited to food, medical care, clothing, shelter, transportation, and hygiene products for the person and the person's dependents. As stated in Section 16, a person who is "indigent" is unable to make a payment without sacrificing the basic necessities of life.

48. The responsibility for deciding whether a person convicted of a misdemeanor who is required to make payments has the ability to make a payment is for a judge to make. However, the County and Sheriff have an independent obligation not to enforce unconstitutional judicial orders, including orders to make payments, if the person lacks the ability to pay, and orders to keep a person who lacks the ability to pay on supervised probation solely to make payments. Accordingly, Defendants must determine ability to pay before collecting payments and before enforcing conditions of probation.

49. Before making an ability-to-pay determination, the County will provide the person convicted of a misdemeanor who is required to make payments with actual notice that it will seek to determine the person's ability to pay and the relevance of the inquiry, including its relevance to determining whether the County is legally permitted to enforce conditions

8

of supervised probation, whether it is permitted to notify the court of an alleged probation violation for nonpayment, and whether any payments must be waived. The County must use the form described in Section 46 and set forth in Appendix A to provide the notice required by this Section.

50. The County will then conduct an inquiry to determine ability to make payments using the form described in Section 46 and set forth in Appendix A. Any person who is indigent pursuant to Section 16 and Section 51(a) lacks the ability to make payments.

51. Defendants must apply the following objective standards to determine ability to pay:

   a. A person who is "indigent" lacks the ability to make any payment. A person is "indigent" if the person meets any of the following criteria:

      i. Has a net household income that is below 200% of the Poverty Guidelines as revised annually by the United States Department of Health and Human Services and published in the Federal Register ("FPG");
      ii. Is eligible for appointed counsel in their underlying misdemeanor case;
      iii. Is, or has dependents who are, eligible to receive aid from any federal or state public assistance program based on financial hardship; and/or
      iv. Is homeless as that term is defined by federal public health and welfare law found at 42 U.S.C. § 11302.

   b. A person who does not meet any of the categories in Section 51(a)(i)–(iv) is presumed able to pay LFOs and restitution. However, before collecting payments from such persons, the County must assess whether making those payments will cause the person to forgo basic necessities of life, including but not limited to food, medical care, clothing, shelter, transportation, and hygiene products for the person and their dependents. If the person attests that they cannot make the payment without sacrificing such basic necessities, Defendants will not collect payment unless the County presents contrary evidence that the person has the ability to pay.

   c. The following items must not be considered in determining ability to pay:
      i. Any income protected by state or federal law from private or governmental creditors, including any income from any federal or state public assistance program based on financial hardship;
      ii. Any payment received as part of a settlement, including in the above-captioned lawsuit;
      iii. Income or assets of family and friends;
      iv. Income from a tax return;
      v. The person's expenses; and
      vi. The person's ability to pay money bail.

52. Before accepting a payment, the County will make a written record of its conclusion as to whether the person has the ability, or lacks the ability, to make payments.

9

a. The record will be included in the person's file in the Clerk's Office.

b. The County will provide a copy of the record to the probationer at the time of the assessment.

c. Within 72 hours of a request by the person who owes LFOs or restitution, Class Counsel, or the person's defense counsel in any misdemeanor case filed in Giles County, the County will produce a copy of the form. This Section is not intended to conflict with any Tennessee laws governing the disclosure of public information.

53. The Parties agree that certain forms of income and certain assets are protected from collection by creditors under federal and Tennessee law.[4] The County is prohibited from collecting payments from those sources of income or assets. Additionally, sources of income that are protected from collection under federal and Tennessee law cannot be used in determining ability to pay.

54. The County must provide notice to people convicted of misdemeanor offenses who are required to make payments of the types of income protected by federal and state law. The County must further provide notice that such income cannot be used to make payments. The County must use the form described in Section 46 and set forth in Appendix A to provide notice and to ensure that it does not collect payments from those protected sources of income and protected assets. If the County discovers that it has collected payments from protected sources of income or protected assets, the County must remit the payments within 14 days of the discovery.

## C. Reassessing Ability to Pay

55. The provisions of Part VI.C. apply upon entry of the Consent Decree.

56. An initial determination that a person has the ability to pay, or lacks the ability to pay, may be reassessed during the pendency of the probationary period. Ability to pay must not be reassessed after the probation term has ended.

57. Any reassessment of ability to pay subsequent to the initial determination must be made in accordance with Sections 47–54 above, using the form described in Section 46 and set forth in Appendix A.

58. At the beginning of any probation term, using the form described in Section 46 and set forth in Appendix A, County Defendants must give notice to the person on probation that:

---

[4] See, e.g., 42 U. S. C. § 407(a) (Social Security benefits protected from collection by creditors); *Tenn. Dep't of Human Servs. ex rel. Young v. Young*, 802 S.W.2d 594, 599 (Tenn. 1990) (applying 42 U.S.C. § 407 to hold that Tennessee courts cannot require people who owe court debts or supervision fees to spend income from SSI or SSDI to make those payments); *see generally* Tenn. Code Ann. § 26-2-101–26-2-115.

10

    a. The County is permitted to reassess ability to pay at the conclusion of every six-month period on probation by using the form described in Section 46 and set forth in Appendix A; and

    b. A person can request reassessment of ability to pay at any time, and that, if the person requests reassessment of ability to pay, Defendants must provide a reassessment in accordance with Sections 47–54 above, using the form described in Section 46 and set forth in Appendix A, before collecting any further payments.

59. Reassessment process:

    a. Every six months after a person is convicted of a misdemeanor offense and required to make payments, Defendants must cease collecting payments from a person who has been making payments. After providing actual notice in accordance with Section 49, Defendants may reassess ability to pay in accordance with Sections 47–54 above by using the form described in Section 46 and set forth in Appendix A, and if the person has the ability to make payments, Defendants may resume collection in accordance with the other provisions of this Consent Decree.

    b. A person who is convicted of a misdemeanor offense and required to make payments may request reassessment of ability to pay at any time. If a person on probation requests reassessment of ability to pay, Defendants must provide a reassessment in accordance with Sections 47–54 above, using the form described in Section 46 and set forth in Appendix A, before collecting any further payments.

    c. Even if a person does not request a reassessment, if the County has a basis to believe that a person who is making payments lacks the ability to pay, the County must reassess ability to pay in accordance with Sections 47–54 above, using the form described in Section 46 and set forth in Appendix A, before collecting any further payments.

**D. Eliminating the Practice of Keeping People on Supervised Probation Solely Due to Inability to Pay and Eliminating Other Unfair Consequences of Inability to Pay**

60. The provisions of Part VI.D. apply upon entry of the Consent Decree.

61. This provision applies to any person on supervised probation who is required to make payments; who lacks the ability to make payments or whose sole income is from sources protected under Tennessee and federal law; and who has completed all non-financial conditions of probation. With respect to such persons:

    a. County Defendants must not:

        i. Collect payments;

    ii. Enforce any conditions of probation, including but not limited to requiring the person to make payments or to report to the probation department;

    iii. Report an alleged violation of any condition of probation, including but not limited to failure to make payments;

    iv. Seek additional conditions of probation or an extension of time on probation due to not making payments; or

    v. Supervise the person.

  b. County Defendants must ask the court to terminate the person's term on supervised probation.

  c. County Defendants must not report to the Department of Safety and Homeland Security that the person did not make payments, thereby avoiding license suspension.

  d. County Defendants must waive any LFOs that are unpaid at the end of any probation term and must provide notice to the person that the LFOs were waived. Defendants are permitted to waive LFOs at any point prior to the end of a probation term.

62. This provision applies to any person on supervised probation who is required to make payments, and who lacks the ability to make those payments or whose sole income is from sources protected under Tennessee and federal law, regardless of whether the person is subject to other, non-financial conditions of probation. With respect to such persons, the County is permitted to enforce non-financial conditions of probation. However, County Defendants must not:

  a. Collect payments;

  b. Enforce any order to make payments on LFOs or restitution;

  c. Report that a person did not make payments; or

  d. Seek additional conditions of probation or an extension of time on probation due to a person not making payments.

63. Within 30 days of entry of the Consent Decree, County Defendants must waive any LFOs that, at the time the Consent Decree is entered, are unpaid by people who were previously convicted of a misdemeanor offense in Giles County. The County must provide notice to every individual whose unpaid LFOs are waived by the County using the means set forth in Section 44(c), specifically, a mailer to the person's last known address (if the person accrued court debt on or after April 23, 2015); a poster at the courthouse, and a notice on the court's and the Sheriff's website, stating generally that outstanding LFOs have been

waived; and any other means the Parties agree are reasonably necessary to ensure individuals are aware that their LFOs were waived.

64. Upon request, County Defendants must produce documentation that is sufficient for the Tennessee Department of Safety and Homeland Security or any other state agency to determine that the person does not have any outstanding payments that are capable of preventing the person from being issued a valid license.

### E. Ending Arrests for Nonpayment and Ending Pre-Hearing Detention Without a Finding that Detention is Necessary

65. The provisions of Part VI.E. apply upon entry of the Consent Decree.

66. To the extent the Sheriff knows or can determine on the face of a warrant that the warrant was issued for an alleged violation of misdemeanor probation, the Sheriff is enjoined from detaining any person on a secured financial condition of release (*i.e.*, secured bail amount) or a detention order (including a warrant that states "hold") following an arrest for an alleged violation of misdemeanor probation, regardless of the jurisdiction in which the warrant was issued, if the warrant is not accompanied by a record showing that the condition (*i.e.*, secured bail amount) was imposed after: (1) notice to the arrestee and an opportunity to be heard by an appropriate judge; and (2) findings by that judge concerning the person's ability to pay, alternatives to secured bail, and whether pre-revocation detention is necessary to meet a compelling governmental interest.

67. The Sheriff will treat an order to pay secured money bail or an order to "hold" a person following an arrest for an alleged violation of misdemeanor probation as an order to release the person on his or her own recognizance unless the record described in Section 66 accompanies the warrant.[5]

68. To the extent the Sheriff knows or can determine on the face of a warrant that the warrant was issued solely for not making a payment, the Sheriff must not arrest or detain the person subject to the warrant, regardless of the jurisdiction in which the arrest warrant was issued, unless the warrant reflects that the nonpayment is willful and that the warrant was issued after a hearing where a determination was made that the arrestee had the ability to pay.

69. Defendants will not request or recommend that a secured bond amount or hold be issued in relation to an alleged violation of misdemeanor probation.

### F. Eliminating Onerous Probation Conditions

---

[5] *McNeil v. Cmty. Prob. Servs., LLC*, Case No. 1:18-cv-00033, 2019 WL 633012 (M.D. Tenn. Feb. 2, 2019), *aff'd*, 945 F.3d 991 (6th Cir. 2019).

13

70. As stated in Section 39, the County is not required to supervise people on misdemeanor probation. However, if the County chooses to do so, the provisions of Part VI.F. apply upon entry of the Consent Decree.

71. **Probation Fees:** The County will not collect from people who are unable to pay any fee for misdemeanor probation services or any fee for complying with a condition of probation, including but not limited to attending a class, undergoing treatment, or submitted to drug tests.

72. **Drug Tests:**

    a. Unless an individual has been convicted of a drug-related offense, the County will not administer drug tests to people placed on misdemeanor probation and will not enforce requirements that a person placed on misdemeanor probation be drug tested either by requiring the person to take or pay for a drug test, or by reporting to the court that a person did not take or pay for a drug test, or by reporting that a drug test was positive for controlled substances.

    b. If an individual has been convicted of a drug-related offense, the County is permitted to administer drug tests to the extent required by a judge. The County is not permitted to require payment for the drug test from a person who cannot afford to pay. The first time a person tests positive for a controlled substance, the County will not allege a violation of probation and will provide the person with information regarding voluntary treatment or counseling programs. The County is permitted to report an alleged violation only if a person tests positive for a controlled substance a second time while on supervised probation and the test is admissible at a revocation hearing under state law (Tenn. Code Ann. § 40-35-11(c)(1)).

73. **Reporting Requirements:**

    a. If the County supervises people on misdemeanor probation, the County must develop and implement internal policies relating to supervision and reporting. Class Counsel must approve the policies prior to implementation. To allow sufficient time for Class Counsel to review the policies prior to implementation, the County must provide the proposed policies to Class Counsel no later than 45 days prior to the intended implementation date. The policies must ensure that the probation department's reporting requirements are flexible and account for the personal obligations and restrictions of any person on probation, including the accessibility of the probation office and cost of transportation to the probation office, unpredictable work schedules, child care, and the need to provide care to dependents. Reporting requirements must be the least-restrictive necessary to promote the rehabilitative goals of probation, must minimize disruptions to a person's life, and must seek to minimize costs to the County that do not promote

14

rehabilitation. As such, to the maximum extent possible, the County will permit reporting by phone, text, mail, e-mail, or other means that are convenient and inexpensive to the person on probation and the County.

b. In any case where reporting is required weekly, the County may inform the court that a person on probation has potentially violated probation by not reporting only if the person on probation has missed three or more consecutive meetings and has not responded to the probation officer's efforts to contact the probationer using all available contact information within that timeframe. In any case where reporting is required biweekly or monthly, the County may report to the court that a person on probation has potentially violated probation by not reporting only if the person on probation has missed two or more consecutive meetings and has not responded to the probation officer's efforts to contact the probationer using all available contact information within that timeframe.

c. If the probation officer, in accordance with Section 74, notifies the court that a person allegedly violated probation by not reporting, the probation officer must also provide detailed information in writing to the court about the probationer's personal obligations and efforts to report and the probation officer's efforts to contact the probationer.

74. **Reporting Alleged Violations to the Court**: The County's historical practice has been to report alleged violations using a sworn affidavit attached to a warrant. The County will provide probation officers with alternative, informal means of reporting alleged violations to the Court, and will train probation officers on the benefits of using these alternative means for alerting the court to an alleged violation of probation conditions. Alternative means include but are not limited to emails, letters, or in-person meetings. The County is permitted to report alleged violations via a sworn affidavit.

## VII. TRAINING AND TRANSPARENCY

75. If the County chooses to supervise people on misdemeanor probation, prior to commencing supervision, the County will provide a minimum of 5 hours of training, approved by Class Counsel, to anyone employed as a probation officer, regarding topics such as best probation practices and rehabilitation. Within the first 90 days of employment of any probation officer hired in Giles County, the County must provide a total of 20 hours of training, using a trainer approved by Plaintiffs' Counsel, regarding topics such as best probation practices and rehabilitation. For each of the five (5) years from the date of entry of the Consent Decree, the County will also provide 8 hours of annual training, approved by Class Counsel, for probation officers and other officials involved in administering the probation system, regarding topics such as best probation practices and rehabilitation.

76. For each of the five (5) years from the date of entry of the Consent Decree, the County will provide annual training, approved by Class Counsel, consistent with these basic principles

15

to all County and Sheriff's Office employees involved in the probation system, and will offer training to judges, attorneys, and other officials who are involved in the misdemeanor probation system.

77. The County will track information necessary to determine compliance with the provisions of this agreement, including data relating to the number of people on probation, payments made, the length of time on probation, conditions imposed, alleged violations, results of revocation proceedings, and the availability and use of rehabilitation-related services.

## VIII.   THE CONSENT DECREE MONITOR

78. County Defendants and Plaintiffs will agree on a cost-effective monitoring regime that will allow Plaintiffs to monitor compliance with the terms of the settlement agreement.

79. The Parties will jointly select an independent monitor ("Monitor") who will assess and report on whether the requirements of this Consent Decree have been implemented.

80. In selecting the Monitor, the Parties have established a mutually agreed-upon process, which they are permitted to modify so long as a Monitor is proposed to the Court, or a disagreement about the Monitor is reported to the Court, no later than 75 days from entry of the Consent Decree:

   a. As soon as practicable, but no later than 14 days from the date of approval of the Consent Decree, the Parties will request proposals from qualified candidates interested in serving as the Monitor that include an identification of qualifications, proposed team members, proposed Monitoring plan, and a proposed budget. The period for receiving applications will be 30 days absent agreement to extend the period.

   b. Prospective Monitors must submit a detailed monitoring plan and proposed budget.

   c. Within 30 days from the close of the period for submitting applications, the Parties will review applications, interview candidates, and recommend a candidate to the Court for appointment.

81. If the Parties are unable to agree on a Monitor, each Party will submit the name of the proposed individuals, groups of individuals, or entities, along with resumes and cost proposals, to the Court. The Court will consider the Parties' submissions and will choose a candidate or candidate team proposed by one of the Parties.

82. At any time, on motion by any Party or the Court's own determination, the Court may remove the Monitor for good cause.

16

83. In the event the Monitor is removed, resigns, or is no longer able to fulfill its responsibilities under this Consent Decree, the Court will appoint a replacement recommended by the Parties. The Parties' selection will follow the same process as described in Sections 80–81.

84. Except for the period in which a new or replacement Monitor is selected, there will be a Monitor in place for three (3) years from the appointment of the Monitor. However, the period may be extended for good cause. Good cause is shown if the County has not been substantially in compliance with this Consent Decree in the 12 months immediately prior to the end of the final scheduled year.

85. The Monitor will have only the duties, responsibilities, and authority conferred by this Consent Decree. The Monitor will not, and is not intended to, replace or assume the role or duties of Defendants in implementing the Consent Decree.

86. The Monitor will conduct quarterly reviews for the first two years, and will report on compliance to Class Counsel and the Court. In the third year, the Monitor will conduct reviews every six months. Class Counsel may request additional information from the Monitor at any time.

87. The County Defendants must provide the Monitor, on a quarterly basis or upon request, with all data, documents, and information reasonably necessary for the Monitor to perform its functions including but not limited to the following.

   a. The County Defendants must provide the Monitor with access to all documents reflecting alleged violations of misdemeanor probation, access to probation files and notes, access to payment histories, which must be preserved by the probation department (if one exists) and the clerk's office, and documentation of requests to the court to terminate the person's term on probation;

   b. The County Defendants must provide the Monitor with access to individuals with knowledge relevant to compliance with the Consent Decree and over whom the County Defendants have control, including but not limited to employees of the Giles County Sheriff's Office, the Circuit Court Clerk's Office, and any probation department that operates within the County, so that the Monitor can conduct interviews as needed;

   c. The County Defendants must provide the Monitor with data and information relating to the amount of money collected from people convicted of misdemeanor offenses and how the County allocated that money;

   d. The County Defendants must provide the Monitor with copies of all financial affidavits or other documents related to ability to pay that are completed by people convicted of misdemeanor offenses and required to pay restitution or LFOs;

   e. The County Defendants must provide the Monitor with documents related to compliance with the Training provisions in Section VII of the Consent Decree;

    f.   The County Defendants must provide the Monitor with documents sufficient to show whether County Defendants are complying with Section VI(F) of the Consent Decree;

    g.   The County Defendants must track and report to the Monitor all arrest and citation warrants executed for alleged violations of misdemeanor probation and must provide that information to the Monitor at least quarterly, or upon request by Class Counsel or the Monitor;

    h.   As needed to confirm compliance with the Consent Decree, and within seven (7) days of any request by the Monitor unless the Monitor and the County Defendants agree to a different timeframe, the County Defendants must provide sworn certifications documenting the extent of compliance with the Consent Decree.

    i.   The County Defendants must provide any other documents or information to the Monitor that are reasonably necessary to determine compliance with the provisions of the Consent Decree.

88. All documents made available to the Monitor under this Section must be equally available to Class Counsel.

## IX.    DAMAGES AND FEES

89. The County and named Plaintiffs Karen McNeil, Lesley Johnson, Indya Hilfort, Lucinda Brandon, Victor Gray, and the Estate of Tanya Mitchell agree that the County will pay $2 million, which is inclusive of all Named Plaintiffs' attorneys' fees and costs. The County will also pay the costs of claims administration, monitoring, and any other implementation costs.

## X.    CLASS CERTIFICATION

90. The following class is certified for purposes of injunctive relief: All people (1) who are or will be convicted of a misdemeanor offense in Giles County and (2) who are required to make payments and/or who are sentenced to probation (referred to as "Class A").

91. The following classes are certified for purposes of damages relief:

    a.   All people who were on probation in connection with a misdemeanor offense in Giles County on or after April 23, 2017 through March 31, 2021 (referred to as "Class B"); and

    b.   All people who paid CPS Fees and/or PSI Fees while on probation in connection with a misdemeanor offense in Giles County on or after April 23, 2015 through March 31, 2021 (referred to as "Class C").

18

## XI.     CONTINUING JURISDICTION & ENFORCEMENT

92. The Parties will comply with the terms of this Consent Decree. The Court retains jurisdiction to enforce this Consent Decree.

93. This Court will retain jurisdiction over this matter and allow the Parties to this Consent Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance, and/or resolve any dispute regarding the terms or conditions of this Consent Decree.

94. Nothing in this Consent Decree may be construed to limit the equitable powers of the Court to modify these terms upon a showing of good cause by any party.

## XII.     PROCEDURES IN EVENT OF NONCOMPLIANCE

95. In the event any of the Defendant is deemed by the Monitor to be not in compliance with any term of the Consent Decree, the Parties must attempt to identify the source of any problems inhibiting compliance and create a plan and timeline for the Defendant(s) to achieve compliance. If the parties are unable to resolve the issue, they may submit the dispute to the Court for resolution.

96. In the event Class Counsel has a reasonable belief that any of the Defendants is not in compliance with the terms of the Consent Decree, Class Counsel must notify the Monitor and Defendants. The Parties must confer in a good-faith attempt to resolve the issue. Only if the Parties are unable to achieve a resolution may they submit the dispute to the Court.

## XIII.     EFFECTIVE DATE

97. This Consent Decree will become effective upon entry by the Court.

Ordered this 13th day of _____January_____, 2022.

_____
Hon. William L. Campbell, Jr., District Judge

19

# APPENDIX A

# Notice of Rights to Anyone Convicted of a Misdemeanor Offense in Giles County[1]

**If you were convicted of a misdemeanor offense and are required to make payments
and/or are placed on probation in Giles County, you have the following rights:**

## 1. Rights

- You have the right to have your ability to pay determined using this form.

- You have the right **not to make payments from** any income from the following protected sources:
    o A "Public Benefit," which includes: a social security benefit, unemployment compensation, a Families First program benefit or a local public assistance benefit; a veterans' benefit; a disability, illness, or unemployment benefit, or a pension that vests as a result of disability.

- You have the right to **not** be kept on supervised probation if you've completed all conditions of probation other than paying. If you are on supervised probation and the only condition left is making payments:
    o No one can enforce *any* conditions of probation against you;
    o No one can report alleged violations of probation;
    o No one can supervise you or make you report;
    o No one can ask the court to impose more conditions or extend your time on probation to make payments;
    o Your probation officer must ask the court to terminate your term on supervised probation. The court may or may not agree.

- You have the right to request a reassessment of ability to pay at any time. Ability to pay will be determined using this form. If your financial situation changes for the worse—for example, if you lose your job—you should ask for your ability to pay to be reassessed.

## 2. Procedure

- Your ability to pay will be determined based *only* on your personal income, and the following items **must not be considered** in determining ability to pay:
    o Any Public Benefits you receive, as defined above;
    o Any payment received as part of a settlement;
    o Money you received from family and friends (unless the money is from a job you did or a gift);
    o Income from a tax return;
    o Your expenses; and
    o Your ability to pay money bail.

- You will be considered **unable to make *any* payments** if:
    o Your only sources of income are Public Benefits, as defined above; OR
    o Your net household income, meaning the amount you make *after* taxes, is below 200% of the Federal Poverty Guidelines; OR
    o You received, or were eligible for, appointed counsel in this case; OR
    o You receive or are eligible, or have dependents who receive or are eligible, for aid from any federal or state public assistance program based on financial hardship (for example SSI, SSDI, TANF, Medicaid, public housing SNAP, or any other federal or state assistance); OR
    o You are homeless, lack stable housing, are living somewhere other than a home (like a bus station, car, or camping ground), live in a shelter, or are about to lose your housing and have nowhere to go.

---

[1] This Notice is issued as required by the consent decree entered in *McNeil v. Cmty. Prob. Servs., LLC*, Case No. 1:18-cv-00033 (M.D. Tenn. Apr. 2018)

Defendant Name: _____ Case Number(s):_____

- If you cannot afford to make *any* payments on your legal financial obligations[2] or restitution, then:
  - You do not have to make any payments;
  - No one will tell the court that you did not pay;
  - No one will seek a warrant for nonpayment;
  - No one will report nonpayment to the Department of Homeland Security. That means that your license will not be suspended for nonpayment in this case;
  - Any money you have not paid at the end of your probation term must be waived.

- If your net income exceeds 200% of the Federal Poverty Guidelines, then you can be required to make payments unless making those payments will cause you forgo basic necessities including but not limited to food, medical care, clothing, shelter, transportation, and hygiene products for you or your dependents.

- If it is determined that you lack the ability to pay all of your LFOs and restitution, your ability to pay can be reassessed every six months *only while you are on probation*. Once your probation term is over, any unpaid LFOs must be waived. You might still be required to pay restitution.

I was provided with the Notice above before completing the Ability to Pay form, and I was given sufficient time to review the information and ask questions. I understand the information in this Notice.

_____          _____
Name                                        Date

---

[2] The term "legal financial obligation" or "LFOs" refers to court costs, probation fees, drug test fees, supervision fees, any fee associated with a condition of probation, and all discretionary fines and fees. LFOs do not include restitution. The term "restitution" refers to a monetary payment ordered under Tenn. Code Crim. Pro. § 40-35-304 that is intended to compensate a victim for pecuniary losses, including in connection with a misdemeanor case.

Defendant Name: _____ Case Number(s):_____

# Determination of Ability to Pay

What is your approximate yearly net income (income after taxes)? _____

How many people live in your household?_____

| Number of people in your household | A: Yearly net income is: | B: Yearly net income is: |
|---|---|---|
| 1 | $25,760 or lower | $25,761 or higher |
| 2 | $34,840 or lower | $34,841 or higher |
| 3 | $43,920 or lower | $43,921 or higher |
| 4 | $53,000 or lower | $53,001 or higher |
| 5 | $62,080 or lower | $62,081 or higher |

Based on those numbers, is your income in column A or B above?_____

☐ Do you meet **any** of the following criteria? Check all that apply:

    ☐ My net household income is in column A; OR

    ☐ You received, or were eligible for, a publicly-appointed lawyer in your criminal case; OR

    ☐ You receive or are eligible, or have dependents who receive or are eligible, for aid from any federal or state public assistance program based on financial hardship (for example SSI, SSDI, TANF, Medicaid, public housing SNAP, or any other federal or state assistance); OR

    ☐ You are homeless, lack stable housing, are living somewhere other than a home (like a bus station, car, or camping ground), live in a shelter, or are about to lose your housing and have nowhere to go; OR

    ☐ Your only sources of income are from a disability, illness, or unemployment benefit, or a pension that vests as a result of disability; a Families First program benefit or a local public assistance benefit; and/or a veterans' benefit.

☐ IF YOUR INCOME IS IN COLUMN B: My net household income is _____, and the number of people in my household is _____.

    ☐ If I make the payments required of me, I **will not** be able to afford food, medical care, clothing, shelter, transportation (e.g. gas money or a car payment), or hygiene products for myself or my dependents.

I declare under penalty of perjury that the above information is true and correct to the best of my ability.

_____        _____
Name                                     Date

---

- I certify that I, _____, provided _____[Defendant] with the Notice required by the Consent Decree in *McNeil v. Community Probation Services*. _____
- [Defendant] stated that they understood the information.
- Based on the above, sworn information, I find that_____[Defendant]:

    ☐ Cannot afford to make payments; OR
    ☐ Can afford to make payments as required by the court.

_____        _____
Name                                     Date